Cary Kletter
Sally Trung Nguyen
KLETTER LAW FIRM
1900 S. Norfolk Street, Suite 350
San Mateo, California 94403
Telephone: 415.434.3400
Email: ckletter@kletterlaw.com

Attorneys for NOAH KRAVITZ

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHONEDOG, LLC, a Delaware<br><br>Plaintiff,<br><br>v.<br><br>NOAH KRAVITZ, an individual,<br><br>Defendants. | CASE NO. C11-03474<br><br>**DECLARATION OF CARY KLETTER IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF PHONEDOG, LLC'S COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION UNDER FED. R. CIV. PROC. RULE 12(b)(1)AND FOR FAILURE TO STATE A CLAIM UNDER FED. R. CIV. PROC. RULE 12(b)(6)**<br><br>**Date:** September 15, 2011<br>**Time:** 10:00 a.m.<br>**Dept.:** Courtroom B – 15th Floor<br>**Judge:** Maria-Elena James |

I, Cary Kletter, declare as follows:

1.     I am an attorney duly licensed to practice before the U.S. District Court for the Northern District of California as well as before the Courts of the States of California and New York.

2.     I am the principal of the Kletter Law Firm, attorneys of record for Defendant Noah Kravitz.

3.      I have personal knowledge of the matters set forth herein and if called upon to testify, I could and would do so competently.

4.      This declaration is submitted in support of Defendant's Motion to Dismiss Plaintiff PhoneDog, LLC's Complaint For Lack of Subject Matter Jurisdiction Under Fed. R. Civ. Proc. Rule 12(b)(1) and For Failure to State a Claim Under Fed. R. Civ. Proc. Rule 12(b)(6).

5.      Attached hereto as "Exhibit A" is a true and correct copy of the Complaint filed in the California Superior Court, Alameda County on June 8, 2011.

6.      Attached hereto as "Exhibit B" is a true and correct copy of the Twitter Terms of Service governing Twitter accounts.

7.      Attached hereto as "Exhibit C" is a true and correct copy of the Twitter Rules governing Twitter accounts.

I declare under penalty of the laws of the state of California that the foregoing is true and correct and that this declaration was executed on this 4th day of August 2011, in San Mateo, California.

KLETTER LAW FIRM

Cary Kletter

# EXHIBIT A

1    Cary Kletter (SBN 210230)
    Sally Trung Nguyen (SBN 267275)
2    KLETTER LAW FIRM
3    1900 S. Norfolk Street, Suite 350
    San Mateo, California 94403
4    Telephone: 415.434.3400

5    Attorneys for NOAH KRAVITZ

ENDORSED
FILED
ALAMEDA COUNTY

JUN 0 8 2011

CLERK OF THE SUPERIOR COURT
By _____ S. McMullen _____

6

### SUPERIOR COURT OF CALIFORNIA
7
### COUNTY OF ALAMEDA
8
### UNLIMITED JURISDICTION

| | | |
|---|---|---|
| 9   NOAH KRAVITZ, | ) | CASE NO. RG11579535 |
| 10                Plaintiff, | ) | **COMPLAINT and JURY** |
| 11 | ) | **DEMAND** |
| 12   v. | ) | BY FAX |
| 13   PHONEDOG, LLC, a Delaware limited liability | ) | |
|      company, TOM KLEIN, an individual, and DOES 1 | ) | |
| 14   THROUGH 20, | ) | |
| 15                Defendants. | ) | |
| 16 | ) | |
| 17 | ) | |
| 18 | ) | |

19

## I.    INTRODUCTION
20

21      1. Plaintiff NOAH KRAVITZ ("PLAINTIFF") brings this action against

22  PHONEDOG, LLC ("PHONEDOG"), a Delaware limited liability company, TOM KLEIN,

23  an individual, and DOES 1 through 20, inclusive (collectively "Defendants") in connection

24  with claims arising out of Defendants' fraud, breach of contract and unlawful conduct with

     regard to PLAINTIFF.
25

26  ## II.    PARTIES

27      2. PLAINTIFF is an individual who, at all relevant times, was and is a resident of the

28  State of California, County of Alameda.

3. PHONEDOG is, upon information and belief, a limited liability company with a principal place of business located in South Carolina engaged in the business of providing mobile industry news and reviews via internet websites. Upon information and belief, at all relevant times, PHONEDOG employed individuals throughout the United States including California.

4. KLEIN is a founder and employee of PHONEDOG, holding the titles of President and Co-Founder.

5. KLEIN controls PHONEDOG and operates PHONEDOG as his alter-ego and fails to strictly maintain corporate formalities.

6. PLAINTIFF was, at all times relevant herein, employed with PHONEDOG and performed the vast majority of his work in Alameda County, California, holding the titles Cell Phone Editor, Senior Editor and later Editor-in-Chief.

7. PLAINTIFF is indisputably has an equity interest in Defendant PHONEDOG, however the percentage is in dispute.

8. The true names and capacities, whether individual, corporate, associate or otherwise, and the true involvement of defendants sued herein as DOES 1 through 20, inclusive, are unknown to PLAINTIFF who therefore sue said Defendants by such fictitious names and will amend this Complaint to show the true names, capacities and involvement when ascertained. PLAINTIFF is informed and believes and thereon alleges that each of the Defendants designated as a DOE is responsible in some manner for the events and happenings herein referred to, and that PLAINTIFF's injuries and damages as hereinafter set forth were proximately caused by said Defendants.

9. PLAINTIFF is informed and believes and thereon alleges that at all times herein mentioned each of the Defendants was acting as the partner, agent, servant, and employee of each of the remaining defendants, and in doing the things alleged herein was acting within the course and scope of such agency and with the knowledge of the remaining defendants.

### III.    JURISDICTION AND VENUE

10. Jurisdiction and venue are proper because PLAINTIFF's claims and causes of actions arose in this county.

## IV.   FACTUAL ALLEGATIONS

11. PLAINTIFF initially joined PHONEDOG part-time.

12. PLAINTIFF loyally and dutifully performed his work and contributed to the success of PHONEDOG through his efforts.

13. PLAINTIFF eventually became an industry leader and obtained a level of notoriety and fame in his role working videoclips for PHONEDOG.

