1   JOHN C. KIRKE, #175055
    SOPHIA E.C. SCHWARTZ, #272915
2   DONAHUE GALLAGHER WOODS LLP
    Attorneys at Law
3   1999 Harrison Street, 25th Floor
    Oakland, California  94612-3520
4   P.O. Box 12979
    Oakland, California  94604-2979
5   Telephone:     (510) 451-0544
    Facsimile:     (510) 832-1486
6
    Attorneys for Plaintiff
7   PHONEDOG, LLC

8

9                   UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11

12  PHONEDOG, LLC, a Delaware              CASE NO.  3:11-cv-03474-MEJ
    corporation,
13                                         **PLAINTIFF PHONEDOG, LLC'S**
                    Plaintiff,             **OPPOSITION TO DEFENDANT NOAH**
14                                         **KRAVITZ'S MOTION TO DISMISS FOR**
           v.                              **LACK OF SUBJECT MATTER**
15                                         **JURISDICTION AND FAILURE TO**
    NOAH KRAVITZ, an individual,           **STATE A CLAIM**
16
                    Defendant.             Date:        September 15, 2011
17                                         Time:        10:00 a.m.
                                           Dept.:       Courtroom B - 15th Floor
18                                         Judge:       Maria-Elena James

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................. 1

FACTS ............................................................................................................................. 1

    I.      FACTS AS ALLEGED IN THE COMPLAINT ................................................... 1

    II.    ADDITIONAL FACTS ........................................................................................ 2

ARGUMENT .................................................................................................................... 3

    I.      DEFENDANT'S 12(B)(1) MOTION TO DISMISS FOR LACK OF
         SUBJECT MATTER JURISDICTION SHOULD BE DENIED .......................... 3

        A.    Defendant Cannot Establish That PhoneDog Cannot Meet The
             Amount In Controversy Requirement ....................................................... 4

        B.    PhoneDog Is Entitled To Damages ......................................................... 5

        C.    Employers Such As PhoneDog Have Ownership Rights Over
             Twitter Accounts Used By Their Employees ............................................ 7

        D.    The Amount In Controversy Exceeds $75,000 ........................................ 8

    II.    DEFENDANT'S 12(B)(6) MOTION TO DISMISS FOR FAILURE TO
         STATE A CLAIM SHOULD BE DENIED .......................................................... 9

        A.    PhoneDog Sufficiently Pleads Its Claim For Misappropriation Of
             Trade Secrets.......................................................................................... 10

        B.    PhoneDog Adequately Pleads Its Cause Of Action For Intentional
             Interference With Prospective Economic Advantage ............................... 13

        C.    PhoneDog Adequately Pleads Its Claim For Negligent Interference
             With Prospective Economic Advantage ................................................... 15

        D.    PhoneDog Adequately States A Claim For Conversion. ......................... 16

CONCLUSION ................................................................................................................. 19

# TABLE OF AUTHORITIES

**Page**

## CASES

*Al-Kidd v. Ashcroft,*
   580 F.3d 949 (9th Cir. 2009), *cert. granted* in part on other issues, 131 S. Ct.
   415 (2010) ......................................................................................................... 9

*Ashcroft v. Iqbal,*
   129 S. Ct. 1937 (2009) ...................................................................................... 18

*B. Aronson, Inc. v. Bradshaw International, Inc.,*
   No. CV 11-531 CAS (SSx), 2011 U.S. Dist. LEXIS 47769, at *22 (C.D. Cal.
   Apr. 25, 2011) ................................................................................................... 12

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ............................................................................................ 9

*Blank v. Kirwan,*
   39 Cal. 3d 311 (1985) ................................................................................... 14, 15

*Buxbom v. Smith,*
   23 Cal. 2d 535 (1944) ......................................................................................... 6

*CRST Van Expedited v. Werner Enters., Inc.,*
   479 F.3d 1099 (9th Cir. 2007) .......................................................................... 13

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.,*
   11 Cal. 4th 376 (1995) ................................................................................. 14, 15

*Diodes, Inc v. Franzen,*
   260 Cal. App. 2d 244 (1968)............................................................................. 12

*Farmilant v. Singapore Airlines, Ltd.,*
   561 F. Supp. 1148 (1983)..................................................................................... 4

*Gibbs v. Buck,*
   307 U.S. 66 (1939) ............................................................................................... 4

*Gould Electronics Inc. v. United States,*
   220 F.3d 169 (3rd Cir. 2003) ......................................................................... 5, 8

*Hernandez v. Lopez,*
   180 Cal. App. 4th 932 (2009) ........................................................................... 16

*In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.,*
   102 F.3d 1524 (9th Cir. 1996)..................................................................... 10, 18

*Janda v. Madera Community Hosp.,*
   16 F. Supp 2d 1181 (E.D. Cal 1998)................................................................. 15

*Kerns v. United States,*
   585 F.3d 187 (4th Cir. 2009).............................................................................. 4

*Korea Supply Co. v. Lockheed Martin Corp.,*
   29 Cal. 4th 1134 (2003) ............................................................................... 13, 14

*Kreman v. Cohen,*
   337 F.3d 1024 (9th Cir. 2003)............................................................................. 7

*Lormand v. U.S. Unwired, Inc.,*
   565 F.3d 228 (5th Cir. 2009)............................................................................... 9

-ii-

1

### TABLE OF AUTHORITIES
(continued)

2

**Page**

3

*Lujan v. National Wildlife Federation*,
497 U.S. 871 (1990) .................................................................................................. 4

4

*Moore v. Regents of the University of California*,
51 Cal. 3d 120 (1990) ............................................................................................... 18

5

*Musson Theatrical, Inc. v. Federal Express Corp.*,
89 F.3d 1244 (6th Cir. 1996)...................................................................................... 4

6

*Nami v. Fauver*,
82 F. 3d 63 (3rd Cir. 1996) ....................................................................................... 10

7

*nSight, Inc. v. PeopleSoft, Inc.*,
296 Fed. Appx. 555 (9th Cir. 2008) ......................................................................... 12

8

*Pareto v. F.D.I.C.*,
139 F.3d 696 (9th Cir. 1998)................................................................................. 9, 15

9

*Pegram v. Herdich*,
530 U.S. 211 (2000) .................................................................................................. 10

10

*Rescuecom Corp. v. Google Inc.*,
562 F.3d 123 (2nd Cir. 2009)..................................................................................... 9

