1  Cary Kletter
   Sally Trung Nguyen
2  KLETTER LAW FIRM
   1900 S. Norfolk Street, Suite 350
3  San Mateo, California 94403
   Telephone: 415.434.3400
4  Email: ckletter@kletterlaw.com

5

6  Attorneys for NOAH KRAVITZ

7              UNITED STATES DISTRICT COURT

8            NORTHERN DISTRICT OF CALIFORNIA

9

10  PHONEDOG, LLC, a Delaware            )  CASE NO. C11-03474
                                         )
11                          Plaintiff,   )  **DEFENDANT'S REPLY TO**
                                         )  **PLAINTIFF'S OPPOSITION TO**
12  v.                                   )  **MOTION TO DISMISS**
                                         )  **PLAINTIFF PHONEDOG, LLC'S**
13  NOAH KRAVITZ, an individual,         )  **COMPLAINT FOR LACK OF**
                                         )  **SUBJECT MATTER**
14                          Defendants.  )  **JURISDICTION UNDER FED. R.**
                                         )  **CIV. PROC. RULE 12(b)(1)AND**
15                                       )  **FOR FAILURE TO STATE A**
                                         )  **CLAIM UNDER FED. R. CIV.**
16                                       )  **PROC. RULE 12(b)(6)**
                                         )
17                                       )
                                         )  **Date:** September 15, 2011
18                                       )  **Time:** 10:00 a.m.
                                         )  **Dept.:** Courtroom B – 15th Floor
19                                       )  **Judge:** Maria-Elena James
                                         )
20                                       )
                                         )
21                                       )
   _____)
22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2   TABLE OF AUTHORITIES ..................................................................................................... ii

3   I.    INTRODUCTION.......................................................................................................... 1

4   II.   DEFENDANT KRAVITZ DISPUTES THE "ADDITIONAL FACTS" PRESENTED
          BY PLAINTIFF IN ITS OPPOSITION........................................................................ 2

5
    III.  PHONEDOG'S COMPLAINT SHOULD BE DISMISSED UNDER FRCP 12(b)(1)
6         BECAUSE PHONEDOG FAILED TO MEET ITS BURDEN TO ESTABLISH
          SUBJECT MATTER JURISDICTION ......................................................................... 3
7
                A.    PhoneDog Incorrectly Places the Burden of Proof on Kravitz ........................... 3
8
                B.    Kravitz's 12(b)(1) Motion is Clearly a "Factual Attack" Which Challenges
9                     Subject Matter Jurisdiction as a Matter of Fact................................................... 4

10              C.    PhoneDog Fails to Provide Competent Proof to Establish Subject Matter
                      Jurisdiction ........................................................................................................ 6
11
    IV.   PLAINTIFF PHONEDOG'S COMPLAINT SHOULD BE DISMISSED UNDER
12        FRCP 12(b)(6) BECAUSE THE FACTUAL ALLEGATIONS IN PHONEDOG'S
          COMPLAINT FAILS TO STATE A CLAIM................................................................ 8
13
                A.    PhoneDog's Factual Allegations Must Show a "Plausible" Claim and the  Court
14                    Must Disregard Conclusory Allegations in the Complaint................................... 8

15              B.    PhoneDog's Factual Allegations are Not Sufficient to Show a Plausible Claim
                      For Misappropriation of Trade Secrets ............................................................... 9
16
                C.    PhoneDog's Factual Allegations are Not Sufficient to Show a Plausible Claim
17                    For Intentional Interference with Prospective Economic Advantage ................. 10

18              D.    PhoneDog's Factual Allegations are Not Sufficient to Show a Plausible Claim
                      For Negligent Interference with Prospective Economic Advantage................... 11
19
                E.    PhoneDog's Factual Allegations are Not Sufficient to Show a Plausible Claim
20                    For Conversion................................................................................................. 11

21
    V.    CONCLUSION ........................................................................................................... 12
22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

3

**FEDERAL CASES**

4

*Arpin v. Santa Clara Valley Transp. Agency*
261 F.3d 912 (9th Cir. 2001) ................................................................................ 2

5

*Ashcroft v. Iqbal*
129 S. Ct. 1937 (2009) ............................................................................. 1, 8, 11

6

*Bell Atlantic Corp. v. Twombly*
550 U.S. 544 (2007) ....................................................................................... 1, 8

