UNITED STATES  DISTRICT COURT

Northern District of California

| | |
|---|---|
| PHONEDOG, | No. C 11-03474 MEJ |
| Plaintiff, | **ORDER ON DEFENDANT'S MOTION TO DISMISS PURSUANT TO FRCP 12(B)(1) AND 12(B)(6)** |
| v. | |
| NOAH KRAVITZ, | |
| Defendant. | **[Docket No. 4]** |
| _____/ | |

## I.  INTRODUCTION

Plaintiff PhoneDog brings this action against one of its former employees, Defendant Noah Kravitz, based on his continued use of a Twitter account that PhoneDog alleges it owns and contains trade secrets, namely the compilation of subscribers and the password used to access the account. Currently pending before the Court is Mr. Kravitz's Motion to Dismiss PhoneDog's Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1), and for failure to state a claim pursuant to Rule 12(b)(6). Mot., Dkt. No. 4.  PhoneDog has filed an Opposition (Dkt. No. 13), and Mr. Kravitz has filed a Reply (Dkt. No. 17).  On October 13, 2011, the Court held a hearing on the matter.  After carefully considering the parties' arguments and the controlling legal authorities, the Court **DENIES** without prejudice Mr. Kravitz's 12(b)(1) motion and **GRANTS IN PART** and **DENIES IN PART** his 12(b)(6) motion as set forth below.

## II.  BACKGROUND

The relevant allegations, taken from PhoneDog's Complaint, are as follows.

PhoneDog is an "interactive mobile news and reviews web resource," that reviews mobile products and services and provides users with resources needed to research, compare prices, and shop from mobile carriers. Compl. ¶ 8.  PhoneDog uses a variety of social media, including Twitter, Facebook, and YouTube, to market and promote its services to users.  *Id*. ¶ 9.

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Beginning in April 2006, Mr. Kravitz began working for PhoneDog as a product reviewer and

2    video blogger. *Id*. ¶ 14.  PhoneDog alleges that "[a]s an employee of PhoneDog, [Mr. Kravitz] was

3    given use of and maintained the Twitter account "@PhoneDog_Noah" (the "Account"). *Id*. ¶ 15.  As

4    part of Mr. Kravitz's employment, he submitted written and video content to PhoneDog, which was

5    then transmitted to its users via a variety of mediums, including PhoneDog's website and the Twitter

6    Account.  *Id*. ¶ 14.  Mr. Kravitz accessed the Twitter Account using a password and used the Account

7    to disseminate information and promote PhoneDog's services on behalf of PhoneDog.  *Id*.  According

8    to PhoneDog, all @PhoneDog_Name Twitter accounts used by its employees, as well as the

9    passwords to such accounts, constitute proprietary, confidential information.  *Id*. ¶ 12.  PhoneDog

10   avers that, during the course of Mr. Kravitz's employment at PhoneDog, the @PhoneDog_Noah

11   Account generated approximately 17,000 Twitter followers.  *Id*. ¶ 16.

12   In October 2010, Mr. Kravitz ended his employment with PhoneDog.  *Id*. ¶ 17.  At that time,

13   PhoneDog requested that he relinquish use of the Twitter Account.  *Id*.  In response, Mr. Kravitz

14   changed the Account handle to "@noahkravitz," and continues to use the Account.  *Id*.  As a result,

15   PhoneDog alleges that it has suffered at least $340,000 in damages.  *Id*. at 9.

16   Based on these allegations, on July 15, 2011, PhoneDog filed this lawsuit against Mr. Kravitz,

17   asserting claims under California law for: (1) misappropriation of trade secrets; (2) intentional

18   interference with prospective economic advantage; (3) negligent interference with prospective

19   economic advantage; and (4) conversion.  *Id*. at 3-7.

20   Mr. Kravitz now moves to dismiss PhoneDog's Complaint pursuant to Rule 12(b)(1) for lack

21   of subject matter jurisdiction and pursuant to Rule 12(b)(6) for failure to state a claim.

## III.   DISCUSSION

**A.  Motion to Dismiss for Lack of Subject Matter Jurisdiction**

24   In its Complaint, PhoneDog alleges that this Court has subject matter jurisdiction over this

25   action pursuant to 28 U.S.C. § 1332(a).  Compl. ¶ 3.  It alleges that it diversity of citizenship exists

26   between the parties and more than $75,000 is in controversy.  *Id*.  There is no dispute as to the

27   diversity of citizenship of the parties.  Mr. Kravitz, however, argues that PhoneDog cannot meet its

28

2

1   burden of establishing that the amount in controversy is satisfied in this case.  Mot. at 2.  Specifically,

2   he challenges PhoneDog's alleged damages premised on the value of the Twitter Account.  *Id.* at 3.

