| | |
|---|---|
| 1 | Cary Kletter |
| 2 | Sally Trung Nguyen<br>KLETTER LAW FIRM |
| 3 | 1900 S. Norfolk Street, Suite 350<br>San Mateo, California 94403 |
| 4 | Telephone: 415.434.3400<br>Email: ckletter@kletterlaw.com |
| 5 | |
| 6 | Attorneys for NOAH KRAVITZ |

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PHONEDOG, LLC, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>NOAH KRAVITZ, an individual,<br><br>Defendants. | CASE NO. C11-03474<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF PHONEDOG, LLC'S SECOND AND THIRD CLAIMS FOR RELIEF IN THE FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. PROC. RULE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Date:** January 26, 2012<br>**Time:** 10:00 a.m.<br>**Dept.:** Courtroom B – 15th Floor<br>**Judge:** Maria-Elena James |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii
NOTICE OF MOTION AND MOTION .................................................................................... 1
MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1
I. INTRODUCTION ........................................................................................................... 1
II. STATEMENT OF ISSUES ............................................................................................. 2
III. PHONEDOG'S ALLEGATIONS ................................................................................... 3
IV. ARGUMENT .................................................................................................................. 5
    A. Legal Standard for Motion to Dismiss For Failure to State Claim Under FRCP 12(b)(6) ..................................................................................................... 5
    B. PhoneDog's Second Claim for Relief – Intentional Interference With Prospective Economic Advantage – Must be Dismissed ................................... 6
        1. Followers and Prospective Users of the Account .................................... 7
        2. Existing and Prospective Advertisers ....................................................... 8
        3. CNBC and Fox News ............................................................................... 9
    C. PhoneDog's Third Claim For Relief – Negligent Interference With Prospective Economic Advantage – Must be Dismissed ................................... 10
V. CONCLUSION ............................................................................................................. 11

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Ashcroft v. Iqbal*
129 S. Ct. 1937 (2009) .................................................................................................. 5, 6

*Bell Atlantic Corp. v. Twombly*
550 U.S. 544 (2007) ...................................................................................................... 5, 6

*Cahill v. Liberty Mut. Ins. Co.*
80 F.3d 336, 337-38 (9th Cir. 1996) ................................................................................ 5

*Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*
911 F.2d 242 (9th Cir. 1990) ........................................................................................... 6

*CRST Van Expedited v. Werner Enter., Inc.*
479 F.3d 1099 (9th Cir. 2007) ..................................................................................... 6-7

*Janda v. Madera Community Hosp.*
16 F.Supp.2d 1181 (E.D. Cal 1998) ................................................................................ 8

*Pareto v. F.D.I.C.*
139 F.3d 696 (9th Cir. 1998) ......................................................................................... 10

*Sprewell v. Golden Gate Warriors*
266 F.3d 979 (9th Cir. 2001) ........................................................................................... 6

**FEDERAL STATUTES**

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 5, 11

**STATE CASES**

*Blank v. Kirwan*
39 Cal.3d 311 (1985) ....................................................................................................... 8

*Lange v. TIG Ins. Co.*
68 Cal.App.4th 1179 (1998) .......................................................................................... 10

*LiMandri v. Judkins*
52 Cal.App.4th 326 (1997) ............................................................................................ 10

*Northern American Chemical Co. v. Sup. Court*
59 Cal.App.4th 764 (1997) ............................................................................................ 10

*Westside Ctr. Assoc. v. Safeway Stores 23, Inc.*
42 Cal.App.4th 507 (1996) ..................................................................................... 6, 7, 8

## NOTICE OF MOTION AND MOTION

TO PLAINTIFF PHONEDOG, LLC AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on January 26, 2012 at 10:00 a.m., or soon thereafter as the motion may be heard, in Courtroom B – 15th Floor of the above-referenced Court, located at 450 Golden Gate Avenue, San Francisco, California, before Honorable Maria-Elena James, Defendant Noah Kravitz ("Kravitz"), by and through undersigned counsel, will move this Court to dismiss Plaintiff PhoneDog, LLC's ("PhoneDog") Second and Third Claims for Relief in the First Amended Complaint pursuant to FRCP 12(b)(6) for failure to state a claim upon which relief can be granted.

By this motion, Defendant seeks an order from this Court dismissing Plaintiff's second and third claims for relief with prejudice. This Motion is made and based upon this Notice and Motion to Dismiss, the accompanying Memorandum of Points and Authorities and upon all the pleadings, records, and papers on file herein, and upon any further and additional evidence that may be presented to or at the time of the hearing on this Motion.

