JOHN C. KIRKE, #175055
SOPHIA E.C. SCHWARTZ, #272915
DONAHUE GALLAGHER WOODS LLP
Attorneys at Law
1999 Harrison Street, 25th Floor
Oakland, California 94612-3520
P.O. Box 12979
Oakland, California 94604-2979
Telephone: (510) 451-0544
Facsimile: (510) 832-1486

Attorneys for Plaintiff
PHONEDOG, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PHONEDOG, LLC, a Delaware corporation,

Plaintiff,

v.

NOAH KRAVITZ, an individual,

Defendant.

CASE NO. 3:11-cv-03474-MEJ

**PLAINTIFF PHONEDOG, LLC'S OPPOSITION TO DEFENDANT NOAH KRAVITZ'S MOTION TO DISMISS PLAINTIFF PHONEDOG, LLC'S SECOND AND THIRD CLAIMS FOR RELIEF IN THE FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. PROC. RULE 12(B)(6)**

Date: January 26, 2012
Time: 10:00 a.m.
Dept.: Courtroom B - 15th Floor
Judge: Maria-Elena James

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..... 2

FACTS ..... 2

ARGUMENT ..... 3

I. LEGAL STANDARD ..... 3

II. DEFENDANT'S MOTION TO DISMISS PHONEDOG'S SECOND AND THIRD CAUSES OF ACTION UNDER RULE 12(B)(6) SHOULD BE DENIED ..... 4

A. PhoneDog Adequately Pleads Its Cause Of Action For Intentional Interference With Prospective Economic Advantage ..... 4

1. In Its FAC, PhoneDog Adequately Pleads An Economic Relationship Between PhoneDog And A Third Party With The Probability Of Future Economic Benefit To PhoneDog ..... 5

2. In Its FAC, PhoneDog Sufficiently Alleges An Actual Disruption of Its Economic Relationships. ..... 7

B. PhoneDog Adequately Pleads Its Claim For Negligent Interference With Prospective Economic Advantage ..... 9

1. Phonedog Pleads Sufficient Facts Regarding Defendant's Negligence ..... 10

CONCLUSION ..... 12

# TABLE OF AUTHORITIES

**Page**

## CASES

*Al-Kidd v. Ashcroft*, 580 F.3d 949 (9th Cir. 2009), *cert. granted* in part on other issues, 131 S. Ct. 415 (2010) .......... 4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 3

*Biakanja v. Irving*¸ 49 Cal. 2d 647 (1958) .......... 10

*Blank v. Kirwan*, 39 Cal. 3d 311 (1985) .......... 6, 8

*CRST Van Expedited v. Werner Enters., Inc.*, 479 F.3d 1099 (9th Cir. 2007) .......... 5

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376 (1995) .......... 8

*In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, 102 F.3d 1524 (9th Cir. 1996), *rev'd and remanded* on other grounds, 523 U.S. 26 (1997) .......... 4

*Lange v. TIG Ins. Co.*, 68 Cal. App. 4th 1179 (1998) .......... 10

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228 (5th Cir. 2009) .......... 3

*N. A. Chem. Co. v. Super. Ct.*, 59 Cal. App. 4th 764 (1997) .......... 10

*Nami v. Fauver*, 82 F. 3d 63 (3rd Cir. 1996) .......... 4

*Pareto v. F.D.I.C.*, 139 F.3d 696 (9th Cir. 1998) .......... 4, 8

*Pegram v. Herdich*, 530 U.S. 211 (2000) .......... 4

*Rescuecom Corp. v. Google Inc.*, 562 F.3d 123 (2nd Cir. 2009) .......... 4

*Silva v. Bieluch*, 351 F.3d 1045 (11th Cir. 2003) .......... 12

*United States v. City Redwood City*, 640 F.2d 963 (9th Cir. 1981) .......... 4

## STATUTES

Cal. Civ. Code § 3426.1 .......... 9

Cal. Code Civ. P. § 1714(a) .......... 11

Fed. R. Civ. P. 8(a)(2) .......... 3

Fed. R. Civ. P. 12(b)(1) .......... 2

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

Fed. R. Civ. P. 12(b)(6) ........ 2, 4, 6
Fed. R. Civ. P. 15(a)(2) ........ 12
Fed. R. Civ. P. 8 ........ 12
Fed. R. Civ. P. 8(a)(2) ........ 8, 11

