Cary Kletter
Sally Trung Nguyen
KLETTER LAW FIRM
1900 S. Norfolk Street, Suite 350
San Mateo, California 94403
Telephone: 415.434.3400
Email: ckletter@kletterlaw.com

Attorneys for NOAH KRAVITZ

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHONEDOG, LLC, a Delaware corporation, | CASE NO. C11-03474 |
| Plaintiff, | **DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF PHONEDOG, LLC'S SECOND AND THIRD CLAIMS FOR RELIEF IN THE FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. PROC. RULE 12(b)(6);** |
| v. | |
| NOAH KRAVITZ, an individual, | |
| Defendants. | |
| | **Date:** January 26, 2012 |
| | **Time:** 10:00 a.m. |
| | **Dept.:** Courtroom B – 15th Floor |
| | **Judge:** Maria-Elena James |

I.  **INTRODUCTION**

Defendant Noah Kravitz ("Kravitz") hereby submits this Reply to Plaintiff PhoneDog, LLC's ("PhoneDog") Opposition to his Motion to Dismiss PhoneDog's Second and Third Claims for Relief in the First Amended Complaint ("PhoneDog's Opposition").

Additionally, PhoneDog's Opposition misstates the applicable legal standard in ruling on a FRCP 12(b)(6) motion despite the Court already clearly laying out the legal standard in the November 8, 2011 Order on Defendant's Motion to Dismiss Pursuant to FRCP 12(B)(1) and 12(B)(6) (the "Order"). PhoneDog inappropriately attempts to mislead the Court to lower the legal standard and accept its conclusory allegations as true so that the Court rules in its favor. Nonetheless, PhoneDog's First Amended Complaint must be dismissed under FRCP 12(b)(6) because it does not contain sufficient "factual allegations" to show a plausible claim for its second and third claims for relief the *Twombly/Iqbal* standard. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

II. **PHONEDOG'S FAILURE TO FILE A TIMELY OPPOSITION TO KRAVITZ'S MOTION IS INEXCUSABLE AND THE COURT SHOULD THEREFORE GRANT KRAVITZ'S MOTION**

Kravitz's Motion to Dismiss PhoneDog's second and third claims for relief in the First Amended Complaint should be granted because PhoneDog failed to serve and file a timely opposition. Kravitz filed this Motion to Dismiss on December 16, 2011. (Dkt. 30.) Based on Civil Local Rule 7-3, PhoneDog's Opposition was due no more than 14 days after the motion was served and filed, or by <u>December 30, 2011</u>. See Civil L.R. 7-3(a) (Effective September 8, 2011). Additionally, at the time of electronic service, PhoneDog specifically received the following notice of this deadline:

> "MOTION to Dismiss *First Amended Complaint* filed by Noah Kravitz. Motion Hearing set for 1/26/2012 10:00 AM in Courtroom B, 15th Floor, San Francisco before Magistrate Judge Maria-Elena James. **Responses due by 12/30/2011**. Replies due by 1/6/2012. (Attachments: # (1) Proposed Order [proposed] Order, # (2) Certificate/Proof of Service POS)(Nguyen, Trung) (Filed on 12/16/2011)" (emphasis added.)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Thus, there was no ambiguity whatsoever as to when PhoneDog's opposition to Plaintiff's Motion was due. Despite the clear deadline of December 30, 2011, PhoneDog did not serve or file its Opposition until just yesterday on January 5, 2012 – i.e. **six** days after its opposition was due and **one** day before the date Kravitz was supposed to file his reply.[1] PhoneDog has completely disregarded the Civil Local Rules and the deadlines set by the Court. PhoneDog has also utterly failed to proffer any justification whatsoever for its failure to file a timely opposition. PhoneDog's conduct is simply inexcusable.

This Court should not treat the rules pertaining to deadlines upon which oppositions are due as insignificant or arbitrary requirements. Kravitz and his counsel have worked diligently to ensure compliance with all filing deadlines. "Pursuant to Federal Rule of Civil Procedure 41(b), the district court may dismiss an action for failure to comply with any order of the court." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260 (9th Cit. 1992). PhoneDog's failure to file an opposition to a motion to dismiss in the timely manner prescribed by the Court's Civil Local Rules is grounds for dismissal. *Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995) (*per curiam*).

Because PhoneDog completely disregarded the Court's Local Rules and did not timely oppose Kravitz's Motion or any of the arguments therein, and for reasons set forth in the Motion itself, the Court should grant the Motion and dismiss PhoneDog's second and third claims for relief with prejudice.