14. KLEIN, desirous of having PLAINTIFF work more and devote more time to PHONEDOG and in part to prevent PLAINTIFF from taking his talents elsewhere told PLAINTIFF that PLAINTIFF would be a partner, shareholder and part-owner of PHONEDOG if PLAINTIFF joined Full-time and took on a senior management role.

15. On or about July 1, 2009, KLEIN confirmed in writing to PLAINTIFF that PLAINTIFF was a "vested partner" and "clearly" an owner of PHONEDOG entitled to 15% of PHONEDOG's gross advertising revenue and 15% share of the net proceeds should PHONEDOG be sold ("Agreement").

16. PLAINTIFF separated from his employment with PHONEDOG on October 15, 2010, but continued to perform work per PHONEDOG's request until November 2010.

17. Subsequent to the termination of the employment relationship between PHONEDOG and PLAINTIFF on October 15, 2010, PLAINTIFF requested his monthly payment of 15% of the gross advertising revenue pursuant the Agreement.

18. On or around December 6, 2010, PHONEDOG issued PLAINTIFF a check in the amount of approximately $8,261.64 constituting one monthly payment of PLAINTIFF's 15% share of the gross advertising revenue. Shortly thereafter, PHONEDOG abruptly cancelled the aforementioned $8,261.64 check prior to PLAINTIFF's receipt of the check.

19. Since the termination of PLAINTIFF's employment relationship with PHONEDOG, PLAINTIFF has not received payments of his share of the gross advertising revenue to which he is entitled.

20. Despite the termination of the employment relationship, PLAINTIFF retains a 15% ownership interest of PHONEDOG.

21. PHONEDOG continues to use PLAINTIFF's image and likeness for commercial purposes, including on its Internet website and YouTube channel, without authorization from PLAINTIFF.

1   22. PLAINTIFF has given notice to the California Labor and Workforce Development

2   Agency ("LWDA") pursuant to Labor Code §§ 210 and 211, and the California Private

3   Attorneys General Act, § 2698, *et seq.* ("PAGA") about Defendants' violation of Labor Code

4   §§ 201, 202, 203, 204 and 210.  Therefore, the Court has jurisdiction over Plaintiffs' claims for

5   penalties pursuant to Labor Code §§ 201, 202, 203, 204 and 210.

6                   **INTEGRATED ENTERPRISE/ALTER EGO ALLEGATIONS**

7   23. PLAINTIFF alleges that KLEIN is individually liable for PLAINTIFF's damages

8   pursuant to the doctrine of alter ego liability.

9   24. The Defendant entity PHONEDOG and Defendant KLEIN are a part of one

10  integrated enterprise and/or the alter ego of the other.

11  25. The Defendants and other entities controlled by KLEIN have interrelated

12  operations, common management, common employees, centralized control of management

13  decisions and common ownership or financial control.

14  26. Upon information and belief, KLEIN has integral ownership and financial control

    over PHONEDOG.

15  27. Upon information and belief, KLEIN was, at all times relevant to this action,

16  consistently and intentionally acting in the name of PHONEDOG.

17  28. Further, PLAINTIFF alleges that there is a unity of interest and ownership between

18  KLEIN and PHONEDOG, such that any individuality and separateness between them have

19  ceased and PHONEDOG is a mere shell, instrumentality, and conduit through which KLEIN

20  carried on his business.

21  29. Upon information and belief, KLEIN exercised such complete control and

22  dominance of the business that any individuality or separateness between PHONEDOG and

    KLEIN does not exist.

23  30. If the doctrine of alter ego liability is not invoked in this particular action, an

24  inequitable result will arise because KLEIN will be able to hide behind PHONEDOG and skirt

25  liability for his actions, which violated several laws and caused PLAINTIFF to suffer damages.

26  Justice requires PLAINTIFF be able to fully prosecute his claims.

27  //

28  //

**FIRST CAUSE OF ACTION**
(Conversion)
Against All Defendants

31. PLAINTIFF re-alleges and incorporates by reference all of the previous allegations herein.

32. PLAINTIFF is a vested partner/member with a 15% ownership interest of PHONEDOG, which entitles him to, *inter alia*, 15% of gross advertising revenue and a 15% share of the net proceeds should the company be sold.

33. At all relevant times, Defendants were aware of PLAINTIFF's ownership interest of PHONEDOG.

34. Defendants have substantially interfered with PLAINTIFF's ability to exercise his financial interest and ownership rights in PHONEDOG by denying PLAINTIFF his 15% share of PHONEDOG's gross advertising revenue and failing to pay him any monthly revenue shares to which he is entitled since in or around November 2010.

35. Defendants thus converted PLAINTIFF's property.

36. Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring PLAINTIFF and acted with an improper and evil motive amounting to malice and in conscious disregard of PLAINTIFF's rights.

37. As a result of Defendants' wrongful conduct, PLAINTIFF has suffered actual damages and other remedies provided by statutory or decisional law.

**SECOND CAUSE OF ACTION**
(Intentional Interference with Prospective Economic Advantage)
Against Defendants KLEIN and DOES 1-20

38. PLAINTIFF re-alleges and incorporates by reference all of the previous allegations herein.

39. PLAINTIFF had an economic relationship with PHONEDOG which included a reasonable expectation by PLAINTIFF of future economic benefits, including but not limited to a 15% share of advertising revenue and a 15% share of the net proceeds should PHONEDOG be sold.

40. Defendant KLEIN knew of the existence of the economic relationship between PLAINTIFF and PHONEDOG.

41. Defendant KLEIN acted intentionally to disrupt the economic relationship between PLAINTIFF and PHONEDOG.

42. The economic relationship between PLAINTIFF and PHONEDOG was disrupted by the acts of Defendant KLEIN.

43. PLAINTIFF suffered damages as a result of Defendant KLEIN's interference with his economic relationship.

**THIRD CAUSE OF ACTION**
(Breach of Written Contract)
Against All Defendants

44. PLAINTIFF re-alleges and incorporates by reference all of the previous allegations herein.

45. On or about June 1, 2008, PLAINTIFF and PHONEDOG entered into an employment agreement (the "Employment Agreement"), whereby PHONEDOG agreed to pay PLAINTIFF commission wages based on PHONEDOG's advertising revenue.  Specifically, PHONEDOG promised PLAINTIFF the following as "Compensation":

> "Phonedog will pay 15% of its gross advertising revenue received from all applicable sources to Noah Kravitz on the 15th of each month for the previous months receipt of revenue.  As such, a payment on August 15th would include the 15% share of the gross revenue received during the month of July."