11

*Riggins v. Riggins*,
415 F.2d 1259 (9th Cir. 1969)..................................................................................... 5

12

*Rubert-Torres v, Hospital San Pablo, Inc.*,
205 F.3d 472 (1st Cir. 2000) ..................................................................................... 18

13

*Silva v. Bieluch*,
351 F.3d 1045 (11th Cir. 2003)................................................................................. 19

14

*Taylor v. Forte Hotels International*,
235 Cal. App. 3d 1119 (1991)................................................................................... 17

15

*TMX Funding, Inc v. Impero Technologies*,
No. C 10-00202 JF, 2010 U.S. Dist. LEXIS 60260, at *7 (N.D. Cal. Jun. 17,
2010) .................................................................................................................... 11, 12

16

*United States v. City Redwood City*,
640 F.2d 963 (9th Cir. 1981)..................................................................................... 10

17

*Venhaus v. Shultz*,
155 Cal. App. 4th 1072 (2007) ................................................................................. 15

18

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003).................................................................................... 11

19

*Young v. Young*,
No. 10cv976-WGH-BGS, 2010 U.S. Dist. LEXIS 117362, at *22 (S.D. Cal.
Nov. 3, 2010) .............................................................................................................. 11

### STATUTES

28 U.S.C. § 1332 ............................................................................................................. 3

Cal. Civ. Code § 3426.1 ............................................................................................... 13

Cal. Civ. Code § 3426.1(b) ............................................................................................ 10

Cal. Civ. Code § 3426.1, *et. seq*.................................................................................. 10

20

21

22

23

24

25

26

27

28

-iii-

## TABLE OF AUTHORITIES
**(continued)**

**Page**

Fed. R. Civ. P. 12(b)(1)...................................................................................................... 4

Fed. R. Civ. P. 12(b)(6)......................................................................... 4, 9, 10, 12, 18

Fed. R. Civ. P. 15(a)(2)................................................................................................. 19

Fed. R. Civ. P. 56.................................................................................... 4, 12, 18

Fed. R. Civ. P. 8............................................................................................ 14, 19

Fed. R. Civ. P. 8(a)(1)...................................................................................................... 8

Fed. R. Civ. P. 8(a)(2)...................................................................................... 9, 14, 16

Fed. R. Civ. P. 9(b) ........................................................................................................ 11

## SECONDARY AUTHORITIES

W. Schwarzer, et al., *California Practice Guide: Federal Civil Procedure Before Trial* (The Rutter Group 2011), § 9.87........................................................................... 4

1

## **INTRODUCTION**

2       The Court should deny defendant Noah Kravitz's ("Defendant") motion to dismiss under

3   Rule 12(b)(1) because the amount in controversy in plaintiff PhoneDog, LLC's ("PhoneDog")

4   complaint exceeds the sum of $75,000, and the parties are completely diverse.  In addition to its

5   allegations that the amount in controversy exceeds $75,000, PhoneDog submits credible evidence

6   to that effect.  Defendant's mere disagreement regarding the amount of damages caused by his

7   wrongful conduct cannot defeat subject matter jurisdiction.  Moreover, Defendant's discussion of

8   Rule 12(b)(1) completely overlooks PhoneDog's interference claims, which, along with its

9   conversion and misappropriation claims, provide a basis for liability.  PhoneDog had economic

10  relationships with the followers on the Twitter Account at issue, and Defendant has interfered

11  with those relationships.

12      Defendant's motion to dismiss under 12(b)(6) requires that the Court look beyond the four

13  corners of the complaint, which is an impermissible inquiry at the pleadings stage.  The inception

14  of the pleadings, without any opportunity for discovery or amendments to pleadings, is not the

15  appropriate time for the Court to conduct essentially a summary judgment hearing, and the Court

16  should decline Defendant's invitation to do so.  PhoneDog's statements of its claims for relief as

17  alleged are legally sufficient.  Therefore, the Court should deny Defendant's motion to dismiss in

18  its entirety.

19

## **FACTS**

20  **I.      FACTS AS ALLEGED IN THE COMPLAINT.**

21      PhoneDog is a highly interactive mobile news and reviews web resource that provides

22  users of its website the resources needed to research, compare prices, and shop from those

23  providers that fit their needs.  Complaint, ¶ 8.  Each month, PhoneDog's website attracts

24  approximately 1.5 million users each month, and its videos reach an average audience of 3

25  million viewers per month. *Id.*, ¶ 9.  PhoneDog uses a variety of social media, including Twitter,

26  to market and promote its services. *Id.*

27      PhoneDog engaged Defendant as a product reviewer and video blogger in April 2006. *Id.*,

28  ¶ 14.  As part of Defendant's work for PhoneDog, Defendant submitted written and video content

to PhoneDog, which was then transmitted to PhoneDog's users via a variety of mediums such as PhoneDog's website and PhoneDog's Twitter accounts. *Id*. Further, PhoneDog granted Defendant use of a Twitter account with the twitter handle @PhoneDog_Noah (the "Account") to use in connection with his work for PhoneDog. *Id.*, ¶ 15. Defendant accessed the Account using a password that constitutes PhoneDog's trade secret and submitted content to the Account in an effort to promote PhoneDog's services. *Id.*, ¶¶ 12, 13, 15. During Defendant's employment with PhoneDog, the Account generated approximately 17,000 followers (the "Followers"). *Id.*, ¶ 16.

After Defendant suddenly left PhoneDog in October 2010, he continued to use the Account (albeit with a different Twitter handle) to communicate with PhoneDog's followers, promoting both his services and the services of his new employer, without PhoneDog's permission. *Id.*, ¶¶ 17, 19. As a result of Defendant's unauthorized use of the Account, PhoneDog has suffered damages in the amount of $340,000. Complaint, Prayer for Relief 4(c).

## II. ADDITIONAL FACTS.

A significant source of PhoneDog's income derives from selling advertisements on its website. Declaration of Tom Klein in Support of Opposition to Motion to Dismiss ("Klein Decl."), ¶ 4. The amounts advertisers pay for advertisements on PhoneDog's website are based on the Internet traffic going to the website. *Id.*, ¶ 3. PhoneDog's advertisers typically pay PhoneDog for every 1,000 pageviews generated from users visiting the site. *Id.*, ¶ 4. As such, PhoneDog devotes a substantial amount of resources to finding ways to drive Internet users to its website. *Id.*, ¶ 4. One such resource that PhoneDog uses is Twitter. *Id.*, ¶ 5. PhoneDog requests that its employees maintain Twitter accounts and promote PhoneDog by placing content with links to PhoneDog's website on the Twitter accounts. *Id.*, ¶ 5. The followers of the PhoneDog Twitter accounts then click on the links taking them to PhoneDog's website, which in turn generates advertising revenue for PhoneDog. *Id.*, ¶ 5. The passwords to PhoneDog's Twitter accounts are not known to individuals outside of PhoneDog, and PhoneDog makes efforts to maintain the secrecy of the passwords to its Twitter accounts by restricting access to and distribution of the passwords. *Id.*, ¶ 6.