7

8

*Bellock v. Orkin Exterminating Co., Inc.*
754 F.Supp.122 (N.D. Ill. 1990) ...................................................................... 4, 5

9

*Bissessur v. Indiana Univ. Bd. Trustees*
581 F.3d 599 (7th Cir. 2009) .............................................................................. 8

10

11

*Butler v. Los Angeles County*
617 F.Supp.2d 994 (C.D. CA 2008) .................................................................... 2

12

*Diefenthal v. C.A.B.*
681 F.2d 1039 (5th Cir. 1982) .......................................................................... 4, 5

13

14

*Farmilant v. Singapore Airlines, Ltd.*
561 F.Supp.1148 (N.D. Ill. 1983) ..................................................................... 5, 6

15

*Gibbs v. Buck*
307 U.S. 66 (1939) ............................................................................................. 4

16

17

*In re American Cont'l Crop/Lincoln Sav. & Loan Sec. Litig.*
102 F.3d 1524 (9th Cir. 1996) ......................................................................... 11, 12

18

*Janda v. Madera Community Hosp.*
16 F.Supp.2d 1181 (E.D. Cal 1998) ............................................................... 10, 11

19

20

*Kokkonen v. Guardian Life Ins. Co. of America*
511 U.S. 375 (1994) .......................................................................................... 4

21

*Musson Theatrical, Inc. v. Federal Express Corp.*
89 F.3d 1244 (6th Cir. 1996) ............................................................................. 5

22

23

*NLFC, Inc. v. Devcom Mid-America, Inc.*
45 F.3d 231 (7th Cir. 1995) .............................................................................. 6

24

*Rexford Rand. Corp. v. Ancel*
58 F.3d 1215 (7th Cir. 1995) ............................................................................ 4

25

26

*Roberts v. Corrothers*
812 F.2d 1173 (9th Cir. 1987) ........................................................................... 4

27

*Sanchez v. Monumental Acceptance Corp.*
102 F. 3d 298 (9th Cir. 1995) ............................................................................ 4

28

- ii -

*Stock West, Inc. v. Confederated Tribes of Colville Reservations*
873 F.2d 1221 (9th Cir. 1989)..................................................................................................4

*TMX Funding, Inc. v. Impero Technologies, Inc.*
2010 U.S. Dist. LEXIS 60260 (N.D. Cal. June 17, 2010) ........................................................9

**FEDERAL STATUTES**

28 U.S.C. § 1332 ......................................................................................................................12

Fed. R. Civ. P. 12(b)(1).....................................................................................................*passim*

Fed. R. Civ. P. 12(b)(6).....................................................................................................*passim*

**STATE CASES**

*Diodes, Inc. v. Franzen*
260 Cal.App.2d 253 (1968).......................................................................................................9

*Morlife, Inc. v. Perry*
56 Cal.App.4th 1514 (1997).......................................................................................................9

**STATE STATUTES**

California Uniform Trade Secret Act
Cal. Civ. Code §§3426, et seq...................................................................................................9

1

## I.    INTRODUCTION

2

Defendant Noah Kravitz ("Kravitz") hereby submits this Reply to Plaintiff PhoneDog,

3

LLC's ("PhoneDog") Opposition to his Motion to Dismiss ("PhoneDog's Opposition").

4

Because Kravitz challenged PhoneDog's Complaint as a matter of *fact* under FRCP 12(b)(1)

5

("factual attack"), PhoneDog was required to furnish competent proof to establish that the

6

amount in controversy exceeds $75,000. Rather than furnish the necessary evidence to support

7

the claims in its Complaint, however, PhoneDog instead attempts to introduce alleged

8

"additional facts" in its Opposition and materially alters its original theory for recovery of

9

damages. Nonetheless, PhoneDog's new alleged facts should not be considered in the ruling of

10

this motion as it has no bearing on PhoneDog's Claims for Relief. PhoneDog also

11

inappropriately places the burden of proof on Kravitz and urges the court to lower the standard

12

of proof because it cannot satisfy its burden of establishing federal jurisdiction. Because

13

PhoneDog cannot establish that the amount in controversy is in excess of $75,000, the Court

14

must dismiss the Complaint for lack of subject matter jurisdiction.