3   In response, PhoneDog asserts that it has sufficiently alleged that the amount in controversy exceeds

4   $75,000.  Opp'n at 3, Dkt. No. 13.  It further argues that Mr. Kravitz's extrinsic evidence does not

5   prove to a legal certainty that its damages fall below the jurisdictional minimum.  *Id.*

6       1.   Legal Standard

7       Federal courts are courts of limited jurisdiction, possessing only that power authorized by

8   Article III of the United States Constitution and statutes enacted by Congress pursuant thereto.

9   *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986).  Thus, federal courts have no

10  power to consider claims for which they lack subject matter jurisdiction.  *Chen–Cheng Wang ex rel.*

11  *United States v. FMC Corp.*, 975 F.2d 1412, 1415 (9th Cir. 1992).  The Court is under a continuing

12  duty to dismiss an action whenever it appears that it lacks jurisdiction.  *Id.*; *see also Spencer Enters.,*

13  *Inc. v. United States*, 345 F.3d 683, 687 (9th Cir. 2003).  The burden of establishing that a cause lies

14  within this limited jurisdiction rests upon the party asserting jurisdiction.  *Kokkonen v. Guardian Life*

15  *Ins. Co. of America*, 511 U.S. 375, 377 (1994).  Thus, in the present action, PhoneDog bears the

16  burden of demonstrating that subject matter jurisdiction exists over its Complaint.  *Tosco Corp. v.*

17  *Communities for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001).

18      On a motion to dismiss pursuant to Rule 12(b)(1), the applicable standard turns on the nature

19  of the jurisdictional challenge.  A Rule 12(b)(1) jurisdictional attack may be "facial" or "factual."

20  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) (citation omitted).  In evaluating a facial attack on

21  jurisdiction, the Court must accept the factual allegations in PhoneDog' complaint as true and draw

22  all reasonable inferences in its favor.  *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009).  As part

23  of its ruling on such a motion, the Court may also consider additional facts that "are contained in

24  materials of which the court may take judicial notice."  *McCarthy v. United States*, 850 F.2d 558, 560

25  (9th Cir. 1988).

26      By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by

27  themselves, would otherwise invoke federal jurisdiction.  *Safe Air for Everyone v. Meyer*, 373 F.3d

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

3

UNITED STATES DISTRICT COURT
For the Northern District of California

1035, 1039 (9th Cir. 2004).  In such a case, "[n]o presumptive truthfulness attaches to plaintiff's

allegations, and the existence of disputed material facts will not preclude the trial court from

evaluating for itself the merits of jurisdictional claims."  *Thornhill Publ'g v. Gen. Tel. & Elec. Corp.*,

594 F.2d 730, 733 (9th Cir. 1979).  "In resolving a factual attack on jurisdiction, the district court

may review evidence beyond the complaint without converting the motion to dismiss into a motion

for summary judgment."  *Safe Air*, 373 F.3d at 1039 (citation omitted).  However, "[a] jurisdictional

finding of genuinely disputed facts is inappropriate when the jurisdictional issue and substantive

issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual

issues going to the merits of the action."  *Id.*  "Dismissal is then appropriate 'where it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to

relief.'"  *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (quoting *Conley v. Gibson*, 355

U.S. 41, 45-46 (1957)).  "This standard, often cited in Rule 12(b)(6) motions, . . . is equally

applicable in motions challenging subject matter jurisdiction when such jurisdiction may be

contingent upon factual matters in dispute."  *Id.* (internal quotations and citation omitted).  "The

Ninth Circuit has held that, where the jurisdictional issue is intertwined with the merits, a court

cannot determine the jurisdictional issue until the merits of the case are appropriately resolved."  *Chie*

*v. Reed Elsevier, Inc.*, 2011 WL 3879495, at *3 (N.D. Cal. Sep. 02, 2011) (citing *Roberts*, 812 F.2d at

1177).