Dated: December 16, 2011          KLETTER LAW FIRM

By: _____
Cary Kletter
Attorney for Defendant
NOAH KRAVITZ

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

On November 8, 2011, this Court granted Kravitz's Motion to Dismiss PhoneDog's claims for intentional interference with prospective economic advantage and negligent interference with prospective economic advantage with leave to amend. PhoneDog filed its First Amended Complaint ("FAC") against Kravitz on November 29, 2011.

Despite the Court's guidance in the Order on Defendant's Motion to Dismiss Pursuant to FRCP 12(B)(1) and 12(B)(6) (the "Order"), PhoneDog's FAC continues to fail to allege sufficient facts to state a claim upon which relief can be granted. PhoneDog's FAC continues to make allegations that are conclusory and fails to meet the plausibility standard for its intentional interference with prospective economic advantage and negligent interference with prospective economic advantage. PhoneDog has failed to follow the guidance of this Court in its November 8, 2011 Order.

PhoneDog's second and third claims for relief should be dismissed for several reasons: 1) PhoneDog has not alleged the existence a protected economic relationship between it and the followers and prospective users of the Twitter account at issue (the "Account") that was actually disrupted by a wrongful act of Kravitz and resulted in an economic harm to PhoneDog; 2) PhoneDog has not alleged the existence of a protected economic relationship between it and existing and prospective advertisers that was actually disrupted by a wrongful act of Kravitz which resulted in an economic harm to PhoneDog; 3) PhoneDog has not alleged the existence a protected economic relationship between it and CNBC and Fox News that was actually disrupted by a wrongful act of Kravitz which then resulted in economic harm to PhoneDog; and 4) The allegations in PhoneDog's FAC do not make a plausible showing that Kravitz owed a duty of care to PhoneDog.

Kravitz therefore brings this Motion to Dismiss Plaintiff PhoneDog's Second and Third Claims for Relief in the First Amended Complaint for Failure to State a Claim Under Fed.R.Civ.Proc. Rule 12(b)(6).

## II. STATEMENT OF ISSUES

The issues to be decided in this Motion are as follows:

1) whether PhoneDog's intentional interference with prospective economic advantage claim should be dismissed for failure to state a claim upon which relief can be granted; and

2) whether PhoneDog's negligent interference with prospective economic advantage claim should be dismissed for failure to state a claim upon which relief can be granted.

### III. PHONEDOG'S ALLEGATIONS[1]

PhoneDog is a Delaware Corporation with its principal place of business in Mount Pleasant, South Carolina. (FAC at ¶ 1.) PhoneDog engages in the business of providing reviews of the latest mobile products and services and providing users the resources needed to research, compare prices and shop from those providers that fit their needs. (FAC at ¶ 8.) One source of PhoneDog's income derives from advertisements being sold on its website. (FAC at ¶ 10.) PhoneDog alleges that advertisers pay for ad inventory on its website for every 1,000 pageviews. (FAC at ¶ 10.) PhoneDog alleges that it requests that its agents and employees maintain Twitter Account to use in the scope of the services they perform for PhoneDog. (FAC at ¶ 12.) These agents and employees tweet links in hopes of directing followers of Twitter accounts to PhoneDog's website, which allegedly in turn generates advertising revenue for PhoneDog. (FAC at ¶ 12.) Nowhere in PhoneDog's FAC does it allege that it any follower of the Account was actually directed to PhoneDog's website. PhoneDog has not alleged that it ever generated any advertising revenue resulting from the Account.

PhoneDog alleges that it hired Kravitz as a product reviewer and video blogger beginning on or around April 13, 2006. (FAC at ¶ 17.) PhoneDog alleges that as part of Kravitz's work for PhoneDog, Kravitz submitted written and video content to PhoneDog, which was then transmitted to its users via a variety of mediums including but not limited to, PhoneDog's website and PhoneDog's @PhoneDog_Noah Twitter account. (FAC at ¶ 17.)

---

[1] All factual statement herein are as alleged in PhoneDog's FAC. Kravitz does not admit, concede, or otherwise accept any of the allegations as true, but rather presents these facts as set forth in PhoneDog's FAC. As set forth in the Argument section below, the Court is not bound to accept all of the allegations as true since Kravitz alleges failure to state a claim.