**SECONDARY AUTHORITIES**

5 Witkin Torts, § 751 ........ 10

**INTRODUCTION**

Plaintiff PhoneDog, LLC's ("PhoneDog") statements of its claims for relief as alleged in its First Amended Complaint ("FAC") are legally sufficient. Rather than completely changing its theory of recovery, as contended by defendant Noah Kravitz ("Defendant"), in its FAC PhoneDog merely clarified its factual allegations, using this Court's November 8, 2011, Order on Defendant's Motion to Dismiss Pursuant to FRCP 12(b)(1) and 12(b)(6) (the "Order") as a guideline. In its FAC, PhoneDog clearly alleges economic relationships with the probability of future economic benefit to PhoneDog, as well as actual disruption of those relationships. Therefore, the Court should deny Defendant's motion to dismiss in its entirety.

**FACTS**

PhoneDog is a highly interactive mobile news and reviews web resource that provides users of its website the resources needed to research, compare prices, and shop from those providers that fit their needs. FAC, ¶ 8. Each month, PhoneDog's website attracts approximately 1.5 million users each month, and its videos reach an average audience of 3 million viewers per month. *Id.*, ¶ 9. A significant source of PhoneDog's income derives from advertisements being sold on its website. *Id.*, ¶ 10. Advertisers pay PhoneDog per 1000 pageviews to its website. *Id.*

PhoneDog uses a variety of social media, including Twitter, to market and promote its services. *Id.*, ¶ 11. In order to generate pageviews on its website, PhoneDog requests that its agents and employees maintain Twitter accounts to use in the scope of the services they perform for PhoneDog. *Id.*, ¶ 12. PhoneDog's agents and employees tweet links directing followers of PhoneDog's various Twitter accounts to PhoneDog's website, which in turn drives traffic to PhoneDog's website and generates advertising revenue for PhoneDog. *Id.*, at ¶ 12.

PhoneDog engaged Defendant as a product reviewer and video blogger in April 2006. *Id.*, ¶ 17. As part of Defendant's work for PhoneDog, Defendant submitted written and video content to PhoneDog, which was then transmitted to PhoneDog's users via a variety of mediums such as PhoneDog's website and PhoneDog's Twitter accounts. *Id.* PhoneDog granted Defendant, as an agent of PhoneDog, use of a Twitter account with the twitter handle @PhoneDog_Noah (the "Account") to use in connection with Defendant's work for PhoneDog. *Id.*, ¶ 18. Defendant

submitted content to the Account in an effort to promote PhoneDog's services and drive traffic to PhoneDog's website *Id.*, ¶¶ 12, 18. During Defendant's course of work for PhoneDog, the Account generated approximately 17,000 followers (the "PhoneDog Followers"). *Id.*, ¶ 19.

After Defendant suddenly left PhoneDog in October 2010, he continued to use the Account (albeit with a different Twitter handle) to communicate with the PhoneDog's Followers, promoting both his services and the services of his new employer, without PhoneDog's permission. *Id.*, ¶¶ 20, 22.

Plaintiff also had economic relationships with CNBC and Fox News. *Id.*, ¶ 24. Those relationships enabled Defendant, acting on behalf of PhoneDog, to become a contributor on "Street Signs" (CNBC) and "Fox Business Live" (Fox News). *Id.* Following Defendant's resignation from PhoneDog, Defendant used PhoneDog's economic relationships with CNBC and Fox News to continue to contribute to "Street Signs" and "Fox Business Live" in order to market and advertise his services and the services of his employer, TechnoBuffalo. *Id.*

As a result of Defendant's unauthorized use of the Account, there is decreased traffic to PhoneDog's website through the Account, which in turn has decreased the amount of website pageviews and discouraged advertisers from paying for ad inventory on PhoneDog's website. *Id.*, ¶ 36. Moreover, PhoneDog has been damaged because as a result of Defendant's conduct, it no longer has contributing spots on "Street Signs" and "Fox Business Live," and is therefore unable to promote itself on those programs in an effort to drive traffic to its website, thereby generating advertising revenue. *Id.*, ¶ 36.