## III. PHONEDOG'S SECOND AND THIRD CLAIMS FOR RELIEF SHOULD BE DISMISSED UNDER FRCP 12(b)(6) BECAUSE THE FACTUAL ALLEGATIONS DOES NOT STATE A CLAIM TO RELIEF

### A. PhoneDog Misstates the Legal Standard Despite the Court's November 8, 2011 Order

PhoneDog's Opposition misstates the applicable legal standard in an attempt to mislead the Court to lower the legal standard, despite the Court clearly laying out the standard in the Order. Specifically, in the November 8, 2011 Order, the Court emphasized the well-known

---

[1] Pursuant to Civil L.R. 7-3(c), Kravitz's reply to PhoneDog's Opposition is due not more than 7 days after the opposition is served and filed, or by January 12, 2012.

"plausibility" pleading standard under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009). See pp. 7-8 of the Order. However, PhoneDog's Opposition does not even acknowledge this plausibility standard whatsoever.

PhoneDog's Opposition conveniently failed to address that while a complaint does not need to contain detailed factual allegations, it must still contain factual allegations sufficient to show a "plausible" claim for relief. See pg. 7 of the Order; *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). This "plausibility" standard serves in effect as a "gatekeeping" function. The *Twombly/Iqbal* standard "teaches that a defendant should not be forced to undergo costly discovery unless the complaint contains enough detail...to indicate that the plaintiff has a substantial case." *Bissessur v. Indiana Univ. Bd. of Trustees*, 581 F.3d 599, 603 (7th Cir. 2009). Therefore, to survive a motion to dismiss under FRCP 12(b)(6), Phonedog's factual allegations must sufficiently raise a right to relief above a speculative level. *Bell Atlantic Corp.*, 550 U.S. at 555. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment]' to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." See pg. 8 of the Order (quoting *Twombly*, 550 U.S. at 555) (emphasis added).

PhoneDog's second and third claims for relief in the First Amended Complaint must be dismissed because the factual allegations contained in the First Amended Complaint fail to state a claim upon which relief can be granted.

**B.    PhoneDog's Factual Allegations are Inadequate to Show a Plausible Claim for Intentional Interference with Prospective Economic Advantage.**

PhoneDog's First Amended Complaint fails to meet the *Twombly/Iqbal* pleading standard. Rather than provide sufficient factual allegations to state a claim plausible on its face, PhoneDog provided a formulaic recitation of the elements for a claim of intentional

interference with prospective economic advantage. Because PhoneDog alleges that it had separate economic relationships with (a) followers and prospective users of Kravitz's Twitter Account (the "Account"), (b) existing and prospective advertisers, and (c) CNBC and Fox News, each alleged relationship should be looked at separately in determining if the plausibility standard is met.

### 1. Followers and Prospective Users of the Account

In its Opposition, PhoneDog points out that the November 8, 2011 Order "noted that it was 'unclear who the 'users' are, i.e., whether they are the 17,000 Account followers, consumers accessing PhoneDog's website, or some other individuals, and what the nature of PhoneDog's purported economic relationship is with these users.'" See pg. 4 of PhoneDog's Opposition. PhoneDog claims it "remedied this issue by making it clear in paragraph 33 that PhoneDog's economic relationship are with the 'PhoneDog Followers'". Its allegation that it had an "economic relationship" here is purely conclusory. Further, PhoneDog did not amend its complaint whatsoever to address "what the nature of its purported economic relationship is" with the Account followers. See pg. 11 of the Order. Neither PhoneDog's First Amended Complaint nor its Opposition has alleged any facts to make a plausible claim that an economic relationship with any of the Account followers and prospective users that would have *probably* resulted in a future economic benefit to PhoneDog existed. PhoneDog's alleged relationship is simply not the type of relationship protected by the tort of interference of economic advantage. *See e.g. See CRST Van Expedited,* 479 F.3d at 1108 (9th Cir. 2007).

Moreover, PhoneDog's First Amended Complaint utterly fails to allege an actual disruption of an economic relationship with any of the Account followers or users that resulted in an economic harm. Even in its Opposition, PhoneDog does not clarify anywhere what economic harm was caused by the disruption.

### 2. Existing and Prospective Advertisers

PhoneDog's assertion that it "only" needs to make a "short and plain statement of the claim showing that the pleader is entitled to relief" (see page 7 of PhoneDog's Opposition)

completely ignores the *Twombly/Iqbal* plausibility standard that was clearly laid out in the Court's November 8, 2011 Order. Although PhoneDog does not need to prove up its allegations at this stage, it is still required to make sufficient factual allegations above the speculative level to make a plausible showing that it was entitled to relief. See pg. 7-8 of the Order. PhoneDog has not met the requisite pleading standard here for many reasons, including, but not limited to: (1) there is insufficient factual allegation to make a plausible showing that there was actual disruption of an existing or probably future economic relationship with an existing or prospective advertisers – i.e. its claim is completely speculative and based entirely on an insufficiently supported hypothetical; (2) PhoneDog has not and cannot make sufficient factual allegation that there was an actual economic harm because it can only speculate that some advertiser *might have been* "discourage[d]" from paying for ad inventory because of some potential decrease in the number of website pageviews that might have been the result of Kravitz's conduct; and (3) PhoneDog has not alleged sufficient facts to make a plausible claim that there was a protected expectancy.