46. Section 3.1a. of the Employment Agreement further provides:  "In the event of sale of [PHONEDOG] after termination, [PHONEDOG] agrees to meet its 6+2% yearly sale consideration commitment to [PLAINTIFF] for six (6) months following the effective termination date."

47. The Employment Agreement dated June 1, 2008 and all amendments, including KLEIN's July 1, 2009 email, constitute a written agreement between PLAINTIFF and Defendants regarding PLAINTIFF's employment and ownership rights regarding PHONEDOG ("Agreement").

48. The Agreement stated that PLAINTIFF is vested with a 15% ownership interest in PHONEDOG, which entitles him to a 15% share of PHONEDOG's gross advertising revenue

1   to be paid on the 15th of each month for the previous month's receipt of revenue and a 15%

2   share of the net proceeds should PHONEDOG be sold.

3       49. Beginning in or around December 2010, Defendants failed and refused to provide

4   PLAINTIFF with his share of PHONEDOG's gross advertising revenue to which he is entitled

    pursuant to the Agreement.

5       50. Accordingly, Defendants materially breached the Agreement by failing and refusing

6   to pay PLAINTIFF the revenue shares owing to PLAINTIFF.

7       51. As a direct and proximate result of Defendant's breach of the Agreement, described

8   above, Plaintiff has suffered, and continue to suffer, damages in an amount which will be

9   proven at trial, but which are in excess of the jurisdictional minimum of this Court.

10

11  **FOURTH CAUSE OF ACTION**
    (Failure to Pay Wages for All Wages Owed In
    Violation of Labor Code § 201, *et seq.*)

12  Against Defendants PHONEDOG and DOES 1-20

13      52. PLAINTIFF re-alleges and incorporates by reference all of the previous allegations

14  herein.

15      53. California Labor Code § 201, *et seq.* requires employers to pay employees all wages

16  due and owed at reasonable intervals, and at the time of discharge.

17      54. PLAINTIFF's employment ended on or about October 15, 2010, and Defendants

18  has willfully failed and refused to pay wages in an amount in excess of the jurisdictional

19  minimum of this Court owing to PLAINTIFF.

20      55. PLAINTIFF, who is no longer employed by Defendants, has not been paid all

21  wages owed to him in full.

22      56. Defendants have willfully failed and refused to make timely payment of wages to

    PLAINTIFF.

23      57. PLAINTIFF is entitled to unpaid wages.

24      58. By failing and refusing to pay PLAINTIFF wages owed to him, Defendant has

25  violated California Labor Code § 201, *et seq.*, entitling PLAINTIFF to the commission wages

26  owed, to attorney's fees, pursuant to Labor Code Section 218.5, and to statutory "waiting time

27  penalties pursuant to Labor Code Section 203.

28  //

**FIFTH CAUSE OF ACTION**
(Civil Penalties Under Labor Code § 558 )
Against Defendants PHONEDOG and DOES 1-20

59. PLAINTIFF re-alleges and incorporates by reference all of the previous allegations herein.

60. Labor Code § 558 provides for civil penalties for violation of the Labor Codes' and IWC Wage Orders' regulations regarding hours worked.

61. Labor Code § 558 provides for civil penalties for violation of provisions regulating hours as $50 for the initial pay period violation (in addition to the amount of the unpaid wages) and $100 for each subsequent pay period violation (in addition to the amount of the unpaid wages).

62. Defendants are liable to PLAINTIFF for civil penalties pursuant to Labor Code § 558 for violation of the California Labor Codes' and IWC Wage Orders' regulations regarding hours worked based upon the facts and circumstances described above.

**SIXTH CAUSE OF ACTION**
(Waiting Time Penalties Under Labor Code § 203 )
Against Defendants PHONEDOG and DOES 1-20

63. PLAINTIFF re-alleges and incorporates by reference all of the previous allegations herein.

64. Labor Code § 203 provides that if an employer willfully fails to pay compensation promptly upon discharge or resignation, as required under Labor Code §§ 201 and 202, then the employer is liable for waiting time pay in the form of continued compensation for up to thirty (30) work days.

65. PLAINTIFF is no longer employed by Defendants and has not been paid all the compensation due and owed to him.

66. Defendants have willfully failed and refused to make timely payment of wages to PLAINTIFF.

67. As a direct and proximate result of Defendants' conduct, PLAINTIFF has suffered damages in an amount to be proven at trial.

68. As a direct and proximate result of Defendants' conduct, PLAINTIFF is also entitled to attorneys' fees under Labor Code §§ 218.5 and 1194, in addition to interest, expenses and costs of suit.

### SEVENTH CAUSE OF ACTION
(Unlawful, Unfair and Fraudulent Business Practices
In Violation of B&P Code §§ 17200 and 17203, et seq.)
Against Defendants PHONEDOG and DOES 1-20

69. PLAINTIFF re-alleges and incorporates by reference all of the previous allegations herein.

70. B&P Code § 17200 et seq. prohibits unfair competition in the form of any unlawful, unfair or fraudulent business act or practice.

71. B&P Code § 17202 provides: "Notwithstanding Section 2289 of the Civil Code, specific or preventative relief may be granted to enforce a penalty, forfeiture, or penal law in case of unfair competition."

72. B&P Code § 17203 provides that the Court may restore to any person in interest any money or property which may have been acquired by means of such unfair competition.

73. B&P Code § 17203 also provides that any person who meets the standing requirements of Section 17204 and complies with CCP Section 382 may pursue representative claims for relief on behalf of others.

74. B&P Code § 17204 allows "any person who has suffered injury in fact and has lost money or property as a result of such unfair competition" to prosecute a civil action for violation of the Unfair Business Practices Act.