1    Defendant agreed to maintain the Account for the benefit of PhoneDog. *Id.*, ¶ 8. At

2    PhoneDog's request, Defendant added content to the Account in order to promote PhoneDog and

3    generate links to PhoneDog's website. *Id.*, ¶ 8. During the time Defendant maintained the

4    Account for PhoneDog, the Account generated approximately 17,000 followers, and those

5    followers were integral in driving traffic to PhoneDog's website. *Id.*, ¶ 8. After Defendant left

6    PhoneDog, he continued to use the Account to tweet to PhoneDog's followers. *Id.*, ¶ 11.

7    Eventually, despite the agreement between PhoneDog and Defendant that the Account was for the

8    benefit of PhoneDog, Defendant failed to respond to multiple requests from PhoneDog to tweet or

9    publish articles and promotions on the Account. *Id.*, ¶ 9. To date, Defendant has not returned

10   access to the Account to PhoneDog, and continues to use the Account to contact the Followers in

11   order to promote himself and TechnoBufalo, a competitor of PhoneDog. *Id.*, ¶ 11.

12   There are a variety of ways of valuing a Twitter account, including access to the account

13   and the followers. *Id.*, ¶ 10. The value of the Account is worth more than $10,000 per month.

14   *Id.*, ¶ 10.

15   <center>**ARGUMENT**</center>

16   **I.    DEFENDANT'S 12(B)(1) MOTION TO DISMISS FOR LACK OF SUBJECT
17          MATTER JURISDICTION SHOULD BE DENIED.**

18   Contrary to Defendant's assertion in its motion to dismiss, the Court has subject matter

19   jurisdiction over this case. Title 28, United States Code section 1332 provides that district courts

20   have original jurisdiction over all civil actions where the matter in controversy exceeds the sum or

21   value of $75,000, exclusive of interests and costs, and is between citizens of different states.

22   Defendant does not dispute that he and PhoneDog are completely diverse. Rather, Defendant

23   erroneously argues that the amount in controversy does not exceed $75,000.

24   Not only does PhoneDog's Complaint, on its face, clearly allege that the amount in

25   controversy exceeds the sum or value of $75,000, but the extrinsic evidence offered by Defendant

26   to prove otherwise does not demonstrate with a legal certainty that PhoneDog's damages do not

27

28

1    exceed $75,000.   Moreover, the extrinsic evidence offered by Defendant in support of his

2    assertions is inadmissible and therefore should not be considered by the Court.[1]

3        Further, because the facts regarding PhoneDog's ability to state a claim that entitles it to

4    damages are "inextricably intertwined" with the merits of PhoneDog's claims, a motion under

5    Federal Rule of Civil Procedure 12(b)(1) is inappropriate.  *See Kerns v. United States*, 585 F.3d

6    187, 193 (4th Cir. 2009) (in such cases, defendant must proceed under Federal Rule of Civil

7    Procedure 12(b)(6) or Federal Rule of Civil Procedure 56 and "the court should resolve the

8    relevant factual disputes only after appropriate discovery."); W. Schwarzer, et al., *California*

9    *Practice Guide: Federal Civil Procedure Before Trial* (The Rutter Group 2011), § 9.87.  Finally,

10   even if the court were to turn this motion into a motion for summary judgment, PhoneDog would

11   prevail on the basis that there are clearly issues of material fact in dispute.  *See* Fed. R. Civ. P. 56.

12   As such, Defendant's 12(b)(1) motion to dismiss for lack of subject matter jurisdiction should be

13   denied.

14       **A.    Defendant Cannot Establish That PhoneDog Cannot Meet The Amount In**
             **Controversy Requirement.**
15

16       When a defendant makes a "factual attack" on the amount in controversy asserted by the

17   plaintiff, the court may dismiss only if there is a *legal certainty* that the plaintiff cannot satisfy the

18   amount in controversy requirement.  *Gibbs v. Buck*, 307 U.S. 66, 72 (1939) (emphasis added).  In

19   making its determination regarding the legal certainty of the amount in controversy, the plaintiff

20   is "entitled to the speculative benefit of any facts he might conceivably prove in support of his

21   well-pleaded allegations." *Farmilant v. Singapore Airlines, Ltd.*, 561 F. Supp. 1148, 1151 (1983).

22   The plaintiff can "survive [a Rule 12(b)(1)] motion by showing *any* arguable basis in law for the

23   claim made." *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1248 (6th Cir.

24   1996) (emphasis added).  "If the right of recovery is uncertain, the doubt should be resolved, for

25

26   _____
     [1] *See* Evidentiary Objections.  Moreover, Defendant cannot cure its evidentiary shortcomings on
     reply because it is improper for the moving party to introduce new facts or different legal
27   arguments in the reply brief than presented in the moving papers. *See Lujan v. National Wildlife*
     *Federation*, 497 U.S. 871, 894-95 (1990) (The court has discretion to disregard late-filed factual
28   matters.)

1   jurisdictional purposes, in favor of the subjective good faith of the plaintiff." *Riggins v. Riggins*,

2   415 F.2d 1259, 1261 (9th Cir. 1969).  Alternatively, when a Defendant makes a "facial attack" on

3   the amount in controversy requirement, the court must consider all the allegations in the

4   Complaint as true.  *Gould Electronics Inc. v. United States*, 220 F.3d 169, 176 (3rd Cir. 2003).

5        Not only does PhoneDog satisfy the amount in controversy requirement on the face of its

6   complaint, but Defendant cannot demonstrate with any degree of "legal certainty" that PhoneDog

7   cannot satisfy the amount in controversy.

8        **B.**      **PhoneDog Is Entitled To Damages.**

9        In making its threshold argument that PhoneDog cannot establish that it is entitled to any

10   monetary recovery, Defendant argues only that PhoneDog offers no proof that it has an ownership

11   interest or right to possession over the Account or the Followers.  In making this argument,

12   however, Defendant fails to consider that PhoneDog is entitled to damages notwithstanding its

13   ownership interest in the Account or list of Followers.