15

Additionally, PhoneDog's Opposition misstates the applicable legal standard in ruling

16

on a FRCP 12(b)(6) motion. PhoneDog inappropriately attempts to mislead the Court to lower

17

the legal standard and accept its conclusory allegations as true so that the Court rules in its

18

favor. Nonetheless, PhoneDog's Complaint must be dismissed under FRCP 12(b)(6) because

19

it does not contain sufficient "factual allegations" to show a plausible claim for any of its

20

Claim for Relief under the *Twombly/Iqbal* standard. *Bell Atlantic Corp. v. Twombly*, 550 U.S.

21

544, 555 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

22

As discussed in Kravitz's Motion to Dismiss, this suit was brought by PhoneDog in

23

response to Kravitz filing suit in the California Superior Court in Alameda County (Alameda

24

Superior Court, Case No. RG11579535). It is evident that PhoneDog only now raises the

25

meritless and unsupported issues in this suit in an inappropriate attempt to forum shop. Such

26

improper conduct should not be encouraged by this Court and the Court must dismiss

27

PhoneDog's Complaint.

28

## II.   DEFENDANT   KRAVITZ   DISPUTES   THE   "ADDITIONAL   FACTS" PRESENTED BY PLAINTIFF PHONEDOG IN ITS OPPOSITION

First, the alleged "additional facts" presented in PhoneDog's Opposition to Kravitz's Motion to Dismiss ("PhoneDog's Opposition") were not pleaded in its Complaint and therefore cannot be considered whatsoever in ruling on Kravitz's FRCP 12(b)(6) motion. *See, Arpin v. Santa Clara Valley Transp. Agency* 261 F.3d 912, 925 (9th Cir. 2001); *Butler v. Los Angeles County* 617 F.Supp.2d 994 (C.D. CA 2008).

Further, the alleged "additional facts" is another improper and desperate attempt by PhoneDog to meet the jurisdictional limit to invoke federal jurisdiction.  Nowhere in its Complaint did PhoneDog make any assertion regarding revenues from selling advertisements on its website.  In fact, none of the four (4) Claims for Relief in PhoneDog's Complaint alleged any damages based upon lost advertisement revenues as a result of Kravitz's conduct.  Rather than present the necessary evidence to support its existing allegations for damages in its Complaint, PhoneDog is instead attempting to materially alter its underlying theory for recovery of damages in hopes that it meets the jurisdictional limit.  Nonetheless, the "additional facts" regarding the lost advertisement revenues should not be considered in ruling on Kravitz's Motion to Dismiss because it is immaterial to PhoneDog's Claims for Relief.

Additionally, many, if not all, of PhoneDog's new factual contentions are wholly inaccurate and misleading.  Whether or not PhoneDog requests its "employees" maintain Twitter accounts is irrelevant to Kravitz's case for several reasons.  *See* PhoneDog's Opposition at pp. 2.  First, Kravitz was never an "employee" of PhoneDog, he was an independent contractor.  *See*, Supplemental Declaration of Noah Kravitz ("Supp. Kravitz Decl.") ¶3.  Second, PhoneDog never requested Kravitz maintain a Twitter account for the benefit of PhoneDog.  *See*, Supp. Kravitz Decl. ¶6.  In fact, it was *after* Kravitz created the Twitter account (the "Account") on his own initiative for personal and work-related purposes did PhoneDog then decided to request its "employees" use their existing Twitter accounts or create such accounts for similar reasons.  *See*, Supp. Kravitz Decl. ¶6.

1

2   Contrary to PhoneDog's assertion, Kravitz never agreed to maintain the Account for the

3   benefit of PhoneDog. *See,* Supp. Kravitz Decl. ¶7. Kravitz created the Account for his own

4   personal use and to promote his freelance work, including freelance projects for PhoneDog.

5   *See,* Supp. Kravitz Decl. ¶5. Despite no agreement with PhoneDog, Kravitz responded to all of

6   PhoneDog's requests "to tweet or publish articles and promotions on the Account." Supp.

    Kravitz Decl. ¶8.

7       At all times, Kravitz has been the *only* person who has ever used, accessed and

8   maintained the Account. *See,* Supp. Kravitz Decl. ¶10. In fact, Kravitz has been the only

9   person to ever have knowledge of the password to the Account. *See,* Supp. Kravitz Decl. ¶11.

10  PhoneDog's allegation that it "makes every effort to maintain the secrecy of the passwords"

11  (*See,* PhoneDog's Opposition at pp. 2) is completely irrelevant here because PhoneDog never

12  knew the Account's password to be able to make any effort to maintain its secrecy.