    2. <u>Discussion</u>

    As indicated above, in its Complaint PhoneDog alleges that Mr. Kravitz's unauthorized use of

the Twitter Account (and other confidential information associated with the Account), have caused it

to incur $340,000 in damages.  Compl. ¶¶ 16, 41.  To reach this calculation, PhoneDog alleges that

the account generated approximately 17,000 followers, which according to industry standards, are

each valued at $2.50.  *Id.*  Thus, PhoneDog contends that its damages amount to $42,500 ($2.50 x

17,000) for each month that Mr. Kravitz has used the account, which at the time of filing amounted to

$340,000 for eight months.  *Id.*

    In his Motion, Mr. Kravitz contends that PhoneDog cannot establish damages over the

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1   $75,000 jurisdictional threshold.  Mot. at 9.  Contrary to PhoneDog's calculation, Mr. Kravitz asserts

2   that "PhoneDog cannot establish that it is entitled to any monetary recovery because it does not have

3   competent proof that it has ownership or right to possession over the Account or the followers."  Mot.

4   at 9.  According to Mr. Kravitz, pursuant to Twitter's Terms of Service, "the Account, as <u>all</u> Twitter

5   accounts are, is the exclusive property of Twitter and its licensors, not PhoneDog."  *Id.*  As to the

6   followers, Mr. Kravitz argues that "'[f]ollowers' are human beings who have the discretion to

7   subscribe and/or unsubscribe to the Account without the consent of PhoneDog," and are not property

8   and cannot be owned.  *Id.*  Because PhoneDog cannot own either the Account or its followers, Mr.

9   Kravitz contends that PhoneDog has no basis for its damages calculation and, as a result, cannot show

10  that the amount in controversy requirement is met.  *Id.*

11          Mr. Kravitz also argues that, "[t]o date, the industry precedent has been that absent an

12  agreement prohibiting any employee from doing so, after an employee leaves an employer, they are

13  free to change their Twitter handle."  *Id.* at 10.

14          Further, Mr. Kravitz contends that, irrespective of whether PhoneDog owns the account, it

15  cannot establish more than $75,000 in damages because there is no evidence that a Twitter account

16  has any monetary value.  Mot. at 10.  He argues that "PhoneDog neither states that there is an actual

17  recognized method to measure the value of a Twitter 'account', nor does it allege that its method of

18  calculating the value of the Account is in accordance with an 'industry standard.'"  *Id.*  He argues that

19  any value attributed to the Account comes from his efforts in posting tweets and the individual's

20  interest in following him, not from the Account itself.  Mot. at 11.

21          Finally, Mr. Kravitz challenges PhoneDog's methodology for assessing the value of a Twitter

22  account.  Mot. at 12.  He argues that if any value can be determined, it requires more than simply

23  multiplying each user by $2.50; rather multiple factors must be considered, including: (1) the number

24  of followers; (2) the number of tweets; (3) the content of the tweets; (4) the person publishing the

25  tweets; and (5) the person placing the value of the account.  *Id.*

26          PhoneDog, however, maintains that it has sufficiently alleged that it has incurred more than

27  $75,000 in damages as a result of Mr. Kravitz's conduct, thereby satisfying Rule 8(a)(1)'s liberal

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1  pleading standard.  Opp'n at 8.  It asserts that it is not required to provide a detailed calculation of

2  how its Account is valued in its Complaint.  *Id*.

3  　　　PhoneDog also counters that it has an ownership interest in the Account based on the license

4  granted to it by Twitter to use and access the Account, in the Account's list of followers, and in the

5  content submitted to the Account.  Opp'n at 6-7.  It argues that, even if Mr. Kravitz created the

6  Account, he did so at PhoneDog's request and for its benefit and in the course and scope of his

7  employment with PhoneDog.  *Id*. at 6.  It argues that the list of followers is akin to a business

8  customer list, in which it has an intangible property interest.  *Id*. at 7.