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS
SECOND AND THIRD CLAIMS FOR RELEIF IN FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. C11-03474
- 3 -

PhoneDog alleges that Kravitz maintained the Twitter account "@PhoneDog_Noah" (the "Account"). (FAC at ¶ 15.) PhoneDog alleges that the Account generated approximately 17,000 Twitter followers during the course of Kravitz's work for PhoneDog. (FAC at ¶ 19.) PhoneDog alleges that according to industry standards, each Twitter follower is currently valued at $2.50 per month. (FAC at ¶ 19.)

PhoneDog alleges that Kravitz suddenly resigned from PhoneDog in October 2010. (FAC at ¶ 17.) Despite the existence of evidence to the contrary, PhoneDog alleges that following Kravitz's resignation, PhoneDog requested that Defendant relinquish use of the Account. (FAC at ¶ 17.) PhoneDog also alleges that instead of relinquishing use of the Account, Kravitz changed the Twitter handle to the Account to "@noahkravitz" and continues to use the Account under the handle "@noahkravitz". (FAC at ¶ 20.) PhoneDog does not allege that there was any agreement prohibiting Kravitz from changing the Twitter handle to the Account to "@noahkravitz" without PhoneDog's permission. Also, PhoneDog does not allege that Kravitz was prohibited from communicating with any of the Account's followers, which were widely known and publicly displayed on the Account's homepage.

PhoneDog alleges that subsequent to resigning from his employment with PhoneDog, Kravitz used PhoneDog's Confidential Information to access the Account. (FAC at ¶ 22.) PhoneDog alleges that Kravitz has and is attempting to discredit PhoneDog and destroy the confidence that PhoneDog's users have in PhoneDog by and through his use of the Account, disparaging PhoneDog. (FAC at ¶ 23.) Nowhere in PhoneDog's FAC does it allege that Kravitz made any disparaging statements about PhoneDog. There are no allegations of libel or slander.

PhoneDog alleges that it had economic relationships with CNBC and Fox News during the time Kravitz performed work for PhoneDog that enabled Kravitz to become a contributor on "Street Signs" and "Fox Business Live" (which PhoneDog later refers to as "Fox News Live" in its FAC). (FAC at ¶¶ 24, 34.) PhoneDog alleges that after Kravitz's resignation from PhoneDog, Kravitz continued to contribute to "Street Signs" and "Fox Business Live" to

market and advertise. Nowhere in PhoneDog's FAC does it allege that Kravitz was prohibited from contributing to "Street Signs" and "Fox Business Live" after his resignation from PhoneDog. PhoneDog has not alleged that Kravitz's continued contributions to "Street Signs" and "Fox Business Live" constituted a wrongful act.

PhoneDog's FAC includes four (4) claims for relief: (1) Misappropriation of Trade Secrets; (2) Intentional Interference with Prospective Economic Advantage; (3) Negligent Interference with Prospective Economic Advantage; and (4) Conversion. PhoneDog asserts jurisdiction based upon diversity of citizenship and amount in controversy. (FAC ¶¶ 25-53.) All of these claims fail as a matter of law.

## IV. ARGUMENT

### A. Legal Standard for Motion to Dismiss For Failure to State Claim Under FRCP 12(b)(6)

A party may move for an order dismissing a complaint for failure to state a cause of action for which relief that is plausible on its face. FRCP 12(b)(6); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Here, Kravitz moves to dismiss PhoneDog's second and third claims for relief pursuant to FRCP 12(b)(6).

When resolving a Rule 12(b)(6) motion, a court must: (1) construe the complaint in light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether the plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. A complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 556-57. "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)

Before the court decides whether the factual allegations, if assumed true, allege a "plausible" claim, it must first identify which statements in the complaint are factual allegations and which are legal conclusions. *Iqbal*, 129 S. Ct. at 1951. Conclusory allegations may be disregarded by the courts. The court is not bound to accept as true allegations that are legal conclusions, even if cast in form of factual allegations. *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss. *Id.* The court need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden Gate Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); see also *Twombly*, 550 U.S. at 561 ("a wholly conclusory statement of [a] claim" will not survive a motion to dismiss). Additionally, a court need not permit an attempt to amend a complaint if "it determines that the pleading could not possibly be cured by the allegations of other facts. *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

### B. PhoneDog's Second Claim For Relief – Intentional Interference With Prospective Economic Advantage – Must be Dismissed