## <u>ARGUMENT</u>

### I. LEGAL STANDARD.

Motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) "are viewed with disfavor and are rarely granted." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). Federal Rule of Civil Procedure 8(a)(2) requires only "a short plain statement of the claim showing that the pleader is entitled to relief." Thus, it is not necessary that the pleader make detailed factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007). A complaint should not be dismissed for failure to state a claim unless it is

clear that "no relief could be granted under *any set of facts* that could be proved consistent with the allegations." *Id*. (internal citations omitted) (emphasis added). Further, in considering a 12(b)(6) motion, the court must accept as true all factual allegations set out in plaintiff's Complaint, as well as all reasonable inferences to be drawn from them. *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). The Complaint must be construed liberally and in the light most favorable to the plaintiff. *Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 127 (2nd Cir. 2009); *Al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009), *cert. granted* in part on other issues, 131 S. Ct. 415 (2010). Importantly, unless the court converts the 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint. *In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, 102 F.3d 1524, 1537 (9th Cir. 1996), *rev'd and remanded* on other grounds, 523 U.S. 26 (1997).

The question of plaintiff's ability to prove its allegations or possible difficulties in making such proof is generally of no concern in ruling on a rule 12(b)(6) motion: "In considering a 12(b)(6) motion, we do not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support of their claims." *Nami v. Fauver*, 82 F. 3d 63, 65 (3rd Cir. 1996). Further, a plaintiff's briefing may always be used "to clarify allegations in [its] complaint whose meaning is unclear." *Pegram v. Herdich*, 530 U.S. 211, 230 (2000).

Defendant has failed to establish the "extraordinary circumstances" that warrant dismissal pursuant to Rule 12(b)(6). *See United States v. City Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

## II. DEFENDANT'S MOTION TO DISMISS PHONEDOG'S SECOND AND THIRD CAUSES OF ACTION UNDER RULE 12(B)(6) SHOULD BE DENIED.

### A. PhoneDog Adequately Pleads Its Cause Of Action For Intentional Interference With Prospective Economic Advantage.

PhoneDog adequately pleads its cause of action for intentional interference with prospective economic advantage, using the Order as a guideline. As noted by the Court in the Order, under California law, to prevail on a claim for intentional interference with prospective economic advantage, a plaintiff must establish: (1) an economic relationship between the plaintiff and some third party with the probability of future economic benefit to the plaintiff; (2) the

defendant's knowledge of the relationship; (3) intentional acts, apart from the interference itself, by defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of defendant. *CRST Van Expedited v. Werner Enters., Inc.*, 479 F.3d 1099, 1108 (9th Cir. 2007); *see also* Order, p. 11.

The Court found that PhoneDog's cause of action for intentional interference with economic advantage as pled in PhoneDog's complaint, filed July 15, 2011 (the "Complaint"), was deficient in only two respects. First, the Court found that PhoneDog did not adequately plead an economic relationship between the plaintiff and some third party with the probability of future economic benefit to the plaintiff. Order, p. 11. Second, the Court found that PhoneDog failed to sufficiently allege actual disruption of the relationship between it and its users, and the economic harm caused by Defendant's actions. Order, p. 12. As discussed below, PhoneDog amended its Complaint in line with the Court's Order and sufficiently plead the aforementioned elements of a cause of action for intentional interference with economic advantage.

1. In Its FAC, PhoneDog Adequately Pleads An Economic Relationship Between PhoneDog And A Third Party With The Probability Of Future Economic Benefit To PhoneDog.

Contrary to what Defendant asserts, PhoneDog adequately pleads an economic relationship with a third party with the probability of future economic benefit to PhoneDog. In particular, in its Order the Court noted that it was "unclear who the "users" are, i.e., whether they are the 17,000 Account followers, consumers accessing PhoneDog's website, or some other individuals, and what the nature of PhoneDog's purported economic relationship is with these users." Order, p. 11. In its FAC PhoneDog remedied this issue by making it clear in paragraph 33 that PhoneDog's economic relationships are with the "PhoneDog Followers," defined in paragraph 19 as the 17,000 followers of the Account. Moreover, PhoneDog alleges in paragraphs 33 and 34 of the FAC that it has economic relationships with its current and prospective advertisers, as well as CNBC and Fox News. For example, in paragraph 33, PhoneDog alleges that it "has had and continues to enjoy relationships with . . . existing and prospective advertisers who pay for ad inventory on PhoneDog's website per 1000 pageviews." In paragraph 34 of the

FAC, PhoneDog alleges that it had "economic relationships with entities such as CNBC and Fox News."