### 3. CNBC and Fox News

PhoneDog has asserted no facts whatsoever to make a plausible claim that it had an "economic" relationship with CNBC and Fox News. In its Opposition, PhoneDog merely states that it met the requisite pleading standard because it conclusively alleges in the First Amended Complaint that it had "economic relationships with entities such as CNBC and Fox News". See pg. 4-5 of the Opposition. PhoneDog has utterly failed to allege facts establishing the nature of its purported "economic" relationship with CNBC and Fox News. Moreover, PhoneDog's Opposition does not address the fact that PhoneDog has not alleged anywhere that an actual economic harm resulting from a disruption of a potential relationship with CNBC and Fox News. PhoneDog's entire claim of intentional interference with prospective economic advantage with respect to CNBC and Fox News is completely speculative and insufficiently supported by the factual allegations. As with its other purported economic relationships, this alleged relationship is not the type of relationship protected by the tort of interference of

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

economic advantage because it is nothing more than a mere desire for future benefits. *See e.g.* *See CRST Van Expedited,* 479 F.3d at 1108 (9th Cir. 2007).

Moreover, PhoneDog has not alleged a <u>wrongful independent act</u> by Kravitz <u>designed to disrupt this relationship</u> with CNBC and Fox News. PhoneDog's Opposition instead attempts to confuse the Court and Kravitz by referring to some alleged wrongful conduct that is totally unrelated to this particular relationship – i.e. Kravitz's alleged misappropriation and conversion of the Twitter Account. PhoneDog has not alleged any facts whatsoever regarding how the alleged misappropriation or alleged conversion of the Twitter Account was a wrongful independent act designed to disrupt the relationship with CNBC and Fox News.

PhoneDog's second claim for relief must be dismissed because the factual allegations contained in its First Amended Complaint are not sufficient to show a plausible claim for which relief can be granted.

### C. PhoneDog's Factual Allegations are Inadequate to Show a Plausible Claim for Negligent Interference with Prospective Economic Advantage.

PhoneDog's claim suffers the same pleading deficiencies as its intentional interference claim in that PhoneDog has failed to allege (1) the existence of an economic relationship that would have probably resulted in an economic benefit, (2) a negligent act by Kravitz that actually disrupted that relationship, and (3) economic harm caused by Kravitz.

Additionally, PhoneDog's Opposition asserts the criteria for establishing a duty of care. See pg. 9 of PhoneDog's Opposition. However, in its First Amended Complaint, PhoneDog only conclusively alleged that Kravitz "owed a duty of care to PhoneDog as an agent of PhoneDog." (First Amended Complaint at ¶42.) PhoneDog improperly add new allegations in its Opposition in an attempt to meet the criteria for a duty of care. For example, PhoneDog now claims that Kravitz "took advantage of PhoneDog's economic relationships with CNBC and Fox News in order to usurp PhoneDog's contributing spots on "Street Signs" and "Fox Business Live" and that "[i]t was clearly foreseeable that [Kravitz's] conduct would have a negative effect on PhoneDog's business". See pg. 10 of PhoneDog's Opposition. While it is

1 unclear how that allegation can support a duty of care claim, it should still be noted PhoneDog

2 has made no such allegation in the First Amended Complaint. "[A] court cannot consider

3 material outside the complaint." *See, In re American Cont'l Crop./Lincoln Sav. & Loan Sec.*

4 *Litig.*, 102 F.3d 1524, 1537 (9th Cir. 1996). Thus, the Court must not consider any new

5 allegations by PhoneDog, outside the four corners of the First Amended Complaint, in its

6 ruling on this Motion.

7     PhoneDog's third claim for relief must be dismissed because the factual allegations

8 contained in its First Amended Complaint are not sufficient to show a plausible claim for

9 which relief can be granted.

10

11 **IV.    CONCLUSION**

12     Plaintiff PhoneDog's second and third claims for relief in the First Amended Complaint

13 should be dismiss for failure to state a claim upon which relief can be granted pursuant to

14 FRCP 12(b)(6) because it has not asserted sufficient factual allegations to show a plausible

15 claim for intentional interference with prospective economic advantage and negligent

16 interference with prospective economic advantage.

17

18 Dated: January 6, 2012                    KLETTER LAW FIRM

19

20                                           By:_____

21                                               Sally Trung Nguyen
                                                 Attorney for Defendant,
22                                               NOAH KRAVITZ

23

24

25

26

27

28