75. Labor Code § 90.5(a) states that it is the public policy of California to vigorously enforce minimum labor standards in order to ensure employees are not required to work under substandard and unlawful conditions, and to protect employers who comply with the law from those who attempt to gain competitive advantage at the expense of their workers by failing to comply with the minimum standards law.

76. Pursuant to B&P § 17202, PLAINTIFF are entitled to enforce all applicable provisions of the Labor Code.

77. Beginning at an exact date unknown to PLAINTIFF, but at least since the date four years prior to the filing of this suit, Defendants have committed acts of unfair competition as

defined by the Unfair Business Practices Act, by engaging in the unlawful, unfair and fraudulent practices and acts described in this Complaint, including, but not limited to:

      a. Violations of Labor Code §§ 201, 202 and 203, 204, 210 and 2698(f)(2), pertaining to unpaid wages.

78. The violations of these laws and regulations, as well as of fundamental California public policies protecting workers, serve as unlawful predicate acts and practices for purposes of B&P Code §§ 17200 and 17203, *et seq.*

79. The acts and practices described above constitute unfair, unlawful and fraudulent business practices, and unfair competition, within the meaning of B&P Code §§ 17200 and 17203, *et seq.*  Among other things, the Defendants' acts and practices have forced PLAINTIFF to labor for many hours in a row without receiving the meal and rest periods to which he was entitled by law, and has forced PLAINTIFF to labor without receiving compensation.

80. The acts and practices described above have allowed Defendants to gain an unfair competitive advantage over law-abiding employers and competitors.

81. As a direct and proximate result of the acts and practices described herein, PLAINTIFF has been denied compensation, in an amount to be proven at trial.

82. PLAINTIFF is entitled to restitution pursuant to B&P Code § 17203 for all wages and other compensation unlawfully withheld from him during the four year period prior to the filing of the complaint.

83. As a direct and proximate result of the aforementioned acts and practices, Defendants have received, and continue to receive, ill-gotten gains belonging to PLAINTIFF.

84. Injunctive relief is necessary and appropriate to prevent Defendants from repeating their unlawful, unfair and fraudulent business acts and practices described herein.

85. Pursuant to § 17203 and/or any other applicable law, PLAINTIFF seeks an order preventing Defendants from engaging in unlawful, unfair and fraudulent conduct, and preventing Defendants from profiting and benefiting from illegal and wrongful acts.

//
//
//
//

**EIGHTH CAUSE OF ACTION**
(Violation of Labor Code § 210)
Against Defendants PHONEDOG and DOES 1-20

86. PLAINTIFF re-alleges and incorporates by reference all of the previous allegations herein.

87. Labor Code § 210 provides, without limitation, that in addition to, and entirely independent and apart from, any other penalty provided by the Labor Code, every person who fails to pay the wages of an employee shall be subject to a civil penalty.

88. Defendants failed to pay PLAINTIFF's wages.

89. PLAINTIFF is entitled to receive, for the initial violation, one hundred dollars ($100), and for each subsequent violation, or any willful or intentional violation, two hundred dollars ($200), plus 25 percent of the amount unlawfully withheld.

90. As a direct and proximate result of Defendants' conduct, PLAINTIFF is also entitled to penalties, attorneys' fees, in addition to interest, expenses and costs of suit.

**NINTH CAUSE OF ACTION**
(Fraud – False Promise)
Against All Defendants

91. PLAINTIFF re-alleges and incorporates by reference all of the previous allegations herein.

92. PLAINTIFF was given a promise that PLAINTIFF would be a member partner, shareholder and/or part-owner of PHONEDOG if he joined full-time and took on a senior management role.

93. Such promise was a material matter and integral to the terms and conditions of PLAINTIFF's agreement with PHONEDOG.

94. Defendants intentionally misrepresented and made the false promise with the intent that PLAINTIFF would act in reliance to the promise and to defraud PLAINTIFF.

95. PLAINTIFF acted in justifiable reliance on Defendants' promise by joining PHONEDOG full-time and taking on a senior management role.

96. PLAINTIFF refrained from seeking other employment and partnership opportunities and using his talents elsewhere because of Defendants' fraudulent promises and reassurances of ownership interests by Defendants.

97. PLAINTIFF is informed and believes, and on that basis alleges, that Defendants acted willfully, knowingly, and intentionally in engaging in the pattern of conduct described herein. PLAINTIFF is informed and believes, and on that basis alleges, that in doing the acts and in engaging in the conduct herein alleged, Defendants acted in conscious disregard of the rights of Plaintiff and engaged in conduct which has subjected PLAINTIFF to unjust hardship.

98. Further, PLAINTIFF is informed and believes, and on that basis alleges, that Defendants in doing the acts and engaging in the conduct herein alleged, acted with a willful and conscious disregard for the legal rights of PLAINTIFF. Because Defendants have acted with such oppression, fraud, and malice, PLAINTIFF is entitled to punitive damages, pursuant to Civil Code Sections §§1708.7(c) and 3294 in an amount that will punish said Defendants for the conduct described herein and in an amount that will deter them and others from engaging in similar conduct in the future.

99. By reason of Defendants' fraudulent promise, and as a proximate result of those representations, PLAINTIFF has suffered the damages as alleged herein and below.

### TENTH CAUSE OF ACTION
(Breach of the Covenant of Good Faith and Fair Dealing)
Against All Defendants

100. PLAINTIFF re-alleges and incorporates by reference all of the previous allegations herein.

101. PLAINTIFF has a contractual relationship with Defendants.

102. Inherent in the contractual relationship between PLAINTIFF and Defendants is the covenant of good faith and fair dealing, which implies a promise that each party will refrain from doing anything to injure the other's right to receive the benefits of the agreements between the parties, and which protects the parties' reasonable expectations. Seaman's Direct Service, Inc. v. Standard Oil Co. (1984) 36 Cal.3d 752.

103. Injured parties may recover damages for violation of the covenant of good faith and fair dealing. Foley v. Interactive Data Corp. (1988) 47 Cal.3d 654, 682-700.