14        PhoneDog clearly is entitled to damages based on Defendant's interference with

15   PhoneDog's access to and use of the Account.  One of the main sources of PhoneDog's revenue is

16   generated by sales of advertisements on its website.  Klein Decl., ¶ 4.  The amounts advertisers

17   pay PhoneDog are dependent on the amount of traffic to PhoneDog's website.  *Id.*, ¶ 3.  In order

18   to increase the traffic to its website, and in turn generate advertising revenue, PhoneDog requests

19   that its representatives maintain Twitter accounts.  *Id.*, ¶ 5.  As such, when PhoneDog hired

20   Defendant as a product reviewer and video blogger, PhoneDog requested that Defendant maintain

21   the Account for the benefit of PhoneDog.  *Id.*, ¶ 8.  Defendant posted content with links to

22   PhoneDog's website to the Account.  *Id.*, ¶ 8.  The Followers then clicked on the links, driving

23   traffic to PhoneDog's website and generating advertising revenue for PhoneDog.  *Id.*, ¶ 8.  Later,

24   contrary to the agreement between PhoneDog and Defendant that the Account was to be used for

25   the benefit of PhoneDog, Defendant failed to respond to requests from PhoneDog to tweet and

26   submit content to the Account promoting PhoneDog and instead used the Account to promote

27   himself and TechnoBuffalo, a competitor of PhoneDog.  *Id.*, ¶¶ 9, 11.  By failing to use the

28   Account for PhoneDog's benefit, Defendant interfered with PhoneDog's access to the Followers,

which in turn interfered with PhoneDog's economic relationships with its advertisers.   Such behavior constitutes "an unfair method of interference with advantageous relations" entitling PhoneDog to damages   *Buxbom v. Smith*, 23 Cal. 2d 535, 548 (1944) (Plaintiff was entitled to damages for the loss of goodwill and business when defendants induced plaintiff to contract for the distribution of defendants' publication, and after plaintiff had built-up and trained an organization for the purpose of performance, breached the contract and hired plaintiff's crews themselves, effectively obtaining the fruits of plaintiff's efforts.)

Even if the Court considers the inadmissible evidence proffered by Defendant (which it may not), Defendant offers no competent evidence in support of its assertion that PhoneDog has no ownership interest in the Account or Followers.   *See* Plaintiff's Evidentiary Objections to Declarations of Cary Kletter and Noah Kravitz In Support of Plaintiff's Opposition to Motion to Dismiss ("Evidentiary Objections").   PhoneDog has an ownership interest in the Account based on the license granted to it by Twitter to use and access the Account, and in the Account's list of followers.[2]

While it may be true that Defendant created the Account, Defendant did so at the request of PhoneDog, for the benefit of PhoneDog and in the cause and scope of performing his duties for PhoneDog.   Klein Decl., ¶¶ 8, 9.   Acting within his employment with PhoneDog, and therefore as PhoneDog's agent, Defendant submitted content to the Account in order to generate traffic to PhoneDog's website.   *Id*., ¶ 8.   As clearly noted in the Twitter Terms of Service, all rights to the content submitted, posted or displayed on the individual Twitter users account are retained by the user of the account.[3]   Thus, PhoneDog had ownership rights over the content submitted to the

---

[2] The language in the Twitter Terms of Service effectively grants users a license to use the Twitter services.  The Twitter Terms of Services states: "In consideration for Twitter granting you access to and use of the Services, you agree that Twitter and its third party providers and partners may place such advertising on the Services or in connection with the display of Content or information form the Services whether submitted by you are others."  Declaration of Cary Kletter in Support of Defendant's Motion to Dismiss, ¶ 6, Exh. B ("Twitter Terms of Service.")   As further consideration for Twitter granting users access to and use of the accounts, As consideration for the license to use the Twitter services, Twitter users provide Twitter with a license to use any content submitted to their accounts.  *Id.*

[3] *See* Twitter Terms of Service, stating: "You retain your rights to any Content you submit, post or display on or through the Services.  By submitting, posting or displaying Content on or through the Services, you grant us a worldwide, non-exclusive, royalty-free license (with the right to

1  Account by its agent, Defendant.  This content, in turn, attracted Twitter users to the Account, and

2  those Twitter users began to follow the Account in order to receive the content.  Klein Decl., ¶ 8.

3  Over time, the Account generated approximately 17,000 Followers, who accessed the Account in

4  order to receive the content, which was the property of PhoneDog.  *Id*., ¶ 8.  The list of Followers

5  is tantamount to a business customer list, and PhoneDog clearly has an intangible property

6  interest in its customer lists.  *See Kreman v. Cohen*, 337 F.3d 1024 (9th Cir. 2003) (courts have

7  allowed conversion claims for intangible property items such as business customer lists).

8  Therefore, PhoneDog has an ownership interest in the list of Followers.

9        Moreover, Defendant's argument that PhoneDog is claiming property rights over people is

10  simply ludicrous.  PhoneDog asserts no ownership rights over the actual individuals following the

11  Account.  Rather, PhoneDog's property interest lies in its license to use and access the Account,

12  and the Account's list of Followers, which as indicated above, is analogous to a customer list.

13       **C.**    **Employers Such As PhoneDog Have Ownership Rights Over Twitter**

14              **Accounts Used By Their Employees.**

15        Defendant cites no competent authority in support of his argument that an employer has

16  no ownership rights over a Twitter account and the access thereto, used by one of its employees.

17  Rather, he makes an unsubstantiated claim that "industry precedent has been that absent an

18  agreement prohibiting any employee from doing so, after an employee leaves an employer, they

19  are free to change their Twitter handle."  *See* Defendant's Motion to Dismiss at 10.  This supposed

20  "industry precedent" is based on two stories about two journalists who recently left their

21  respective jobs at BBC and CNN and upon doing so, changed the handles on the Twitter accounts

22  used by them in the course of their employment with BBC and CNN.  According to Defendant,

23  BBC and CNN were "unable" to prevent those journalists from changing the handles on their

24  Twitter accounts and continuing to tweet to the same Twitter followers who followed them when

25  they were employed by BBC and CNN.  *Id.*  Defendant, however, offers absolutely no evidence

26  in support of his claims.  Thus, Defendant's assertion regarding a supposed industry precedent is

27  _____

28  sublicense) to use, copy, reproduce, process, adapt, modify, publish, transmit, display and
distribute such Content in any and all media or distribution methods."