13

14

15  **III.     PHONEDOG'S COMPLAINT SHOULD BE DISMISSED UNDER FRCP 12(b)(1) BECAUSE PHONEDOG FAILED TO MEET ITS BURDEN TO ESTABLISH SUBJECT MATTER JURISDICTION**

16

17      **A.     PhoneDog Incorrectly Places the Burden of Proof on Kravitz**

18      Throughout its Opposition, PhoneDog repeatedly and incorrectly places the burden of

19  proof on Kravitz to establish that the court lacks subject matter jurisdiction. For example,

20  PhoneDog's Subsection I.A. under "ARGUMENT" in its Opposition is titled "Defendant

21  Cannot Establish That PhoneDog Cannot Meet The Amount in Controversy." *See,*

22  PhoneDog's Opposition at pp. 4. Moreover, PhoneDog contends that the Kravitz's 12(b)(1)

23  motion to dismiss should be denied because "the extrinsic evidence offered by Defendant to

24  prove otherwise does not demonstrate with a legal certainty that PhoneDog's damages do not

25  exceed $75,000". *See,* PhoneDog's Opposition at pp. 3. Similarly, PhoneDog's contention

26  that employers have "ownership rights" over their employees' Twitter accounts because

27  Kravitz did not provide sufficient proof to establish that an employer has no ownership rights

28  over a Twitter account. *See,* PhoneDog's Opposition at pp. 7.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Contrary to PhoneDog's contention, the law clearly establishes that as the party invoking the Court's jurisdiction, PhoneDog bears the burden of establishing federal subject matter jurisdiction. *See*, Kravitz's Motion to Dismiss at pp. 6-7; *see also, Diefenthal v. C.A.B.*, 681 F.2d 1039, 1053 (5th Cir. 1982) (parties invoking federal diversity jurisdiction must show the basis for the amount of damages they claim before allowing the expense and burden of full trial on the merits); *Gibbs v. Buck*, 307 U.S. 66, 72 (1939) (plaintiff has the burden of showing that "it does not appear to a legal certainty that his claim is for less than the jurisdictional limit"); *see also Bellock v. Orkin Exterminating Co., Inc.*, 754 F.Supp.122 (N.D. Ill. 1990); *Rexford Rand. Corp. v. Ancel*, 58 F.3d 1215, 1218 (7th Cir. 1995).

In effect, the courts presume <u>lack</u> of jurisdiction until the party invoking jurisdiction proves otherwise. *See e.g. Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 376-378 (1994); *Stock West, Inc. v. Confederated Tribes of Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). In meeting its burden, PhoneDog must provide plausible evidence that it is "more likely than not" that the amount in controversy exceeds $75,000. *See, e.g., Sanchez v. Monumental Acceptance Corp.*, 298 U.S. 178, 189 (1936). Because PhoneDog failed to meet its burden of proof, the Court must dismiss the Complaint.

**B.      Kravitz's 12(b)(1) Motion is Clearly a "Factual Attack" Which Challenges Subject Matter Jurisdiction as a Matter of Fact**

Kravitz's 12(b)(1) motion challenging the Court's jurisdiction is clearly a "factual attack", based upon extrinsic evidence quite apart from PhoneDog's Complaint. As stated in Kravitz's Motion to Dismiss, the Court is not required to accept the allegations in the Complaint as true when a factual attack is made. *See*, Kravitz's Motion to Dismiss at pp. 7-8. Rather, the Court considers the evidence presented before it and determines the facts for itself. *Id.* at pp. 8. "[T]he existence of disputed material facts will not preclude the trial court from evaluating itself the merits of jurisdictional claims." *Roberts v. Corrothers*, 812 F.2d 1773, 1177.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Here, Kravitz introduced substantial admissible *extrinsic evidence* for the Court to consider in ruling on the motion. However, PhoneDog improperly urges the Court to consider Kravitz's motion to be a "facial attack" so that the Court accepts all its allegations as true (*see,* PhoneDog's Opposition at pp. 8) because it cannot meet its burden of furnishing the necessary evidence to establish that the amount in controversy exceeds $75,000. *See, Ancel, 58 F.3d at 1218* (the plaintiff bears the burden to support its assertion with competent proof); *Bellock,* 754 F.Supp. at 12. The Court must reject PhoneDog's assertion and not limit itself to considering only the allegations of the Complaint because of the important matters at stake (i.e., the Court's power to hear the merits of the case). PhoneDog must furnish evidence to show the basis for the amount of damages they claim before the Court can allow the expense and burden of full trial on the merits. *See, Diefenthal,* 681 F.2d at 1053.