9  　　　PhoneDog further argues that, notwithstanding any ownership interest or right to possession it

10 has in the Account, it is entitled to damages based upon Mr. Kravitz's interference with its access to

11 and use of the Account.  Opp'n at 5.  PhoneDog states that it requests that its representatives maintain

12 Twitter accounts to increase traffic to its website, which generates income from advertisers.  *Id*.  It

13 argues that, "contrary to the agreement between PhoneDog and [Mr. Kravitz] that the Account was to

14 be used for the benefit of PhoneDog, [Mr. Kravitz] failed to respond to requests from PhoneDog to

15 tweet and submit contend to the Account promoting PhoneDog and instead used the Account to

16 promote himself and TechnoBuffalo, a competitor of PhoneDog.  By failing to use the Account for

17 PhoneDog's benefit, [Mr. Kravitz] interfered with PhoneDog's access to the Followers, which in turn

18 interfered with PhoneDog's economic relations with its advertisers," thereby interfering with its

19 "advantageous relations" and giving rise to a claim for damages  *Id*. at 5-6.  Thus, it argues that

20 Twitter's prohibition on purchasing or selling a Twitter account is inconsequential because "[t]he

21 value of the Account lies in the Account's list of Followers and the traffic that those Followers

22 generate to the PhoneDog website."  *Id*. at 8-9.

23 　　　Finally, PhoneDog argues that Mr. Kravitz cannot establish that there is a legal certainty that

24 its damages do not exceed $75,000.  *Id*. at 9.  It contends that "the method of valuing a Twitter

25 account is afforded many different interpretations," and Mr. Kravitz's method which leads to a

26 different valuation is insufficient to defeat subject matter jurisdiction.  *Id*.

27 　　　As the foregoing summary illustrates, the question whether the amount in controversy

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

requirement is satisfied in this case is intertwined with factual and legal issues raised by PhoneDog's claims. Whether PhoneDog has any property interest in the Twitter account cannot be resolved on the record at this stage of the case. Likewise, should PhoneDog be able to establish that it has some property interest in the Twitter account or the password and follower list, the question becomes what is the proper valuation of such items. Again, the parties have proffered competing methodologies for valuing the account, and on this limited record, the Court is unable to resolve this dispute at this juncture.

At the same time, PhoneDog has expressly alleged $340,000 in damages stemming from its misappropriation and interference with economic advantage claims. The Court cannot say that PhoneDog's allegation as to the amount in controversy is in bad faith or that it appears beyond a legal certainty that the claim is really for less than the jurisdictional amount.

Taken together, the Court finds that a determination of whether the Court has subject matter jurisdiction over this action based on diversity jurisdiction cannot be resolved at this stage of the proceeding. Rather, because the issue is tied up with PhoneDog's claims, the issue cannot be resolved until summary judgment on a fully developed evidentiary record. The Court therefore **DENIES** Mr. Kravitz's motion to dismiss for lack of subject matter jurisdiction **WITHOUT PREJUDICE** to Mr. Kravitz re-asserting his challenge on summary judgment.

**B. Motion to Dismiss for Failure to State a Claim**

Mr. Kravitz also moves to dismiss each of PhoneDog's claims pursuant to Rule 12(b)(6). The Court will address each challenge in turn.

1.   Legal Standard

A court may dismiss a complaint under Rule 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

UNITED STATES DISTRICT COURT
For the Northern District of California

(quoting *Twombly*, 550 U.S. at 557.) "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff.  *Id*. at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007).

If the court dismisses the complaint, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*quoting Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)).

2.   Discussion

    a.   *Misappropriation of Trade Secrets Claim*

Mr. Kravitz challenges PhoneDog's misappropriation of trade secrets claim.

Mr. Kravitz first argues that the claim is subject to dismissal because "the identity of the Account followers and the 'password' to the Account which PhoneDog alleges were misappropriated by Kravitz are not a 'trade secret' within the meaning of the California Uniform Trade Secrets Act ("UTSA")."[1]  Mot. at 14.  Specifically, he argues that "[t]he followers of the Account are not secret because they are and have been publicly available for all to see at all times." *Id*.  With respect to the password to the Account, Mr. Kravitz contends that passwords to Twitter accounts do not derive any

---

[1]  The UTSA, California Civil Code section 3426.1(d), provides that "'[t]rade secret' means information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

8

actual or potential independent economic value under the UTSA because they do not provide any substantial business advantage. Mot. at 15. Rather, he argues that the passwords merely allow the individual logging on to view information already widely known. *Id.* Mr. Kravitz also argues that he – not PhoneDog – initially created the password and that PhoneDog did not make any reasonable efforts to maintain the secrecy of the password. *Id.*

Additionally, Mr. Kravitz contends that PhoneDog has failed to allege any act by him that falls within the definition of misappropriation.[2] Mot. at 16. Rather, he argues that "PhoneDog only makes the conclusory allegation that Kravitz used 'improper means, as such are defined in Civil Code § 3426.1(a),[3] to obtain and misappropriate the Confidential Information' without providing any factual support of the actual alleged improper act committed by Kravitz." *Id.* (quoting Compl. ¶ 23).