PhoneDog's FAC is plainly deficient. This Court specifically noted on page 11 of its November 8, 2011 Order that a plaintiff must show the following to establish a claim for intentional interference with prospective economic advantage: "(1) an economic relationship between the plaintiff and some third party with the <u>probability of future economic benefit</u> to the plaintiffs; (2) the defendant's knowledge of the relationship; (3) intentional acts, apart from the interference itself, by defendant designed to disrupt the relationship; (4) <u>actual disruption</u> of the relationship; and (5) <u>economic harm</u> to the plaintiff proximately caused by the acts of defendant. *CRST Van Expedited v. Werner Enter., Inc.* 479 F.3d 1099, 1108 (9th Cir. 2007)." (emphasis added.) Further, "[t]he tort of interference with prospective economic advantage

does not, however, protect mere 'potential' relationships that are 'at most a hope for an economic relationship and a desire for a future benefit.'" *CRST Van Expedited v. Werner Enter., Inc.*, 479 F.3d 1099, 1108 (9th Cir. 2007) (quoting *Westside Ctr. Assoc. v. Safeway Stores 23, Inc.*, 42 Cal.App.4th 507, 527 (1996)).

In its FAC, PhoneDog has practically changed its theory for recovery and now alleges that it had "economic relationships" with (1) "followers and prospective users of the Account", (2) "existing and prospective advertisers who buy ad inventory on PhoneDog's website" and (3) "CNBC and Fox News". (FAC at ¶36.) Nonetheless, PhoneDog's second claim for relief must be dismissed because the FAC still fails to allege sufficient facts to state a claim upon which relief can be granted.

### 1. Followers and Prospective Users of the Account

With respect to the alleged economic relationship with "followers and prospective users of the Account", PhoneDog's FAC contains similar deficiencies as its initial complaint. It is unclear who the "prospective users" are and what the nature of the purported economic relationship is with the Account's "users" or "followers". PhoneDog has also utterly failed to allege facts to make a plausible claim that an economic relationship existed and that the relationship would have *probably* resulted in future economic benefit to PhoneDog. Nowhere in the FAC does PhoneDog allege facts to establish that there was some future economic benefit that would have probably resulted from a relationship with the Account's "followers" or "prospective users". Moreover, the FAC again fails to sufficiently allege an <u>actual</u> disruption of the alleged economic relationship between it and "followers and prospective users of the Account" and an economic harm caused by Kravitz's act. In other words, the alleged relationship between PhoneDog and "followers and prospective users of the Account" is not one protected by the tort of interference with prospective economic advantage. *See CRST Van Expedited*, 479 F.3d at 1108 (9th Cir. 2007)

//

### 2. Existing and Prospective Advertisers

Similarly, PhoneDog's FAC fails to sufficiently allege facts to establish a claim with respect to its alleged relationship with "existing and prospective advertisers who buy ad inventory on PhoneDog's website". In fact, this claim is completely speculative and based entirely upon an insufficiently supported hypothetical – i.e. that an act of Kravitz somehow *might or might not have* led to a decrease in the number of PhoneDog's website page views, which *might or might not have* "discourage[d]" existing and prospective advertisers from paying for ad inventory on PhoneDog's website. (FAC at ¶36.) There is insufficient factual allegation in the FAC to make a plausible showing that there was an <u>actual</u> disruption of an <u>existing</u> or <u>probably future economic relationship</u> with an existing or prospective advertisers. PhoneDog's claim is wholly based on a mere desire of a future transaction with a potential unidentifiable advertiser.

PhoneDog has also failed to allege an actual economic harm caused by Kravitz in connection with this alleged economic relationship. PhoneDog only <u>speculates</u> that advertisers might have been "discourage[d]" from paying ad inventory on its website and then unwarrantly concludes, without more, that this discouragement resulted in "lost advertising revenue". (FAC at ¶¶36 and 38.) However, PhoneDog has not, and cannot, assert an actual economic harm caused by Kravitz. Moreover, this alleged "lost advertising revenue" is simply <u>not</u> the type of relationship protected by the tort of interference with prospective economic advantage because <u>it is at most a mere hope of future benefits</u>. *See CRST Van Expedited*, 479 F.3d at 1108 (9th Cir. 2007). Under California law, a plaintiff must establish an <u>existing economic relationship or a protected expectancy</u> with a third person, not merely a hope of future transactions. *See e.g. Blank v. Kirwan*, 39 Cal.3d 311, 330-31 (1985); *Janda v. Madera Cmty. Hosp.*, 16 F. Supp.2d 1181 (E.D. Cal. 1998). PhoneDog has not, and cannot, establish the existence of a *protected* economic relationship or *protected* expectancy.