PhoneDog also sufficiently alleges the nature of its economic relationships with the PhoneDog Followers, PhoneDog's current and prospective advertisers, and CNBC and Fox News. In paragraph 10 of its FAC, PhoneDog explains that a "significant source of [its] income derives from advertisements being sold on its website," and that "advertisers pay for ad inventory on PhoneDog's website for every 1000 pageviews generated from users visiting PhoneDog website." PhoneDog goes on to allege that it uses social media, such as Twitter, to drive traffic to PhoneDog's website, which "generates advertising revenue for PhoneDog." FAC, ¶ 12. Thus, PhoneDog's economic relationships with the PhoneDog Followers lies in the PhoneDog Followers visiting the Account and clicking on links to PhoneDog's website, thereby generating advertising revenue for PhoneDog. In the same vein, PhoneDog's economic relationships with its current and prospective advertisers lies in the advertisers paying PhoneDog per 1000 pageviews on PhoneDog's website.

Defendant cites *Blank v. Kirwan*, 39 Cal. 3d 311 (1985), as support for his argument that PhoneDog has not established the existence of "protected economic relationship or a protected expectancy" with PhoneDog's advertisers. *See* Defendant's Notice of Motion and Motion to Dismiss Plaintiff PhoneDog, LLC's Second and Third Claims for Relief in the First Amended Complaint Pursuant to Fed. R. Civ. Proc. Rule 12(b)(6); Memorandum of Points and Authorities in Support Thereof, p. 8 (the "Motion"). *Blank* is inapposite to PhoneDog's case against Defendant. In *Blank*, plaintiff pled a cause of action for intentional interference with prospective economic advantage against defendant, alleging that defendant interfered with plaintiff's economic relationship with the City of Bell. *Id*. at 330. The court, however, held that the plaintiff had no protected economic relationship with the City of Bell because the tort of intentional interference with prospective economic advantage protects the expectancies involved in *ordinary commercial dealings* and not the expectancies, whatever they may be, involved in a governmental licensing process. *Id*. (emphasis added). Here, PhoneDog has alleged expectancies involved in ordinary commercial dealings. A substantial source of PhoneDog's income derives

from advertisements being sold on its website, and the amount of advertising revenue PhoneDog generates is dependent on the number of pageviews to its website. FAC, ¶ 11. PhoneDog has a commercial relationship with its advertisers because its advertisers pay PhoneDog for ad inventory on PhoneDog's website. This is exactly the type of expectancy protected by the tort of intentional interference with prospective economic advantage.

Similarly, the nature of PhoneDog's economic relationships with CNBC and Fox News are clearly alleged. In paragraph 34, PhoneDog alleges that its economic relationships with CNBC and Fox News enabled PhoneDog to "promote and market its services, as well as drive traffic to its website, which in turn generated advertising revenue for PhoneDog." FAC, ¶ 34. Thus, as alleged by PhoneDog, PhoneDog's relationships with CNBC and Fox News were an integral marketing tool used by PhoneDog to drive traffic to PhoneDog's website in order to generate revenue for PhoneDog.

PhoneDog's economic relationships with the PhoneDog Followers, its advertisers and CNBC and Fox News, and the nature of those economic relationships are clearly alleged in PhoneDog's FAC.

2. In Its FAC, PhoneDog Sufficiently Alleges An Actual Disruption of Its Economic Relationships.

Contrary to what Defendant asserts, in its FAC PhoneDog clearly alleges actual disruption of its economic relationships with the PhoneDog Followers, its current and prospective advertisers, and CNBC and Fox News.

First, PhoneDog alleges in its FAC that PhoneDog's economic relationships with the PhoneDog Followers were disrupted. In paragraph 20, PhoneDog alleges that upon Defendant's departure from PhoneDog, PhoneDog requested that Defendant relinquish use of the Account, but instead, Defendant changed the Twitter handle on the Account to @noahkravitz. In paragraph 22, PhoneDog alleges that Defendant continues to use the Account to communicate with the PhoneDog Followers, in an attempt to "market and advertise his services and the services of his employer." Later, in paragraph 36, PhoneDog alleges that Defendant's wrongful conduct, as described in the FAC, was "designed to disrupt, and has in fact disrupted, as well as adversely

affected, PhoneDog's economic relationships with the PhoneDog Followers and prospective users of the Account." Notwithstanding the fact that PhoneDog clearly states that its economic relationship with the PhoneDog Followers was disrupted, it can reasonably be inferred from PhoneDog's aforementioned allegations that PhoneDog no longer has control over the Account, is no longer able to communicate with the PhoneDog Followers, and therefore, that its economic relationships with the PhoneDog Followers and prospective users of the Account have been disrupted. The Court must accept as true all reasonable inferences that can be drawn from PhoneDog's factual allegations in the FAC. *See Pareto v. F.D.I.C.*, 139 F.3d at 699.