104. Defendants violated the covenant of good faith and fair dealing in numerous respects, *inter alia,* by failing to comply with the promises it made to PLAINTIFF.

1    105. As a direct and proximate result of Defendants' conduct, PLAINTIFF has suffered

2  and continues to suffer damages in an amount according to proof.

3

### ELEVENTH CAUSE OF ACTION

4  (Violation of The Labor Code Private Attorneys General Act of 2004 ("PAGA")
Labor Code § 2698, *et seq.*)

5  Against Defendants PHONEDOG and DOES 1 - 20

6

7    106. PLAINTIFF re-alleges and incorporates by reference all of the previous

8  allegations herein.

9    107. PLAINTIFF is an aggrieved employee pursuant to pursuant to California Labor

10 Code § 2699(a), thus they are entitled to seek penalties pursuant to Labor Code §§ 201, 202,

203, 204 and 210 on behalf and for the people of the State of California and the California

11 Labor and Workforce Development Agency, in accordance with the procedures specified in the

12 PAGA.

13   108. In compliance with California Labor Code §§ 210 and 211, and the PAGA,

14 PLAINTIFF has sought the intervention of the California Labor and Workforce Development

15 Agency to investigate and prosecute Plaintiffs' labor code violations identified in this

16 Complaint.

17   109. PLAINTFF has complied with the PAGA notice provision set forth in the Labor

18 Code.

     110. As a direct and proximate result of Defendants' conduct, PLAINTIFF suffered
19
   injuries, and are also entitled to attorney's fees, in addition to interest, expenses and costs of
20
   suit.
21
     111. In committing the foregoing acts, Defendants were guilty of oppression, fraud or
22
   malice, and, in addition to the actual damages caused thereby, Plaintiff, the people of the State
23
   of California and the California Labor and Workforce Development Agency are entitled to
24
   recover damages for the sake of example by way of punishing Defendants.
25
     112. PLAINTIFF request penalties against Defendants as provided under the Labor
26
   Code, plus reasonable attorneys' fees and costs, in amounts to be proved at trial.
27
     WHEREFORE, PLAINTIFF prays for judgment as is further set forth below.
28

**PRAYER FOR RELIEF**

1.  For a declaratory judgment that Defendants have violated California Labor Laws and public policy, as alleged herein;

2.  For a declaratory judgment that Defendants have violated B&P Code §§ 17200 and 17203, *et seq.*, as a result of the aforementioned violations of the Labor Code and of California public policy protecting workers, ensuring that workers are paid for all hours worked;

3.  For a permanent and mandatory injunction prohibiting Defendants, their officers, agents, employees, affiliated companies, and all those working in concert with them, from committing future violations of the laws and public policies described herein;

4.  For an award of restitution;

5.  For an order imposing all statutory and/or civil penalties provided by law, including but not limited to, penalties under Labor Code §§ 201, 203 and 210 together with interest on these amounts;

6.  For an order awarding PLAINTIFF compensatory damages, including but not limited to wages, earnings, and other compensation, according to proof, and interest on these amounts;

7.  For punitive damages according to proof;

8.  For an order that Defendants must disgorge ill gotten gains;

9.  For award of reasonable attorneys' fees, as provided by Labor Code §§ 218.5, 226(e) and 1194 and/or other applicable law;

10. PAGA damages for the State of California and CLWDA;

11. For statutory prejudgment interest;

12. For all costs of suit; and

13. For such other and further relief as this Court deems just and proper.

Dated: June 7, 2011

KLETTER LAW FIRM

By: _____
Cary Kletter
Attorney for Plaintiff
NOAH KRAVITZ

1

**JURY TRIAL DEMANDED**

2    Plaintiff requests a trial by jury on each cause of action for which a trial by jury is

3    proper.

4    Dated: June 7, 2011                              KLETTER LAW FIRM

5

6                                                     By:_____

7                                                     Cary Kletter
                                                      Attorney for Plaintiff
8                                                     NOAH KRAVITZ

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT B

Twitter

- 
- Skip past navigation
- On a mobile phone? Check out m.twitter.com!
- Skip to navigation
- Skip to sign in form

# Terms of Service

These Terms of Service ("**Terms**") govern your access to and use of the services and Twitter's
websites (the "**Services**"), and any information, text, graphics, photos or other materials uploaded,
downloaded or appearing on the Services (collectively referred to as "**Content**"). Your access to and
use of the Services is conditioned on your acceptance of and compliance with these Terms. By
accessing or using the Services you agree to be bound by these Terms.

## Basic Terms

You are responsible for your use of the Services, for any Content you post to the Services, and for any
consequences thereof. The Content you submit, post, or display will be able to be viewed by other
users of the Services and through third party services and websites (go to the account settings page to
control who sees your Content). You should only provide Content that you are comfortable sharing
with others under these Terms.

Tip What you say on Twitter may be viewed all around the world instantly. You are what you Tweet!

You may use the Services only if you can form a binding contract with Twitter and are not a person
barred from receiving services under the laws of the United States or other applicable jurisdiction.
You may use the Services only in compliance with these Terms and all applicable local, state,
national, and international laws, rules and regulations.

The Services that Twitter provides are always evolving and the form and nature of the Services that
Twitter provides may change from time to time without prior notice to you. In addition, Twitter may
stop (permanently or temporarily) providing the Services (or any features within the Services) to you
or to users generally and may not be able to provide you with prior notice. We also retain the right to
create limits on use and storage at our sole discretion at any time without prior notice to you.

The Services may include advertisements, which may be targeted to the Content or information on the
Services, queries made through the Services, or other information. The types and extent of advertising
by Twitter on the Services are subject to change. In consideration for Twitter granting you access to
and use of the Services, you agree that Twitter and its third party providers and partners may place
such advertising on the Services or in connection with the display of Content or information from the
Services whether submitted by you or others.

## Privacy

Any information that you provide to Twitter is subject to our Privacy Policy, which governs our
collection and use of your information. You understand that through your use of the Services you
consent to the collection and use (as set forth in the Privacy Policy) of this information, including the

transfer of this information to the United States and/or other countries for storage, processing and use by Twitter. As part of providing you the Services, we may need to provide you with certain communications, such as service announcements and administrative messages. These communications are considered part of the Services and your Twitter account, which you may not be able to opt-out from receiving.