-7-

1    nothing more than mere speculation.  Such anecdotal evidence is simply not persuasive, and
2    certainly should not be considered at the motion to dismiss stage.

3        Because Defendant cannot establish with a legal certainty that PhoneDog cannot meet the
4    amount in controversy requirement, Defendant's 12(b)(1) motion should be denied.

5        **D.        The Amount In Controversy Exceeds $75,000.**

6        Defendant argues that even if PhoneDog could establish ownership rights in the Account
7    (which, as discussed above, is irrelevant), PhoneDog cannot establish that its claim for damages
8    exceeds $75,000.  Defendant urges the Court to look outside the four corners of PhoneDog's
9    Complaint in evaluating Defendant's motion, but the evidence offered by Defendant in support of
10   its argument is inadmissible and anecdotal.  *See* Evidentiary Objections.  As such, the Court
11   should consider Defendant's motion to be a facial attack on the issue of subject matter jurisdiction
12   and therefore consider all allegations in the Complaint as true.  *Gould Electronics,* 220 F.3d at
13   176.

14       In its Complaint, PhoneDog clearly satisfied the requirements of Federal Rule of Civil
15   Procedure 8(a)(1), stating that "[a]ccording to industry standards, each Twitter follower is
16   currently valued at approximately $2.50 per month" and "[g]iven the Account's approximately
17   17,000 followers . . . on or about October 2010 [the date of Defendant's conversion of the
18   Account], the Account had a value of approximately $42,500 per month."  Complaint, ¶ 16.
19   Given that approximately nine months that have passed since Defendant's conversion of the
20   Account in October 2010, the amount that PhoneDog has been damaged clearly exceeds $75,000.
21   PhoneDog is not required to provide a detailed calculation of how its Account is valued in its
22   Complaint, and therefore, the amount in controversy requirement is adequately stated by
23   PhoneDog in its Complaint.  *See* Fed. R. Civ. P. 8(a)(1) (Plaintiff must make "a *short and plain*
24   statement of the grounds for the court's jurisdiction.") (emphasis added.)

25       Moreover, assuming *arguendo* that the Defendant did make a factual attack on this issue,
26   and PhoneDog was required to submit evidence in support of its position, the evidence presented
27   by PhoneDog clearly shows a probability of PhoneDog being damaged in excess of $75,000.
28   Twitter's prohibition on purchasing or selling a Twitter account is inconsequential.  The value of

-8-

1   the Account lies in the Account's list of Followers and the traffic that those Followers generate to

2   the PhoneDog website.  Klein Decl., ¶ 10.  By admission, Defendant cannot establish that there is

3   a legal certainty that PhoneDog's damages do not exceed $75,000, stating in his moving papers

4   that Twitter followers have value and there are different methods used to value each follower.

5   Clearly the method of valuing a Twitter account is afforded many different interpretations.  The

6   particular method used by PhoneDog in valuing its Account is based on the President of

7   PhoneDog's years of experience in the industry and on other methods.  *Id*., ¶ 10.  Defendant's

8   different valuation of PhoneDog's account does not defeat subject matter jurisdiction.  The

9   amount in controversy, based on PhoneDog's valuation, clearly exceeds $75,000.  Therefore,

10  Defendant's argument fails and its motion to dismiss for lack of subject matter jurisdiction should

11  be denied.

12  **II.   DEFENDANT'S 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A
        CLAIM SHOULD BE DENIED.**

13

14          Motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure

15  12(b)(6) "are viewed with disfavor and are rarely granted."  *Lormand v. U.S. Unwired, Inc.*, 565

16  F.3d 228, 232 (5th Cir. 2009).  Federal Rule of Civil Procedure 8(a)(2) requires only "a short

17  plain statement of the claim showing that the pleader is entitled to relief." Thus, it is not necessary

18  that the pleader make detailed factual allegations.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-

19  555 (2007).  A complaint should not be dismissed for failure to state a claim unless it is clear that

20  "no relief could be granted under *any set of facts* that could be proved consistent with the

21  allegations."  *Id*. (internal citations omitted) (emphasis added).  Further, in considering a 12(b)(6)

22  motion, the court must accept as true all factual allegations set out in plaintiff's Complaint, as well

23  as all reasonable inferences to be drawn from them.  *Pareto v. F.D.I.C.,* 139 F.3d 696, 699 (9th

24  Cir. 1998).  The Complaint must be construed liberally and in the light most favorable to the

25  plaintiff.  *Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 127 (2nd Cir. 2009); *Al-Kidd v.

26  Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009), *cert. granted* in part on other issues, 131 S. Ct. 415

27  (2010).  Importantly, unless the court converts the 12(b)(6) motion into a motion for summary

28  judgment, a court cannot consider material outside of the complaint.  *In re American Cont'l*

1  *Corp./Lincoln Sav. & Loan Sec. Litig.*, 102 F.3d 1524, 1537 (9th Cir. 1996), *rev'd and remanded*

2  on other grounds, 523 U.S. 26 (1997).

3      The question of plaintiff's ability to prove its allegations or possible difficulties in making

4  such proof is generally of no concern in ruling on a rule 12(b)(6) motion: "In considering a

5  12(b)(6) motion, we do not inquire whether the plaintiffs will ultimately prevail, only whether

6  they are entitled to offer evidence to support of their claims." *Nami v. Fauver*, 82 F. 3d 63, 65

7  (3rd Cir. 1996).  Further, a plaintiff's briefing may always be used "to clarify allegations in [its]

8  complaint whose meaning is unclear." *Pegram v. Herdich*, 530 U.S. 211, 230 (2000).

9      Defendant has failed to establish the "extraordinary circumstances" that warrant dismissal

10  pursuant to Rule 12(b)(6).  *See United States v. City Redwood City*, 640 F.2d 963, 966 (9th Cir.

11  1981).

12  **A.      PhoneDog Sufficiently Pleads Its Claim For Misappropriation Of Trade**

13  **Secrets.**

14      PhoneDog adequately pleads its cause of action for misappropriation of trade secrets.

15  Furthermore, a 12(b)(6) motion is improper given the existence of triable issues of material fact

16  surrounding the claim.