PhoneDog also attempts to mislead the Court to lower the standard of proof in this case since it cannot meet its burden of proof. First, PhoneDog inappropriately relies on *Musson Theatrical, Inc. v. Federal Express Corp.,* 89 F.3d 1244 (6th Cir. 1996) to claim that it can survive Kravitz's 12(b)(1) motion by simply showing "*any* arguable basis in law for claim". *See,* PhoneDog's Opposition at pp. 4. PhoneDog neglected to mention, however, that *Musson Theatrical, Inc.* clearly provided that this standard only applies when a "facial attack" is made. *Id.* at 1248 ("[i]n short, when faced with a 12(b)(1) challenge to the face of a complaint, the plaintiff can survive the motion by showing any arguable basis in law for the claim made"). Here, Kravitz unambiguously made a "factual attack" on PhoneDog's Complaint. Hence, the standard in *Musson Theatrical, Inc.* does not apply.

Similarly, PhoneDog's reliance on *Farmilant v. Singapore Airlines, Ltd.,* 561 F. Supp. 1148 (N.D. Ill. 1983) is completely misplaced. *See,* PhoneDog's Opposition at pp. 4. *Farmilant* was entirely regarding a motion for summary judgment and had nothing to do with a motion to dismiss under FRCP 12(b)(1). Rather, the court made one isolated hypothetical statement about what standard it might apply if it had before it a motion to dismiss, which it did not. *Id.* at 1151 ("[w]ere this a threshold motion to dismiss the Complaint for want of

1
2

subject matter jurisdiction…"). As such, *Farmilant* should not have any bearing on the ruling of this Motion to Dismiss.

3
4
5

Because Kravitz made a factual attack on the amount in controversy, PhoneDog's allegations are not presumed true and it must present competent proof establishing jurisdiction.

6
7

### C. PhoneDog Fails to Provide Competent Proof to Establish Subject Matter Jurisdiction

8
9
10
11

As noted in Kravitz's Motion to Dismiss, the burden is on PhoneDog to support its assertions with competent proof. *See*, Kravitz's Motion to Dismiss at pp. 8. Competent proof is "proof of a reasonable probability that jurisdiction exists." *Id.* (citing *NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 237 (7th Cir. 1995).

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

In its Opposition, PhoneDog offered no credible evidence whatsoever to show that a Twitter account has any monetary value. Similarly, PhoneDog offered no credible admissible evidence whatsoever to support its valuation of the Account. Instead, PhoneDog admitted that the valuation of the Account, which it claimed to be approximately $42,500 per month, is based solely on the unsupported opinion of PhoneDog's President, Tom Klein. *See*, PhoneDog's Opposition at pp. 9; *see also*, Declaration of Tom Klein at ¶ 10. It provided no evidence whatsoever regarding the "industry standard" measuring the value of a Twitter "follower" alleged in its Complaint. Moreover, whereas PhoneDog previously only claimed that the value of the Account was simply based on the "industry standard" of each follower (i.e. $2.50 per month), it now modifies its theory for recovery of damages by claiming that "the value of the Account lies in the Account's list of Followers and the traffic that those Followers generate to the PhoneDog website." *See*, PhoneDog's Opposition at pp. 9. Nonetheless, PhoneDog offered no evidence of any traffic that the Account's followers ever generated to PhoneDog's website, nor did PhoneDog offer any evidence that Kravitz's continued use of the Account interfered with such traffic. In short, PhoneDog's assertion that the Account's followers generated any traffic to its website (*See*, PhoneDog's Opposition at pp. 9) and that

28

1   the followers "accessed the Account in order to receive the content" are unsupported, self-

2   serving and mere speculations.