Finally, Mr. Kravitz argues that PhoneDog has failed to plead misappropriation with particularity, as required by Rule 9(b) for any claim sounding in fraud. Mot. at 16. Again, Mr.

---

[2] California Civil Code section 3426.1(b) provides:
(b) "Misappropriation" means:
(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
(2) Disclosure or use of a trade secret of another without express or implied consent by a person who:
  (A) Used improper means to acquire knowledge of the trade secret; or
  (B) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was:
    (i) Derived from or through a person who had utilized improper means to acquire it;
    (ii) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
    (iii) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
  (C) Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

[3] California Civil Code section 3426.1(a) provides: "'Improper means' includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means. Reverse engineering or independent derivation alone shall not be considered improper means."

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1  Kravitz asserts that PhoneDog has not alleged any facts regarding his conduct, but has merely alleged

2  that he used "improper means" to obtain and misappropriate the Twitter password.  Mot. at 16-17.

3       In its Opposition, PhoneDog contends that it has sufficiently stated its misappropriation of

4  trade secrets claim, arguing that it has alleged the existence of a trade secret in paragraphs 12 and 22

5  of the Complaint.  Opp'n at 10.  It also contends that it has alleged that when it requested that Mr.

6  Kravitz relinquish use of the Account, he "merely changed the Twitter handle on the Account,"

7  continued to use the Account, and "used improper means, as such are defined in Civil Code section

8  3426.1(a), to obtain and misappropriate the Confidential Information."  Opp'n at 11 (citing Compl. ¶¶

9  17, 23).

10       PhoneDog also disputes that Rule 9(b)'s heightened pleading standard applies to the

11  misappropriation of trade secrets claim because the claim does not sound in fraud or mistake. *Id.*

12       Finally, PhoneDog argues that Mr. Kravitz's challenges to whether PhoneDog has a

13  protectable trade secret are beyond the scope of a 12(b)(6) motion and should be addressed on

14  summary judgment.  Opp'n at 12.

15       The Court has carefully considered the parties' arguments and finds that Mr. Kravitz has not

16  shown any basis for dismissal of the misappropriation of trade secrets claim under Rule 12(b)(6).

17  With respect to the applicable pleading standard, although courts have applied conflicting standards,

18  the Court finds that PhoneDog's misappropriation claim does not sound in fraud or mistake and thus

19  Rule 9(b) does not control.  *See TMX Funding, Inc. v. Impero Tech., Inc.*, 2010 WL 2509979, at *2

20  (N.D. Cal. June 17, 2010).  PhoneDog has sufficiently described the subject matter of the trade secret

21  with sufficient particularity and has alleged that, despite its demand that Mr. Kravitz relinquish use of

22  the password and Account, he has refused to do so.  At this stage, these allegations are sufficient to

23  state a claim.  Further, to the extent that Mr. Kravitz has challenged whether the password and

24  Account followers are trade secrets and whether Mr. Kravitz's conduct constitutes misappropriation

25  requires consideration of evidence beyond the scope of the pleading.  Thus, such challenges should

26  be raised at summary judgment on a fully-developed evidentiary record.  The Court therefore

27  **DENIES** Mr. Kravitz's request to dismiss PhoneDog's misappropriation of trade secrets claim.

28

<div style="text-align: left; font-style: italic;">UNITED STATES DISTRICT COURT<br>For the Northern District of California</div>

*b.   Intentional Interference with Prospective Economic Advantage*

Mr. Kravitz next urges the Court to dismiss PhoneDog's claim for intentional interference with prospective economic advantage, arguing that PhoneDog has failed to allege: (1) the existence of an actual economic relationship between it and the Account followers; (2) an economic benefit would have probably resulted had Mr. Kravitz not disrupted that relationship; and (3) any intentional acts of Mr. Kravitz that actually disrupted the economic relationship. Mot. at 18.