//

//

### 3. CNBC and Fox News

PhoneDog's claim for intentional interference with prospective economic advantage with respect to its alleged relationship with "CNBC and Fox News" is plainly deficient. PhoneDog has not alleged any facts to establish the existence of an "economic" relationship between CBNC and Fox News with the probability of future economic benefits to PhoneDog. Rather, PhoneDog has only alleged facts establishing a relationship that is clearly *non-economic* in nature -- i.e. a relationship that allegedly enabled PhoneDog and Kravitz to contribute to "Street Signs" (CNBC) and "Fox News Live" (FoxNews). (FAC at ¶¶24, 34, 36.)

PhoneDog has also completely failed to allege the existence of an economic harm resulting from a disruption of this relationship. In fact, PhoneDog admits that only a *non-economic* harm resulted from this disruption when stating that "as a result of Defendant's wrongful conduct, PhoneDog no longer has contributing spots on "Street Signs" and "Fox News Live." (FAC at ¶36.) Any attempt by PhoneDog to claim that this somehow resulted in an actual economic harm is completely speculative, insufficiently supported by the factual allegations and nothing more than a mere desire for future benefits.

In addition, page 11 of the November 8, 2011 Order specifically noted that "[i]nterference with prospective economic advantage requires a plaintiff to allege an act that is wrongful independent of the interference itself." However, PhoneDog's FAC completely fails to allege a *wrongful* act by Kravitz designed to disrupt this particular relationship. PhoneDog has only alleged that Kravitz continued to contribute to "Street Signs" and "Fox News Live" (FAC at ¶35), but has not alleged facts to establish how Kravitz's act was "wrongful". In addition, PhoneDog states that Kravitz disrupted this relationship by "using PhoneDog's economic relationships with CNBC and Fox News to continue contributing to 'Street Signs' and 'Fox News Live'". (FAC at ¶35) However, this alleged act is the interference itself. PhoneDog has not made any other allegation constituting an <u>independent act</u> by Kravitz designed to disrupt this particular relationship.

### C. PhoneDog's Third Claim For Relief – Negligent Interference With Prospective Economic Advantage – Must be Dismissed

PhoneDog's claim of negligent interference with prospective economic advantage must be dismissed. Pursuant to the Court's Order, a plaintiff must allege the following to state a claim for negligent interference with prospective economic advantage: "(1) an economic relationship existed between the plaintiff and a third party which contained a reasonably probable future economic benefit or advantage to plaintiff; (2) the defendant knew of the existence of the relationship and was aware or should have been aware that if it did not act with due care its actions would interfere with this relationship and cause plaintiff to lose in who or in part the probable future economic benefit or advantage of the relationship; (3) the defendant was negligent; and (4) such negligence caused damage to plaintiff in that the relationship was actually interfered with or disrupted and plaintiff lost in whole or in part the economic benefits or advantage reasonably expected from the relationship." *North American Chemical Co. v. Sup. Court*, 59 Cal.App.4th 764, 786 (1997).

Similarly to PhoneDog's intentional interference claim, this claim also fails for failure to sufficiently allege (1) the existence of an economic relationship that would have probably resulted in an economic benefit, (2) a negligent act by Kravitz that actually disrupted that relationship, and (3) economic harm caused by Kravitz.

Moreover, "[t]he tort of negligent interference with economic relationship arises only when the defendant owes the plaintiff a duty of care." *LiMandri v. Judkins*, 52 Cal.App.4th 326, 348 (1997). On page 13 of the Order, this Court stated: "'[A]mong the criteria for establishing a duty of care is the blameworthiness of the defendant's conduct. For negligent interference, a defendant's conduct is blameworthy only if it was independently wrongful apart from the interference itself.' *Lange v. TIG Ins. Co.*, 68 Cal.App.4th 1179, 1187 (1998)". PhoneDog has completely ignored this Court's guidance and instead merely makes the conclusory allegation that Kravitz "owed a duty of care to PhoneDog as an agent of PhoneDog." (FAC at ¶42.) PhoneDog's conclusory allegations need not be accepted as true.

*Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). Accordingly, PhoneDog's Third Claim for Relief must be dismissed.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Defendant Kravitz respectfully requests an order from this Court dismissing Plaintiff PhoneDog's second and third claims for relief in the First Amended Complaint for failure to state a claim upon which relief can be granted pursuant to FRCP 12(b)(6).

Dated: December 16, 2011

KLETTER LAW FIRM

By: _____
Cary Kletter
Attorney for Defendant,
NOAH KRAVITZ