Second, PhoneDog alleges in its FAC that its economic relationships with its advertisers were disrupted. PhoneDog states in paragraph 36 that Defendant's "wrongful conduct was designed to disrupt, and has in fact disrupted, as well as adversely affected, PhoneDog's economic relationships with . . . PhoneDog's existing and prospective advertisers who buy ad inventory on PhoneDog's website in that, *as a result of Defendant's conduct, there is decreased traffic to [PhoneDog's] website through the Account, which in turn decreases the number website pageviews and discourages advertisers from paying for ad inventory on PhoneDog's website*" (emphasis added). Thus, PhoneDog does not merely speculate that its economic relationships with its advertisers have been harmed, as contended by Defendant. PhoneDog clearly alleges that traffic to its site has decreased because of Defendant's conduct, and as a result, its advertising revenue has decreased. Moreover, contrary to what is asserted by Defendant, PhoneDog is not required to establish and prove elements of its claims in its complaint. *See Blank*, 39 Cal. 3d at 330-31; *see Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 393 (1995); *see also* Fed. R. Civ. P. 8. Rather, PhoneDog must make a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This is exactly what PhoneDog does with respect to its allegations regarding its disrupted economic relationships with its advertisers. Regardless of what Defendant *thinks* about whether or not PhoneDog has been harmed by Defendant's conduct, PhoneDog is entitled to prove up its allegations at trial.

Finally, PhoneDog alleges in its FAC that its economic relationships with CNBC and Fox News have been disrupted. In paragraph 34 PhoneDog alleges that its economic relationships

with CNBC and Fox News enabled PhoneDog's agent, Defendant, to contribute to "Street Signs" and "Fox [Business] Live" on behalf of PhoneDog, in order to "promote and market [PhoneDog's] services, as well as drive traffic to [PhoneDog's] website, which in turn generated advertising revenue for PhoneDog." In paragraph 36, PhoneDog alleges that as a result of Defendant's wrongful conduct, "PhoneDog no longer has contributing spots on "Street Signs" and "Fox [Business] Live." From these two paragraphs taken together, as well as from PhoneDog's other allegations in its FAC, it can reasonably be inferred that because PhoneDog no longer has contributing spots on "Street Signs" and "Fox Business Live," PhoneDog is unable to promote and market its services on those programs, which in turn decreases the amount of traffic to PhoneDog's website and causes PhoneDog's advertising revenue to decline.

PhoneDog also sufficiently alleges wrongful acts by Defendant that disrupted PhoneDog's economic relationships with CNBC and Fox News. In paragraph 35, PhoneDog alleges that Defendant engaged in wrongful conduct by "misappropriating and using PhoneDog's Confidential Information to access the Account." Such conduct is unlawful under Cal. Civ. Code section 3426.1 and is independent of Defendant's interference with PhoneDog's prospective economic advantage. Moreover, PhoneDog states a claim for conversion of the Account. This claim is incorporated by reference into PhoneDog's claim for intentional interference with prospective economic advantage, and is independent of Defendant's interference with CNBC and Fox News. Without use of the Account, as well as its contributing spots on "Street Signs" and "Fox Business Live," PhoneDog is unable to drive traffic to its website in order to generate advertising revenue.

PhoneDog adequately alleges that its economic relationships with the PhoneDog Followers, its advertisers and CNBC and Fox News were disrupted by Defendant's wrongful conduct. Therefore, this Court should deny Defendant's motion to dismiss as to PhoneDog's cause of action for intentional interference with prospective economic advantage.

### B. PhoneDog Adequately Pleads Its Claim For Negligent Interference With Prospective Economic Advantage.

Per the Court's Order, the tort of negligent interference with prospective economic advantage is established where a plaintiff demonstrates the following: (1) an economic

relationship existed between the plaintiff and a third party which contained a reasonably probable future economic benefit or advantage to plaintiff; (2) the defendant knew of the existence of the relationship and was aware or should have been aware that if it did not act with due care its actions would interfere with this relationship and cause plaintiff to lose in whole or in part the probable future economic benefit or advantage of the relationship; (3) the defendant was negligent; and (4) such negligence cause damage to plaintiff in that the relationship was actually interfered with or disrupted and plaintiff lost in whole or in part the economic benefits of the advantage reasonably expected from the relationship. *N. A. Chem. Co. v. Super. Ct.*, 59 Cal. App. 4th 764, 786 (1997). The Court found that in its Complaint, PhoneDog failed to allege: (1) the existence of an economic relationship that would have probably resulted in economic benefit; or (2) a negligent act by Defendant that actually disrupted that relationship. As discussed in Section II.A, above, in its FAC PhoneDog adequately alleges an economic relationship with the PhoneDog Followers, PhoneDog's advertisers, and CNBC and Fox News.