Tip You can opt-out of most communications from Twitter including our newsletter, new follower emails, etc. Please see the Notifications tab of Settings for more.

## Passwords

You are responsible for safeguarding the password that you use to access the Services and for any activities or actions under your password. We encourage you to use "strong" passwords (passwords that use a combination of upper and lower case letters, numbers and symbols) with your account. Twitter cannot and will not be liable for any loss or damage arising from your failure to comply with the above requirements.

## Content on the Services

All Content, whether publicly posted or privately transmitted, is the sole responsibility of the person who originated such Content. We may not monitor or control the Content posted via the Services and, we cannot take responsibility for such Content. Any use or reliance on any Content or materials posted via the Services or obtained by you through the Services is at your own risk.

We do not endorse, support, represent or guarantee the completeness, truthfulness, accuracy, or reliability of any Content or communications posted via the Services or endorse any opinions expressed via the Services. You understand that by using the Services, you may be exposed to Content that might be offensive, harmful, inaccurate or otherwise inappropriate, or in some cases, postings that have been mislabeled or are otherwise deceptive. Under no circumstances will Twitter be liable in any way for any Content, including, but not limited to, any errors or omissions in any Content, or any loss or damage of any kind incurred as a result of the use of any Content posted, emailed, transmitted or otherwise made available via the Services or broadcast elsewhere.

## Your Rights

You retain your rights to any Content you submit, post or display on or through the Services. By submitting, posting or displaying Content on or through the Services, you grant us a worldwide, non-exclusive, royalty-free license (with the right to sublicense) to use, copy, reproduce, process, adapt, modify, publish, transmit, display and distribute such Content in any and all media or distribution methods (now known or later developed).

Tip This license is you authorizing us to make your Tweets available to the rest of the world and to let others do the same.

You agree that this license includes the right for Twitter to make such Content available to other companies, organizations or individuals who partner with Twitter for the syndication, broadcast, distribution or publication of such Content on other media and services, subject to our terms and conditions for such Content use.

Tip Twitter has an evolving set of <u>rules</u> for how ecosystem partners can interact with your content. These rules exist to enable an open ecosystem with your rights in mind. But what's yours is yours – you own your Content (and your photos are part of that Content)

Such additional uses by Twitter, or other companies, organizations or individuals who partner with Twitter, may be made with no compensation paid to you with respect to the Content that you submit, post, transmit or otherwise make available through the Services.

We may modify or adapt your Content in order to transmit, display or distribute it over computer networks and in various media and/or make changes to your Content as are necessary to conform and adapt that Content to any requirements or limitations of any networks, devices, services or media.

You are responsible for your use of the Services, for any Content you provide, and for any consequences thereof, including the use of your Content by other users and our third party partners. You understand that your Content may be rebroadcasted by our partners and if you do not have the right to submit Content for such use, it may subject you to liability. Twitter will not be responsible or liable for any use of your Content by Twitter in accordance with these Terms. You represent and warrant that you have all the rights, power and authority necessary to grant the rights granted herein to any Content that you submit.

Twitter gives you a personal, worldwide, royalty-free, non-assignable and non-exclusive license to use the software that is provided to you by Twitter as part of the Services. This license is for the sole purpose of enabling you to use and enjoy the benefit of the Services as provided by Twitter, in the manner permitted by these Terms.

## Twitter Rights

All right, title, and interest in and to the Services (excluding Content provided by users) are and will remain the exclusive property of Twitter and its licensors. The Services are protected by copyright, trademark, and other laws of both the United States and foreign countries. Nothing in the Terms gives you a right to use the Twitter name or any of the Twitter trademarks, logos, domain names, and other distinctive brand features. Any feedback, comments, or suggestions you may provide regarding Twitter, or the Services is entirely voluntary and we will be free to use such feedback, comments or suggestions as we see fit and without any obligation to you.

## Restrictions on Content and Use of the Services

We reserve the right at all times (but will not have an obligation) to remove or refuse to distribute any Content on the Services and to terminate users or reclaim usernames. Please review the <u>Twitter Rules</u> (which are part of these Terms) to better understand what is prohibited on the Service. We also reserve the right to access, read, preserve, and disclose any information as we reasonably believe is necessary to (i) satisfy any applicable law, regulation, legal process or governmental request, (ii) enforce the Terms, including investigation of potential violations hereof, (iii) detect, prevent, or otherwise address fraud, security or technical issues, (iv) respond to user support requests, or (v) protect the rights, property or safety of Twitter, its users and the public.

Tip Twitter does not disclose personally identifying information to third parties except in accordance with our Privacy Policy.

Except as permitted through the Services (or these Terms), you have to use the <u>Twitter API</u> if you want to reproduce, modify, create derivative works, distribute, sell, transfer, publicly display, publicly perform, transmit, or otherwise use the Content or Services.

Tip We encourage and permit broad re-use of Content. The Twitter API exists to enable this.

You may not do any of the following while accessing or using the Services: (i) access, tamper with, or use non-public areas of the Services, Twitter's computer systems, or the technical delivery systems of Twitter's providers; (ii) probe, scan, or test the vulnerability of any system or network or breach or circumvent any security or authentication measures; (iii) access or search or attempt to access or search the Services by any means (automated or otherwise) other than through our currently available, published interfaces that are provided by Twitter (and only pursuant to those terms and conditions), unless you have been specifically allowed to do so in a separate agreement with Twitter (NOTE: crawling the Services is permissible if done in accordance with the provisions of the robots.txt file, however, scraping the Services without the prior consent of Twitter is expressly prohibited); (iv) forge any TCP/IP packet header or any part of the header information in any email or posting, or in any way use the Services to send altered, deceptive or false source-identifying information; or (v) interfere with, or disrupt, (or attempt to do so), the access of any user, host or network, including, without limitation, sending a virus, overloading, flooding, spamming, mail-bombing the Services, or by scripting the creation of Content in such a manner as to interfere with or create an undue burden on the Services.