17      To state a cause of action for misappropriation of trade secrets under California law, a

18  plaintiff must plead two primary elements: (1) the existence of a trade secret, and

19  (2) misappropriation of the trade secret.  *See* Cal. Civ. Code § 3426.1, *et. seq*.  California law

20  defines "misappropriation" to include "(1) [a]cquisition of a trade secret of another by a person

21  who knows or has reason to know that the trade secret was acquired by improper means; or

22  (2) disclosure or use of a trade secret of another without express or implied consent by a person

23  who . . .  [u]sed improper means to acquire knowledge of the trade secret . . . " Cal. Civ. Code

24  § 3426.1(b).

25      PhoneDog's Complaint clearly identifies the existence of a trade secret: Paragraph 12 and

26  22 of the Complaint allege that PhoneDog's confidential information includes "the passwords to

27  PhoneDog's Twitter accounts, including all @PhoneDog_NAME Twitter accounts used by

28  PhoneDog's employees," and that such confidential information constitutes "PhoneDog's trade

-10-

secrets."  Further, PhoneDog's Complaint alleges that when PhoneDog requested that "Defendant relinquish use of the Account," Defendant instead "merely changed the Twitter handle on the Account" and "continues to use the "Account," and that "Defendant used improper means, as such are defined in Civil Code section 3426.1(a), to obtain and misappropriate the Confidential Information."  Complaint, ¶¶ 17, 23.  Thus, PhoneDog adequately alleges the two requirements for a misappropriation of trade secrets claim – the existence of a trade secret, and the misappropriation of that trade secret.  *See Young v. Young*, No. 10cv976-WGH-BGS, 2010 U.S. Dist. LEXIS 117362, at *22 (S.D. Cal. Nov. 3, 2010) (a complaint alleging that "the 'System, including the Camera' were trade secrets, and by 'unlawfully and/or improperly possessing the Camera and/or using the Camera and/or disclosing to others its inner workings' [defendant] 'misappropriat[ed] said trade secrets, all without the permission of any of the [Counterclaimants]'" adequately alleged a claim for misappropriation of trade secrets.)

Contrary to what Defendant asserts, Federal Rule of Civil Procedure 9(b)'s heightened pleading standard does not apply to PhoneDog's claim for misappropriation of trade secrets because PhoneDog's claim does not sound in fraud or mistake.  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003) (if "the claim is said to be 'grounded in fraud' or to 'sound in fraud,' [then] the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)."); *TMX Funding, Inc v. Impero Technologies*, No. C 10-00202 JF, 2010 U.S. Dist. LEXIS 60260, at *7 (N.D. Cal. Jun. 17, 2010) (a claim that misappropriation of trade secrets occurred when defendants stole several computers, servers and hard files was not grounded in fraud or mistake.)

Similarly to *TMX Funding*, PhoneDog alleges in its Complaint that the misappropriation of trade secrets occurred when Defendant took the Account from PhoneDog and later denied PhoneDog's access to the Account.  Complaint, ¶ 23; *see also* Klein Decl. ¶ 9.  Thus, as noted in Defendant's moving papers, a complaint for misappropriation of trade secrets simply "should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the

-11-

secret lies." *Diodes, Inc v. Franzen*, 260 Cal. App. 2d 244, 253 (1968). The "reasonable particularity" element means that "the plaintiff must make some showing that is reasonable, i.e. fair, proper, just, and rational under all of the circumstances to identify its alleged trade secret." *nSight, Inc. v. PeopleSoft, Inc.,* 296 Fed. Appx. 555, 560-61 (9th Cir. 2008) (citations omitted). Here, Defendant clearly identifies its trade secret as the passwords to its Twitter accounts. *See* Complaint, ¶¶ 12, 22. This description is sufficient to permit Defendant to "ascertain the boundaries within which the secrets lie." *TMX Funding*, at \*9-10.

Moreover, any questions regarding whether PhoneDog has a protectable trade secret are improperly addressed on a 12(b)(6) motion to dismiss. Instead, such questions should be addressed in a motion for summary judgment under Federal Rule of Civil Procedure 56. *See B. Aronson, Inc. v. Bradshaw International, Inc.*, No. CV 11-531 CAS (SSx), 2011 U.S. Dist. LEXIS 47769, at \*22 (C.D. Cal. Apr. 25, 2011). Even if the court was to convert Defendant's Motion to a motion under Federal Rule of Civil Procedure 56, such a motion should be denied. Federal Rule of Civil Procedure 56 provides that a motion for summary judgment is proper only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

In his moving papers, Defendant identifies genuine disputes as to the material facts making up PhoneDog's claims. Although Defendant contends that passwords are not trade secrets, California courts have held that login and password information constitute trade secrets because they are information that would not be generally known to entities outside of the company and their economic value derives from the fact that they are not generally known to others. *See TMX Funding*, at \*10. Here, PhoneDog's Twitter passwords are not known to individuals outside of its company. Klein Decl., ¶ 6. Further, PhoneDog maintained the secrecy of the passwords by restricting access to and distribution of the passwords generally to only one specific editor who maintains the account. *Id*., ¶ 6. Additionally, while Defendant argues that he created the Account and the password, in actuality the creation of the Account and the password were done in the course of his employment with PhoneDog. *Id*., ¶ 8. Given the existence of

-12-

triable issues of material fact pertaining to PhoneDog's cause of action for misappropriation of trade secrets, a motion for summary judgment should be denied.

**B.      PhoneDog Adequately Pleads Its Cause Of Action For Intentional Interference With Prospective Economic Advantage.**

PhoneDog sufficiently pleads its claim for intentional interference with prospective economic advantage.  The tort of "interference with prospective economic advantage requires a plaintiff to allege an act that is wrongful independent of the interference itself." *CRST Van Expedited v. Werner Enters., Inc.*, 479 F.3d 1099, 1108 (9th Cir. 2007).  "[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1159 (2003).  The complainant "*merely must allege that [defendant's] acts were unlawful for a reason other than they interfered with [plaintiff's] prospective economic advantage.*" *CRST Van Expedited*, 479 F.3d at 1110 (emphasis added).

PhoneDog alleges that Defendant's unlawful conduct includes the "wrongful misappropriation and use of the Confidential Information."  Complaint, ¶ 30.  Also, Defendant breached his agreement to tweet on behalf of Phone Dog.  Klein Decl., ¶ 9.  Such conduct is unlawful under Cal. Civ. Code section 3426.1 and is independent of Defendant's interference with PhoneDog's prospective economic advantage.  Moreover, contrary to what Defendant asserts, PhoneDog alleged in its Complaint "an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff and some third party"; Paragraph 29 of the Complaint states "PhoneDog *has had* and *continues* to enjoy relationships with existing and prospective users of its mobile news and review services." *See Korea Supply Co*., 29 Cal. 4th  at 1153; Complaint, ¶ 29 (emphasis added).