3       In addition, PhoneDog did not provide the necessary proof to establish that it has an

4   ownership interest in the Account. PhoneDog's only "proof" that it has an ownership interest

5   is based on the following language in the Twitter Terms of Service ("TOS"), which it claims

6   effectively granted it a "license" to the use the Twitter service: "In consideration for Twitter

7   granting you *access to* and *use of* the Services, you agree..." *See*, Declaration of Cary Kletter

8   in Support of Motion to Dismiss, ¶ 6, Ex. B (emphasis added). Even if, *arguendo*, that

9   language granted users a "license" and ownership interests, PhoneDog would not be the

10  licensee of the Account. At no time did PhoneDog ever have "access to" or "use of" the

11  Account. In fact, PhoneDog never had the Account's login information to access or use the

12  Account. Kravitz not only created the Account on his own initiative, he has been the only

13  person to ever access and use the Account. Hence, based on PhoneDog's own theory (*See*,

14  Defendant's Opposition at pp. 6), Kravitz is the "licensee" of the Account and has the only

15  ownership interest, if any, in the Account.

16      Furthermore, PhoneDog attempts to meet the amount in controversy by claiming that it

17  is entitled to damages based on "interference" with "PhoneDog's access to the Followers,

18  which in turn interfered with PhoneDog's economic relationships with its advertisers." *See*,

19  PhoneDog's Opposition at pp. 6. PhoneDog asserts that Kravitz's conduct constitutes "an

20  unfair method of interference with advantageous relations." *See*, PhoneDog's Opposition at

21  pp. 6. PhoneDog's new interference claim is entirely based on an unsupported hypothetical.

22  Further, this interference claim is wholly unrelated to PhoneDog's interference claims alleged

23  in its Complaint, which are based on claims of interference with a prospective economic

24  advantage with its website "users". A claim for "interference with advantageous relations"

25  with "advertisers" is a completely separate Claim for Relief that is not alleged anywhere in

26  PhoneDog's Complaint. Hence, any damages PhoneDog now claims resulting from such an

27  interference has no bearing on the present Motion to Dismiss. Further, even if damages under

28

1

2

this interference claim were included in the amount in controversy, PhoneDog fails to offer competent proof to support its assertion.

3

4

PhoneDog's Complaint must be dismissed under FRCP 12(b)(1) because it failed to furnish competent proof to establish federal subject matter jurisdiction.

5

6

7

**IV. PLAINTIFF PHONEDOG'S COMPLAINT SHOULD BE DISMISSED UNDER FRCP 12(b)(6) BECAUSE THE FACTUAL ALLEGATIONS IN PHONEDOG'S COMPLAINT FAILS TO STATE A CLAIM**

8

9

> **A. PhoneDog's Factual Allegations Must Show a "Plausible" Claim and the Court Must Disregard Conclusory Allegations in the Complaint**

10

11

12

13

14

15

16

17

18

19

20

PhoneDog's Opposition conveniently failed to address that while a complaint does not need to contain detailed factual allegations, it must still contain factual allegations sufficient to show a "plausible" claim for relief. *See*, Kravitz's Motion to Dismiss at pp. 13; *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). This "plausibility" standard serves in effect as a "gatekeeping" function. The *Twombly/Iqbal* standard "teaches that a defendant should not be forced to undergo costly discovery unless the complaint contains enough detail…to indicate that the plaintiff has a substantial case." *Bissessur v. Indiana Univ. Bd. of Trustees*, 581 F.3d 599, 603 (7th Cir. 2009). Therefore, to survive a motion to dismiss under FRCP 12(b)(6), Phonedog's factual allegations must sufficiently raise a right to relief above a speculative level. *Bell Atlantic Corp.*, 550 U.S. at 555.

21

22

23

24

25

26

Similarly, PhoneDog's Opposition conveniently neglected to mention that *before* a court determines if the factual allegations are sufficient to show a plausible claim, it must first identify which statements in the complaint are factual allegations and which are legal conclusions. *See*, Kravitz's Motion to Dismiss at pp. 13-14; *see also, Iqbal*, 129 S. Ct. at 1951. Courts are not bound to accept as true that are legal conclusions. *Id.* "[A] wholly conclusory statement of [a] claim" will not survive a motion to dismiss." *Twombly*, 550 U.S. at 561.

27

28

PhoneDog's Complaint must be dismissed under FRCP 12(b)(6) because the factual allegations contained in the Complaint fail to state a claim upon which relief can be granted.