Under California law, to prevail on a claim for intentional interference with prospective economic advantage, a plaintiff must establish: (1) an economic relationship between the plaintiff and some third party with the probability of future economic benefit to the plaintiffs; (2) the defendant's knowledge of the relationship; (3) intentional acts, apart from the interference itself, by defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of defendant. *CRST Van Expedited v. Werner Enter., Inc.*, 479 F.3d 1099, 1108 (9th Cir. 2007). "Interference with prospective economic advantage requires a plaintiff to allege an act that is wrongful independent of the interference itself." *Bekele v. Ford*, 2011 WL 4368566, at 11 (N.D. Cal. Sept. 17, 2011) (citing *Della Penna v. Toyota Motor Sales*, 11 Cal. 4th 376, 392–93 (2007)). Notably, "[t]he tort of interference with prospective economic advantage does not, however, protect mere 'potential' relationships that are 'at most a hope for an economic relationship and a desire for a future benefit.'" *Id.* (quoting *Westside Ctr. Assoc. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 527 (1996)).

With respect to an economic relationship with the probability of future economic benefit, PhoneDog contends that in paragraph 29 of its Complaint, it has sufficiently alleged that "PhoneDog has had and continues to enjoy relationships with existing and prospective users of its mobile news and review services." Opp'n at 13. However, the Court agrees with Mr. Kravitz that this allegation is conclusory and fails to meet the plausibility standard. In particular, it is unclear who the "users" are, *i.e.,* whether they are the 17,000 Account followers, consumers accessing PhoneDog's website, or some other individuals, and what the nature of PhoneDog's purported economic relationship is with these users.

11

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1    The Court also agrees with Mr. Kravitz that PhoneDog has failed to sufficiently allege actual

2    disruption of the relationship between it and its users and economic harm caused by Mr. Kravitz's

3    actions.  In response to Mr. Kravitz's challenge, PhoneDog cites to paragraph 30 of the Complaint.

4    Opp'n at 14.  However, this paragraph does not contain any facts regarding how Mr. Kravitz's

5    conduct disrupted PhoneDog's relationship with its users or resulted in economic harm.  In its

6    Opposition, PhoneDog also indicates that Mr. Kravitz's conduct disrupted its economic relationships

7    with its advertisers and cites to testimony from Tom Klein in support.  *Id.* (citing Klein Decl. ¶¶ 3, 8).

8    However, to the extent that Mr. Klein's statements contain facts not alleged in PhoneDog's

9    Complaint, it is improper for the Court to consider such facts when assessing the adequacy of

10   PhoneDog's allegations.  If PhoneDog contends that an economic relationship existed between it and

11   customers who advertised on its website, PhoneDog must allege such facts in its Complaint.

12   Reviewing the entirety of PhoneDog's Complaint, the Court finds that PhoneDog has failed to allege

13   facts regarding how Mr. Kravitz's conduct disrupted its relationships and what economic harm it

14   caused.  The Court therefore **GRANTS** Mr. Kravitz's request to dismiss the misappropriation of trade

15   secrets claim.

16              *c.    Negligent Interference with Prospective Economic Advantage*

17        Mr. Kravitz moves to dismiss PhoneDog's claim for negligent interference with prospective

18   economic advantage on the grounds that it has failed to sufficiently allege: (1) the existence of an

19   economic relationship that would have probably resulted in economic benefit; or (2) a negligent act

20   by Mr. Kravitz that actually disrupted that relationship.  Mot. at 19.  To state a claim for negligent

21   interference with prospective economic advantage, a plaintiff must allege: (1) an economic

22   relationship existed between the plaintiff and a third party which contained a reasonably probable

23   future economic benefit or advantage to plaintiff; (2) the defendant knew of the existence of the

24   relationship and was aware or should have been aware that if it did not act with due care its actions

25   would interfere with this relationship and cause plaintiff to lose in whole or in part the probable

26   future economic benefit or advantage of the relationship; (3) the defendant was negligent; and (4)

27   such negligence caused damage to plaintiff in that the relationship was actually interfered with or

28

1   disrupted and plaintiff lost in whole or in part the economic benefits or advantage reasonably

2   expected from the relationship. *N. Am. Chem. Co. v. Super. Ct.*, 59 Cal. App. 4th 764, 786 (1997).

3          With respect to the existence of an economic relationship and the causation elements, this

4   claim suffers from the same pleading deficiencies as PhoneDog's intentional interference claim.  It is

5   therefore subject to dismissal on this ground.