1. Phonedog Pleads Sufficient Facts Regarding Defendant's Negligence.

PhoneDog has pled sufficient facts regarding Defendant's negligence, specifically, facts that establish that Defendant owes a duty of care to PhoneDog. The criteria for establishing a duty of care are: "the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy preventing future harm." 5 Witkin Torts, § 751; *Biakanja v. Irving*¸49 Cal. 2d 647 (1958); *see also Lange v. TIG Ins. Co.*, 68 Cal. App. 4th 1179, 1187 (1998) ("[A]mong the criteria for establishing a duty of care is the blameworthiness of the defendant's conduct. For negligent interference, a defendant's conduct is blameworthy only if it was independently wrongful apart from the interference itself.") The facts pled by PhoneDog in its FAC bring its case within the six *Biakanja* criteria.

PhoneDog alleges how Defendant's conduct was intended to affect PhoneDog. Defendant's unauthorized use of the Account clearly had a negative effect on PhoneDog's ability to communicate with the PhoneDog Followers, drive traffic to its website, and generate

advertising revenue. *See, e.g.*, FAC, ¶¶ 10-12, 20, 22, 33, 34, and 36. Also, Defendant took advantage of PhoneDog's economic relationships with CNBC and Fox News in order to usurp PhoneDog's contributing spots on "Street Signs" and "Fox Business Live," such that PhoneDog is no longer able to promote and market its services and website on those programs. *See* FAC, ¶ 36. It was clearly foreseeable that Defendant's conduct would have a negative effect on PhoneDog's business because Defendant was an agent of PhoneDog, maintained the Account on behalf of PhoneDog, and contributed to "Street Signs" and "Fox Business Live" on behalf of PhoneDog. *See* FAC, ¶¶ 17-19, 24, 33 and 34. As a result of Defendant's conduct, PhoneDog has been damaged in the sense that it has seen decreased traffic to its website, which has resulted in a diminished flow of advertising revenue from PhoneDog's advertisers. *See* FAC, ¶ 36.

Moreover, Defendant's conduct was particularly blameworthy because Defendant specifically ignored PhoneDog's request that Defendant relinquish the Account to PhoneDog. Instead, Defendant merely changed the handle on the Account to his own name, and began to tweet to the PhoneDog Followers on behalf of himself and his new employer, all to the detriment of PhoneDog. *See* FAC, ¶¶ 20, 22. This type of conduct by Defendant gives rise to a plethora of claims including claims for conversion and misappropriation of trade secrets as well as intentional and negligent interference with prospective economic advantage. Additionally, PhoneDog alleges that Defendant's wrongful conduct independent from the interference itself includes the wrongful misappropriation and use of the Confidential Information. FAC, Complaint, ¶ 35. Finally, public policy supports a duty of care in this situation, for California Code of Civil Procedure section 1714(a) imposes a duty of care in all situations: "[e]very one is reasonable, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill . . . ."

For the purpose of PhoneDog's Complaint, it is sufficient for PhoneDog to state the factual basis for its claims without providing specific details of each and every fact giving rise to those claims. *See* Fed. R. Civ. P. 8(a)(2). Because PhoneDog adequately alleged all elements required of it to state a claim for negligent interference with prospective economic advantage, Defendant's motion as to this cause of action should be denied.

**CONCLUSION**

PhoneDog satisfies the requirements of Federal Rule of Civil Procedure 8 by sufficiently pleading each claim contained in its Complaint. Therefore, Defendant's motion to dismiss for failure to state a claim must be denied.[1]

Dated: January 5, 2012

DONAHUE GALLAGHER WOODS LLP

By: ______________________
John C. Kirke
Attorneys for Plaintiff
PHONEDOG, LLC

[1] If the Court were inclined to grant the instant motion, PhoneDog accordingly requests leave to amend its Complaint, to fix any apparent deficiencies. Federal Rule of Civil Procedure 15(a)(2) expressly states that "[t]he court should freely give leave [to amend] when justice so requires." Where a more carefully drafted Complaint, might state a claim, a plaintiff must be given at least one more chance to amend the Complaint, before dismissal. *Silva v. Bieluch*, 351 F.3d 1045, 1048 (11th Cir. 2003).