## Copyright Policy

Twitter respects the intellectual property rights of others and expects users of the Services to do the same. We will respond to notices of alleged copyright infringement that comply with applicable law and are properly provided to us. If you believe that your Content has been copied in a way that constitutes copyright infringement, please provide us with the following information: (i) a physical or electronic signature of the copyright owner or a person authorized to act on their behalf; (ii) identification of the copyrighted work claimed to have been infringed; (iii) identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit us to locate the material; (iv) your contact information, including your address, telephone number, and an email address; (v) a statement by you that you have a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law; and (vi) a statement that the information in the notification is accurate, and, under penalty of perjury, that you are authorized to act on behalf of the copyright owner.

We reserve the right to remove Content alleged to be infringing without prior notice and at our sole discretion. In appropriate circumstances, Twitter will also terminate a user's account if the user is determined to be a repeat infringer. Our designated copyright agent for notice of alleged copyright infringement appearing on the Services is:

*Twitter, Inc.*
*Attn: Copyright Agent*
*795 Folsom Street, Suite 600*
*San Francisco, CA 94107*
*Email: <u>copyright@twitter.com</u>*

## The Services are Available "AS-IS"

Your access to and use of the Services or any Content is at your own risk. You understand and agree that the Services is provided to you on an "AS IS" and "AS AVAILABLE" basis. Without limiting the foregoing, TWITTER AND ITS PARTNERS DISCLAIM ANY WARRANTIES, EXPRESS OR IMPLIED, OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR NON-INFRINGEMENT. We make no warranty and disclaim all responsibility and liability for the completeness, accuracy, availability, timeliness, security or reliability of the Services or any content thereon. Twitter will not be responsible or liable for any harm to your computer system, loss of data, or other harm that results from your access to or use of the Services, or any Content. You also agree that Twitter has no responsibility or liability for the deletion of, or the failure to store or to transmit, any Content and other communications maintained by the Services. We make no warranty that the Services will meet your requirements or be available on an uninterrupted, secure, or error-free basis. No advice or information, whether oral or written, obtained from Twitter or through the Services, will create any warranty not expressly made herein.

## Links

The Services may contain links to third-party websites or resources. You acknowledge and agree that we are not responsible or liable for: (i) the availability or accuracy of such websites or resources; or (ii) the content, products, or services on or available from such websites or resources. Links to such websites or resources do not imply any endorsement by Twitter of such websites or resources or the content, products, or services available from such websites or resources. You acknowledge sole responsibility for and assume all risk arising from your use of any such websites or resources.

## Limitation of Liability

TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, TWITTER AND ITS SUBSIDIARIES, AFFILIATES, OFFICERS, EMPLOYEES, AGENTS, PARTNERS AND LICENSORS WILL NOT BE LIABLE FOR ANY DIRECT, INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL OR PUNITIVE DAMAGES, INCLUDING WITHOUT LIMITATION, LOSS OF PROFITS, DATA, USE, GOOD-WILL, OR OTHER INTANGIBLE LOSSES, RESULTING FROM (i) YOUR ACCESS TO OR USE OF OR INABILITY TO ACCESS OR USE THE SERVICES; (ii) ANY CONDUCT OR CONTENT OF ANY THIRD PARTY ON THE SERVICES, INCLUDING WITHOUT LIMITATION, ANY DEFAMATORY, OFFENSIVE OR ILLEGAL CONDUCT OF OTHER USERS OR THIRD PARTIES; (iii) ANY CONTENT OBTAINED FROM THE SERVICES; AND (iv) UNAUTHORIZED ACCESS, USE OR ALTERATION OF YOUR TRANSMISSIONS OR CONTENT, WHETHER BASED ON WARRANTY, CONTRACT, TORT (INCLUDING NEGLIGENCE) OR ANY OTHER LEGAL THEORY, WHETHER OR NOT TWITTER HAS BEEN INFORMED OF THE POSSIBILITY OF SUCH DAMAGE, AND EVEN IF A REMEDY SET FORTH HEREIN IS FOUND TO HAVE FAILED OF ITS ESSENTIAL PURPOSE.

## Exclusions

Some jurisdictions do not allow the exclusion of certain warranties or the exclusion or limitation of liability for consequential or incidental damages, so the limitations above may not apply to you.

## Waiver and Severability

The failure of Twitter to enforce any right or provision of these Terms will not be deemed a waiver of such right or provision. In the event that any provision of these Terms is held to be invalid or unenforceable, the remaining provisions of these Terms will remain in full force and effect.

## Controlling Law and Jurisdiction

These Terms and any action related thereto will be governed by the laws of the State of California without regard to or application of its conflict of law provisions or your state or country of residence. All claims, legal proceedings or litigation arising in connection with the Services will be brought solely in San Francisco County, California, and you consent to the jurisdiction of and venue in such courts and waive any objection as to inconvenient forum. If you are accepting these Terms on behalf of a United States federal government entity that is legally unable to accept the controlling law, jurisdiction or venue clauses above, then those clauses do not apply to you but instead these Terms and any action related thereto will be will be governed by the laws of the United States of America (without reference to conflict of laws) and, in the absence of federal law and to the extent permitted under federal law, the laws of the State of California (excluding choice of law).

## Entire Agreement

These Terms, the Twitter Rules and our Privacy Policy are the entire and exclusive agreement between Twitter and you regarding the Services (excluding any services for which you have a separate agreement with Twitter that is explicitly in addition or in place of these Terms), and these Terms supersede and replace any prior agreements between Twitter and you regarding the Services. Other than members of the group of companies of which Twitter is the parent, no other person or company will be third party beneficiaries to the Terms.

We may revise these Terms from time to time, the most current version will always be at twitter.com/tos. If the revision, in our sole discretion, is material we will notify you via an @Twitter update or e-mail to the email associated with your account. By continuing to access or use the Services after those revisions become effective, you agree to be bound by the revised Terms.

These Services are operated and provided by Twitter Inc., 795 Folsom Street, Suite 600, San Francisco, CA 94107. If you have any questions about these Terms, please contact us.