Additionally, Defendant's "intentional acts . . .   [which were] designed disrupt [PhoneDog's economic] relationship[s]" are pled adequately as follows: Defendant has "used Defendant's knowledge of the Confidential information to access the Account and communicate with PhoneDog's Followers, all in an attempt to position Defendant favorably against PhoneDog and convert PhoneDog's users to Defendant's own use;" "made improper use of Defendant's

-13-

knowledge of the Confidential Information to access the Account to compete fairly against PhoneDog for PhoneDog's existing customers;" "devised Defendant's marketing of his and his employers' services based on Defendant's knowledge of the Confidential Information;" "avoided the expenditure of time and resources on locating or obtaining potential users by making use of the Confidential Information to access the Account and communicate with PhoneDog's Followers;" "[wrongfully] discredit[ed] PhoneDog in the eyes of its users;" and "attempt[ed] to destroy PhoneDog's customers' confidence in PhoneDog by disparaging PhoneDog." Complaint, ¶¶ 24(a)-(d), 30; *See Korea Supply Co.*, 29 Cal. 4th at 1153.

Further, PhoneDog clearly alleges in its Complaint that PhoneDog's economic relationships were disrupted: "The aforementioned conduct by Defendant was designed to disrupt, and has in fact disrupted, PhoneDog's economic relationships with its existing and prospective users and has adversely affected, and will continue to adversely affect, PhoneDog's ongoing relationships with these users." Complaint, ¶ 30; *See Korea Supply Co.*, 29 Cal. 4th at 1153. Moreover, as discussed in Section I.B above, Defendant's behavior disrupted PhoneDog's economic relationships with its advertisers, which are dependent on traffic being driven to PhoneDog's website by sources such as the Account. *See* Klein Decl., ¶¶ 3, 8. Finally, PhoneDog adequately alleged that it, "[a]s a direct and proximate result of Defendant's conduct, [] has suffered damage to its business, reputation, and goodwill." Complaint, ¶ 31; *See Korea Supply Co.*, 29 Cal. 4th at 1153.

Defendant's reliance on California case law to establish what PhoneDog was required to plead in its Complaint is misplaced. Defendant's wrongful acts giving rise to the interference include the misappropriation of the Twitter account and the breach of his agreement to tweet on behalf of PhoneDog. Defendant also erroneously states that PhoneDog must "establish" and "prove" elements of its claim in its complaint. *See Blank v. Kirwan*, 39 Cal. 3d 311, 330-31 (1985); *see Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 393 (1995). There is no requirement in federal court under Federal Rule of Civil Procedure 8 that PhoneDog establish or prove its claim in its complaint. Rather, PhoneDog must make a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The

-14-

Court must accept as true all material all material allegations in the Complaint and construe them in the light most favorable to the plaintiff.  *Pareto v. F.D.I.C.,* 139 F.3d at 699.  The "substantive law of California does not require more." *See Janda v. Madera Community Hosp.*, 16 F. Supp 2d 1181, 1189 (E.D. Cal 1998) (complaint survived motion to dismiss where Plaintiff alleged that defendant's tortious conduct "impaired his economic relationship with his existing and potential patients" but did not specify the identifies of the alleged parties) (citation omitted.)  Moreover, *Della Penna* involved an appeal from a jury verdict.  *Della Penna*, 11 Cal. 4th at 378.  *Blank* involved conspiracy claims against a muncipality, and plaintiff failed to prosecute the claim. *Blank*, 39 Cal. 3d at 316-7.

PhoneDog's claim for intentional interference with prospective economic advantage is legally and factually sufficient, and as such, the Court should deny Defendant's motion to dismiss.

### C.      PhoneDog Adequately Pleads Its Claim For Negligent Interference With Prospective Economic Advantage.

The tort of negligent interference with prospective economic advantage is established where Plaintiff demonstrates the following:

> (1) An economic relationship existed between the plaintiff and a third party which contained a reasonably probably future economic benefit or advantage to plaintiff; (2) the defendant knew of the existence of the relationship and was aware or should have been aware that if it did not act with due care its actions would interfere with this relationship and cause plaintiff to lose in whole or in part the probably future economic benefit or advantage of the relationship; (3) the defendant was negligent and (4) such negligence caused damage to plaintiff in that the relationship was actually interfered with or disrupted and plaintiff lost in whole or in part the economic benefits or advantage reasonably expected from the relationship.

*Venhaus v. Shultz*, 155 Cal. App. 4th 1072, 1078 (2007).

PhoneDog's satisfaction in its Complaint of elements one, two and four are discussed above in Section II.B, above.  Moreover, PhoneDog adequately alleges that Defendant was negligent.  Paragraph 35 of the Complaint states: "Defendant knew or had reason to believe that the aforementioned conducted engaged in by Defendant would affect and irreparably harm PhoneDog's economic relationships with it users and that such relationships contained a

-15-

1   probability of future economic benefit.  As alleged above, Defendant did wrongfully interfere

2   with PhoneDog's prospective economic relationships."

3       Later, in Paragraph 36 of the Complaint PhoneDog states "[a]s a direct and proximate

4   result of the *negligent interference*, PhoneDog suffered damage . . ." (emphasis added).

5   Defendant's duty of care owed to PhoneDog is adequately alleged by the statement in PhoneDog's

6   Complaint that defendant "knew or had reason to believe" that his conduct would negatively

7   affect PhoneDog's economic relationships.  Moreover, it can be reasonably inferred from the

8   Complaint that Defendant knew that misappropriating PhoneDog's trade secret to access the

9   Account, breaching his agreement to tweet on behalf of PhoneDog, and communicating with

10  PhoneDog's Followers would harm PhoneDog's relationship with those Followers and its

11  advertisers.  *See* Complaint, ¶¶ 14-19; *See* Klein Decl. ¶¶ 8, 11.