**B.     PhoneDog's Factual Allegations are Not Sufficient to Show a Plausible Claim for Misappropriation of Trade Secrets**

PhoneDog's Complaint failed to provide sufficient facts to make a plausible showing of an existence of a trade secret and the existence of misappropriation. *See,* Kravitz's Motion to Dismiss at pp. 14-16. In its Opposition, PhoneDog merely reiterates its conclusory allegations of law and unwarranted inferences to claim that the password to the Account is a trade secret and that Kravitz's conduct constitutes misappropriation under Civil Code §3426.1(a). These legal conclusions should be disregarded.

Contrary to PhoneDog's claim, the issue here is not whether PhoneDog has a protectable trade secret, but whether the Complaint contained enough facts to make a plausible showing that a trade secret exists. Here, PhoneDog failed to describe with sufficient particularity where the secret lies. *See,* Kravitz's Motion to Dismiss at pp. 14; *see also, Diodes, Inc. v. Franzen,* 260 Cal.App.2d 253 (1968). PhoneDog also failed to provide allege sufficient facts to make a plausible showing that the secrecy of the password provide any "substantial business advantage." *See,* Kravitz's Motion to Dismiss; *see also, Morlife, Inc. v. Perry,* 56 Cal.App.4th 1514, 1522 (1997). PhoneDog also failed to allege sufficient facts to make a plausible showing that it made reasonable efforts to maintain the secrecy of the password to the Account (even though it never even had knowledge of the password). *See,* Kravtiz's Motion to Dismiss at pp. 15.

PhoneDog also inappropriately relies on *TMX Funding, Inc. v. Impero Technologies, Inc.,* No. C 10-00202 JF, 2010 U.S. Dist. LEXIS 60260 (N.D. Cal. June 17, 2010) to conclude that all login and password information are trade secrets. *See,* PhoneDog's Opposition at pp. 12. The facts in *TMX Funding, Inc.* establishing passwords as trade secrets are not present in this case. In *TMX Funding, Inc.,* the passwords were used to access the "servers and computers networks" the plaintiff-company purchased and physically possessed. *Id.* at pp. 10. It is indisputable that a company's servers and computer networks contain at least some secret and confidential information to constitute a trade secret. Here, however, the password to the Account does not give anyone access to any confidential information and PhoneDog has not

1    alleged any facts as to what confidential information can be retrieved by accessing the

2    Account. *See*, Kravitz's Motion to Dismiss at pp. 15.

3

4           **C.    PhoneDog's Factual Allegations are Not Sufficient to Show a Plausible
                    Claim for Intentional Interference with Prospective Economic Advantage.**

5           PhoneDog's Complaint failed to provide sufficient facts to make a plausible showing of

6    an existence of 1) economic relationship that would have probably resulted in an economic

7    benefit, and 2) an intentional act by Kravitz that actually disrupted that relationship.

8    PhoneDog's Opposition merely reiterates its conclusory allegations that some potential

9    unknown economic relationship with some unknown third party user was probably disrupted.

10   There are no factual allegations contained in the Complaint to make a plausible showing that

11   there was an actual disruption of an existing or future economic relationship.  Moreover, there

12   are no factual allegations in the Complaint that PhoneDog ever had an economic relationship

13   with any of the Account's followers.

14

15          PhoneDog incorrectly relies on *Janda v. Madera Community Hosp.*, 16 F.Supp.2d

16   1181, 1189 (E.D. Cal 1998) to claim that PhoneDog's Complaint survives a motion to dismiss

17   without having to provide the identities of the alleged parties. *See*, PhoneDog's Opposition at

18   pp. 15.   However, *Janda* involved a plaintiff-doctor who asserted an interference with

19   economic relations claim against the defendant-hospital based upon the doctor's economic

20   relationship with his existing and potential medical patients. *Janda*, 16 F.Supp.2d at 1189.

21   Contrary to PhoneDog's assertion, *Janda* actually found that "[a]s to 'future' patients, the

22   pleading [was] speculative and insufficient... 'Plaintiff must establish an actual economic

23   relationship or protected expectancy with a third person, not merely a hope of future

24   transactions.'" *Id.* at 1189-90 (citations omitted). *Janda* required the plaintiff to "specifically

25   identify" the "future" lost patients. *Id.* The complaint only survived a motion to dismiss as to

26   the "existing" patients. *Id.* Unlike our case, however, the existing patients in *Janda* were

27   readily and easily identifiable.   Here, the allegation that there are existing users whose

28   economic relationship with PhoneDog has been disrupted by Kravitz's continued use of the

1   Account is entirely speculative and insufficiently supported by the pleadings. PhoneDog

2   cannot readily identify any such existing users. Moreover, the *Janda* case, cited by PhoneDog

3   actually supports Kravitz's position because PhoneDog did not allege that any specific

4   Account follower was a past customer of PhoneDog, or that PhoneDog had a protected

5   economic relationship with any Account follower. Thus, *Janda*'s statements about that

6   situation (i.e., that the relationship is insufficient to deny a motion to dismiss) applies here.