6          Additionally, Mr. Kravitz argues that PhoneDog has failed to allege that he owed it a duty of

7   care, which is a necessary element of the claim.  *Id.*  "The tort of negligent interference with

8   economic relationship arises only when the defendant owes the plaintiff a duty of care .... [A]mong

9   the criteria for establishing a duty of care is the blameworthiness of the defendant's conduct.  For

10  negligent interference, a defendant's conduct is blameworthy only if it was independently wrongful

11  apart from the interference itself." *Lange v. TIG Ins. Co*., 68 Cal. App. 4th 1179, 1187 (1998)

12  (quotations omitted).  With respect to PhoneDog's allegation that Mr. Kravitz interfered with the

13  economic relationship between it and its users, the Court agrees with Mr. Kravitz that PhoneDog has

14  failed to allege that Mr. Kravitz owed it a duty of care.  *See AHO Enter., Inc. v. State Farm Mut.*

15  *Auto. Ins. Co.*, 2008 WL 4830708, at *4 (N.D. Cal. Nov. 6, 2008) (granting dismissal of negligent

16  interference with economic advantage claim pursuant to 12(b)(6) because the complaint failed to

17  allege that defendant owed a duty of care to the plaintiff).  The claim is also subject to dismissal on

18  this basis.  The Court therefore **GRANTS** Mr. Kravitz's Motion with respect to PhoneDog's

19  negligent interference with prospective economic advantage claim.

20                      *d.     Conversion Claim*

21          Finally, Mr. Kravitz urges the Court to dismiss PhoneDog's conversion claim.  Mot. at 19.

22  Under California law, the elements of conversion are: (1) ownership of a right to possession of

23  property; (2) wrongful disposition of the property right of another; and (3) damages.  *See G.S.*

24  *Rasmussen & Assoc. v. Kalitta Flying Serv*., 958 F.2d 896, 906 (9th Cir. 1992).

25          Mr. Kravitz first argues that PhoneDog has failed to sufficiently allege that it owns or has the

26  right to immediately possess the Account.  *Id.*  PhoneDog, however, maintains that it has adequately

27  alleged that it was and still is the owner of the Account and is entitled to possession of the Account.

28

*UNITED STATES DISTRICT COURT*
*For the Northern District of California*

1  Opp'n at 16.  It points out that it has alleged that it gave Mr. Kravitz permission to use the Account

2  during his employment, but he has refused to surrender the Account following his departure from

3  PhoneDog.  *Id.* at 16-17 (citing Compl. ¶¶ 39-40).  At this stage of the proceedings, the Court finds

4  that PhoneDog has adequately alleged that it owns or has the right to possess the Account.  As

5  discussed above, the nature of that claim is at the core of this lawsuit and cannot be determined on the

6  present record.

7        Mr. Kravitz also argues that PhoneDog has failed to allege that Mr. Kravitz's act of

8  conversion was done "knowingly" or "intentionally."  Mot. at 19-20.  He further contends that the

9  conversion claim fails because PhoneDog informed him that he could continue to use the Account

10  and assented to his continued use after he separated from his employment with PhoneDog.  *Id.* at 20.

11  In its Opposition, PhoneDog responds that it has alleged that it expressly requested that Mr. Kravitz

12  relinquish use of the Account, but Mr. Kravitz merely changed the Twitter handle.  Opp'n at 17

13  (citing to Compl. ¶ 17).  The Court agrees with PhoneDog that this allegation is sufficient for

14  purposes of alleging that the conversion was knowing or intentional.

15        The Court therefore **DENIES** Mr. Kravitz's request to dismiss PhoneDog's conversion claim.

16                              **IV.   CONCLUSION**

17        For the reasons sets forth above, the Court **GRANTS IN PART** and **DENIES IN PART** Mr.

18  Kravitz's Motion to Dismiss (Dkt. No. 4) as follows.

19        The Court **DENIES WITHOUT PREJUDICE** Mr. Kravitz's Motion to Dismiss for lack of

20  subject matter jurisdiction.

21        The Court **GRANTS** Mr. Kravitz's Motion to Dismiss PhoneDog's claims for intentional

22  interference with prospective economic advantage and negligent interference with prospective

23  economic advantage with leave to amend.

24        The Court **DENIES** Mr. Kravitz's Motion in all other respects.

25  / / /

26  / / /

27  / / /

28

PhoneDog shall file its First Amended Complaint no later than November 29, 2011.

**IT IS SO ORDERED.**

Dated: November 8, 2011

_____
Maria-Elena James
Chief United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

15