*Effective: June 01, 2011*

Archive of Previous Terms

## Footer

- © 2011 Twitter
- About Us
- Contact
- Blog
- Status
- Resources
- API
- Business

- <u>Help</u>
- <u>Jobs</u>
- <u>Terms</u>
- <u>Privacy</u>

# EXHIBIT C

 help center

- Sign in
- Check your tickets

English 

- ← Back to Report a violation
- Guidelines & Best Practices
- Safety Center
- Reporting Violations
- Policy Information
- Developer and Media Guidelines

# The Twitter Rules

Our goal is to provide a service that allows you to discover and receive content from sources that interest you as well as to share your content with others. We respect the ownership of the content that users share and each user is responsible for the content he or she provides. Because of these principles, we do not actively monitor user's content and will not censor user content, except in limited circumstances described below.

## Content Boundaries and Use of Twitter

In order to provide the Twitter service and the ability to communicate and stay connected with others, there are some limitations on the type of content that can be published with Twitter. These limitations comply with legal requirements and make Twitter a better experience for all. We may need to change these rules from time to time and reserve the right to do so. Please check back here to see the latest.

- **Impersonation:** You may not impersonate others through the Twitter service in a manner that does or is intended to mislead, confuse, or deceive others
- **Trademark:** We reserve the right to reclaim user names on behalf of businesses or individuals that hold legal claim or trademark on those user names. Accounts using business names and/or logos to mislead others will be permanently suspended.
- **Privacy:** You may not publish or post other people's private and confidential information, such as credit card numbers, street address or Social Security/National Identity numbers, without their express authorization and permission.

- **Violence and Threats**: You may not publish or post direct, specific threats of violence against others.
- **Copyright:** We will respond to clear and complete notices of alleged copyright infringement. Our copyright procedures are set forth in the Terms of Service.
- **Unlawful Use:** You may not use our service for any unlawful purposes or in furtherance of illegal activities. International users agree to comply with all local laws regarding online conduct and acceptable content.
- **Misuse of Twitter Badges**: You may not use a Verified Account badge or Promoted Products badge unless it is provided by Twitter. Accounts using these badges as part of profile pictures, background images, or in a way that falsely implies affiliation with Twitter will be suspended.

# Spam and Abuse

Twitter strives to protect its users from spam and abuse. Technical abuse and user abuse is not tolerated on Twitter.com, and will result in permanent suspension. Any accounts engaging in the activities specified below are subject to permanent suspension.

- **Serial Accounts:** You may not create serial accounts for disruptive or abusive purposes, or with overlapping use cases. Mass account creation may result in suspension of all related accounts. Please note that any violation of the Twitter Rules is cause for permanent suspension of all accounts.
- **Username Squatting**: You may not engage in username squatting. Accounts that are inactive for more than 6 months may also be removed without further notice. Some of the factors that we take into account when determining what conduct is considered to be username squatting are:
  - the number of accounts created
  - creating accounts for the purpose of preventing others from using those account names
  - creating accounts for the purpose of selling those accounts
  - using feeds of third-party content to update and maintain accounts under the names of those third parties
- **Invitation spam:** You may not use Twitter.com's address book contact import to send repeat, mass invitations.
- **Selling user names:** Unless you have been specifically permitted to do so in a separate agreement with Twitter, you agree that you will not reproduce, duplicate, copy, sell, trade or resell the Services for any purpose, where "Services" is defined as follows: Your use of Twitter's products, services and web sites (referred to collectively as the "Services" in this document and excluding any services provided to you by Twitter under a separate written agreement) is subject to the terms of a legal agreement between you and Twitter.
- **Malware/Phishing**: You may not publish or link to malicious content intended to damage or disrupt another user's browser or computer or to compromise a user's privacy.
- **Spam:** You may not use the Twitter service for the purpose of spamming anyone. What constitutes "spamming" will evolve as we respond to new tricks and tactics by spammers. Some of the factors that we take into account when determining what conduct is considered to be spamming are:
  - If you have followed a large amount of users in a short amount of time;
  - If you have followed and unfollowed people in a short time period, particularly by automated means (aggressive follower churn);
  - If you repeatedly follow and unfollow people, whether to build followers or to garner more attention for your profile;

- ° If you have a small number of followers compared to the amount of people you are following;
- ° If your updates consist mainly of links, and not personal updates;
- ° If you post misleading links;
- ° If a large number of people are blocking you;
- ° The number of spam complaints that have been filed against you;
- ° If you post duplicate content over multiple accounts or multiple duplicate updates on one account;
- ° If you post multiple unrelated updates to a topic using #;
- ° If you post multiple unrelated updates to a trending or popular topic;
- ° If you send large numbers of duplicate @replies or mentions;
- ° If you send large numbers of unsolicited @replies or mentions in an attempt to spam a service or link;
- ° If you add a large number of unrelated users to lists in an attempt to spam a service or link;
- ° If you repeatedly post other users' Tweets as your own;
- ° If you have attempted to "sell" followers, particularly through tactics considered aggressive following or follower churn;
- ° Creating or purchasing accounts in order to gain followers;
- ° Using or promoting third-party sites that claim to get you more followers (such as follower trains, sites promising "more followers fast," or any other site that offers to automatically add followers to your account);
- ° If you create false or misleading Points of Interest;
- ° If you create Points of Interest to namesquat or spam.
- **Pornography:** You may not use obscene or pornographic images in either your profile picture or user background

Your account may be suspended for Terms of Service violations if any of the above is true. Please see our help pages on Following Best Practices and Automation Rules and Best Practices for a more detailed discussion of how the Rules apply to those particular account behaviors. Accounts created to replace suspended accounts will be permanently suspended.

**Accounts engaging in any of these behaviors may be investigated for abuse. Accounts under investigation may be removed from Search for quality. Twitter reserves the right to immediately terminate your account without further notice in the event that, in its judgment, you violate these Rules or the Terms of Service.**

## Having Trouble?

**Check out our complete list of articles outlining our policies, guidelines, and best practices.**

- © 2011 Twitter
- ·
- Back to Twitter

- About Us
- Contact

- Blog
- Status
- Goodies
- API
- Business
- Help
- Jobs
- Terms
- Privacy