12      For the purpose of PhoneDog's Complaint, it is sufficient for PhoneDog to state the

13  factual basis for its claims without providing specific details of each and every fact giving rise to

14  those claims.  *See* Fed. R. Civ. P. 8(a)(2).  Because PhoneDog adequately alleged all elements

15  required of it to state a claim for negligent interference with prospective economic advantage,

16  Defendant's motion should be denied.

17      **D.    PhoneDog Adequately States A Claim For Conversion.**

18      To state a claim for conversion, plaintiff must allege the following: "(1) the plaintiff's

19  ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act

20  or disposition of property rights; and (3) damages."  *Hernandez v. Lopez*, 180 Cal. App. 4th 932,

21  939-40 (2009).  Here, PhoneDog alleges that "PhoneDog was and still is, the owner of the

22  Account and was, and still is entitled to possession of the Account.  The Account and all

23  approximately 17.000 of PhoneDog's Followers generated by the Account, were and are the sole

24  property of PhoneDog."  Complaint, ¶ 38.  Defendant's conversion of the account is alleged in

25  Paragraphs 39 and 40 of the Complaint as follows:

26          PhoneDog gave Defendant permission to use the Account during
            PhoneDog's employment of Defendant.  Once Defendant ceased to
27          be employed by PhoneDog, Defendant was required to return the
            Account to PhoneDog.  On or about October 15, 2010, upon
28          Defendant's resignation form PhoneDog, PhoneDog requested that

-16-

Defendant relinquish the Account to PhoneDog. At that point in time, Defendant wrongfully converted the Account to his own use by changing the handle on the Account to @noahkravitz. Defendant has used and continues to use the Account with the handle @noahkravitz to communicate with and market his services and services of his employer to PhoneDog's Followers.

In contending that PhoneDog does not assert sufficient facts to support its allegations that PhoneDog has ownership interests in both the Account and the Account's followers, Defendant conveniently ignores PhoneDog's statements that Account was PhoneDog's, and that as an representative of PhoneDog, Defendant was "given use of" – not ownership of - the Account. Complaint, ¶¶ 14, 15. Further, PhoneDog alleges its ownership interest in the list Followers by stating that the Account "generated approximately 17,000 Twitter Followers," and providing that each Follower is worth $2.50 per month. *Id*., ¶¶ 16, 41. Given the fact that PhoneDog assigns a value to each Follower, it can be reasonably inferred that PhoneDog asserts ownership rights over the list of Followers. Moreover, it can be reasonably inferred that PhoneDog considers its list of Twitter Followers to be akin to a customer list, which, as discussed in Section I.B above, constitutes an intangible property interest.

Defendant further argues that PhoneDog's Complaint does not allege that Defendant's act of conversion was "knowingly or intentionally done." *Taylor v. Forte Hotels International*, 235 Cal. App. 3d 1119, 1124 (1991). In Paragraph 17 of the Complaint (which is incorporated into PhoneDog's cause of action for conversion by reference), PhoneDog states that "PhoneDog requested that Defendant relinquish use of the Account," and "[i]nstead of relinquishing actual use of the Account, Defendant merely changed the  Twitter handle on the Account to '@noahkravitz.'" Regardless of whether the actual words "knowingly" and "intentionally" were used in PhoneDog's Complaint, it can be inferred by the language in Paragraph 17 that Defendant's conduct was both knowing and intentional.

Moreover, Defendant's argument that PhoneDog cannot state a claim for conversion because PhoneDog has no ownership rights in the Account or list of Followers fails. As discussed in Section I.B above, PhoneDog clearly has an ownership interest in both the Account and its list of Followers. Therefore, it has established the requisite ownership necessary to

-17-

maintain a cause of action for conversion. *See Moore v. Regents of the University of California,* 51 Cal. 3d 120, 136 (1990). Moreover, it is inconsequential that Defendant disputes that PhoneDog has an ownership interest in the Account and list of Followers: when considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1950 (2009).

Finally, Defendant improperly attempts to admit extrinsic evidence to support his motion, citing to the Twitter Terms of Service and Use and the Declaration of Noah Kravitz to support his arguments regarding PhoneDog's ownership rights and whether Defendant's conduct was "knowing" and "intentional."[4] Notwithstanding the fact that the evidence relied on by Defendant was not properly introduced, the Court may not consider material outside of the Complaint in making a determination on a 12(b)(6) motion unless the court converts the motion to a motion for summary judgment under Federal Rule of Civil Procedure 56. *In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, 102 F.3d at 1537. There is no indication here that Defendant is seeking summary judgment or that the Court has converted this motion to a Federal Rule of Civil Procedure 56 motion. Further, conversion is generally disfavored in situations, such as this one, where "(1) the motion comes quickly after the Complaint was filed, (2) discovery is in its infancy and the nonmovant is limited in obtaining and submitting evidence to counter the motion, or (3) the nonmovant does not have reasonable notice that a conversion might occur." *Rubert-Torres v, Hospital San Pablo, Inc.*, 205 F.3d 472, 475 (1st Cir. 2000). Moreover, even if the court was to convert this motion to a motion for summary judgment, PhoneDog has raised a multitude of triable issues of material fact regarding ownership of the Account and list of Followers. *See* Section I.B.

PhoneDog adequately pled its cause of action for conversion and as such, the Court should deny Defendant's motion.

---

[4] *See* Evidentiary Objections.

-18-

1

## CONCLUSION

2      PhoneDog's Complaint establishes that subject matter jurisdiction is proper.   The parties

3   are completely diverse and the amount in controversy exceeds $75,000.   Therefore, Defendant's

4   motion to dismiss for lack of subject matter jurisdiction must be denied.   Additionally, PhoneDog

5   satisfies the requirements of Federal Rule of Civil Procedure 8 by sufficiently pleading each

6   claim contained in its Complaint.   Therefore, Defendant's motion to dismiss for failure to state a

7   claim must be denied.[5]

8   Dated: August 18 2011                   DONAHUE GALLAGHER WOODS LLP

9

10                                          By: _____

11                                              John C. Kirke
                                                Attorneys for Plaintiff
12                                              PHONEDOG, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

---

26   [5] If the Court were inclined to grant the instant motion, PhoneDog accordingly requests leave to amend its Complaint, to fix any apparent deficiencies.   Federal Rule of Civil Procedure 15(a)(2) expressly states that "[t]he court should freely give leave [to amend] when justice so requires."

27   Where a more carefully drafted Complaint, might state a claim, a plaintiff must be given at least one more change to amend the Complaint, before dismissal.   *Silva v. Bieluch*, 351 F.3d 1045,

28   1048 (11th Cir. 2003).

OPPOSITION TO MOTION TO DISMISS                           CASE NO. 11-cv-03474-MEJ