7   Additionally, PhoneDog improperly makes reference to an unknown potential

8   economic relationship with its "advertisers" that was disrupted, which was nowhere alleged in

9   its Complaint. As acknowledged in PhoneDog's Opposition, however, "a court cannot

10  consider material outside the complaint." *See*, PhoneDog's Opposition at pp. 9-10 (*citing In re*

11  *American Cont'l Crop./Lincoln Sav. & Loan Sec. Litig.*, 102 F.3d 1524, 1537 (9th Cir. 1996)).

12  Therefore, the Court cannot consider this new allegation, nor any of the "additional facts"

13  contained in PhoneDog's Opposition, in making its ruling on Kravtiz's FRCP 12(b)(6) motion.

14

15       **D.       PhoneDog's Factual Allegations are Not Sufficient to Show a Plausible
             Claim for Negligent Interference with Prospective Economic Advantage.**
16

17  As discussed in Kravitz's Motion to Dismiss, PhoneDog's factual allegations

18  insufficiently show a plausible claim for negligent interference with prospective economic

19  advantage. *See*, Kravitz's Motion to Dismiss at pp. 19. Moreover, this tort arises only when a

20  defendant owes a plaintiff a "duty of care." *Id*. PhoneDog's complaint did not allege such a

21  duty, nor did it allege sufficient facts to make a plausible showing that such a duty exists. As

22  such, the Court must dismiss this claim.

23
         **E.       PhoneDog's Factual Allegations are Not Sufficient to Show a Plausible
             Claim for Conversion.**
24

25  PhoneDog's Complaint failed to provide sufficient facts to make a plausible showing

26  that it has ownership over the Account to maintain a conversion claim. PhoneDog correctly

27  asserts that "a court must accept as true all 'well-pleaded factual allegations.'" *See*,

28  PhoneDog's Opposition at pp. 18 (*citing Iqbal*, 129 S. Ct. 1937, 1950 (1990). However,

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PhoneDog's statement that it is the "owner" of the Account and all of the Account's followers is a legal conclusion that the court should disregard. Moreover, nowhere in its Complaint did PhoneDog allege that the list of Followers were "akin to a customer list" as it now alleges. *See*, PhoneDog's Opposition at pp. 17. This additional statement is clearly outside of the complaint and cannot be considered in deciding Kravitz's 12(b)(6) motions. *See*, *In re American Cont'l Crop./Lincoln Sav. & Loan Sec. Litig.*, 102 F.3d at 1537. Moreover, PhoneDog's assertion the Account's followers are its "customers" are speculative, conclusory and unwarranted inferences that should be disregarded by the Court. It should be reiterated that all Twitter followers, including the followers of the Account, are all visible on each Twitter site. Therefore, anyone can obtain the Account's list of followers. Further, at all times, Kravitz accessed and used the Account for personal and work-related purposes. PhoneDog has not sufficiently alleged that any of the Account's followers are actual customers of PhoneDog to show a plausible claim for conversion.

PhoneDog's claim for conversion must be dismissed because the factual allegations contained in its Complaint are not sufficient to show a plausible claim for which relief can be granted.

## V.    **CONCLUSION**

Plaintiff PhoneDog's Complaint should be dismissed for lack of subject matter jurisdiction pursuant to FRCP 12(b)(1) and 28 U.S.C. § 1332 because PhoneDog cannot satisfy its burden of establishing an amount in controversy in excess of $75,000. Further, PhoneDog's

//
//
//
//
//
//
//

1    Complaint should be dismiss for failure to state a claim upon which relief can be granted

2    pursuant to FRCP 12(b)(6) because it has not asserted sufficient factual allegations to show a

3    plausible claim for any of its Claims for Relief.

4

5    Dated: August 25, 2011                                    KLETTER LAW FIRM

6

7                                                        By: _Sally A_____

8                                                            Sally Trung Nguyen
                                                            Attorney for Defendant,
9                                                            NOAH KRAVITZ

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28