UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT

Northern District of California

PHONEDOG,

              Plaintiff,

  v.

NOAH KRAVITZ,

              Defendant.
_____/

No. C 11-03474 MEJ

**ORDER ON DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AND THIRD CLAIMS FOR RELIEF (DKT. NO. 30)**

      Plaintiff PhoneDog initiated this lawsuit against Defendant Noah Kravitz on July 15, 2011. Dkt. No. 1. Kravitz responded by moving to dismiss the entire complaint, and the Court ruled on this motion on November 8, 2011. Dkt. No. 28. In its ruling, the Court only granted Kravitz's motion with respect to PhoneDog's second and third claims for intentional interference with prospective economic advantage and negligent interference with prospective economic advantage. *Id.* PhoneDog was afforded leave to amend these two claims, and it filed its first amended complaint ("FAC") on November 29, 2011. Dkt. No. 29. Kravitz has now moved to dismiss PhoneDog's second and third claims once again, arguing that they still fail to allege sufficient facts to state claims upon which relief can be granted. Dkt. No. 30. As explained below, the Court disagrees with Kravitz's position and DENIES his motion.[1]

      The Court first examines PhoneDog's amended allegations with respect to its second claim for intentional interference with prospective economic advantage. As the Court explained in November, this claim requires a plaintiff to establish: (1) an economic relationship between the plaintiff and some third party with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts, apart from the interference itself, by

---

[1] The Court provided the factual background of this dispute when it ruled on Kravitz's first motion to dismiss and will not restate that background here. Dkt. No. 28.

1 defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5)
2 economic harm to the plaintiff proximately caused by the acts of defendant. *CRST Van Expedited v.*
3 *Werner Enter., Inc.*, 479 F.3d 1099, 1108 (9th Cir. 2007). The Court initially dismissed PhoneDog's
4 claim because it failed to sufficiently allege which economic relationships were actually disrupted by
5 Kravitz's alleged conduct. Dkt. No. 28 at 11-12. To cure this deficiency, PhoneDog's FAC clarified
6 that it had economic relationships with (1) the approximately 17,000 followers of the Twitter account
7 at issue; (2) its current and prospective advertisers; and (3) CNBC and Fox News, and that each of
8 these economic relationships were actually disrupted by Kravitz's conduct. FAC ¶¶ 19, 33-36.

9 Kravitz's motion attacks each of these three alleged economic relationships as insufficient to
10 sustain the intentional interference claim. But for PhoneDog to have properly alleged its second
11 claim, only one of the above economic relationships has to meet the elements of the tort.[2] And the
12 alleged relationship between PhoneDog and its current and prospective advertisers suffices. Kravitz
13 argues that the allegations supporting this relationship are speculative because they only assert that
14 PhoneDog's advertising revenue "might have" decreased. Dkt. No. 32 at 5. But that is not the case.
15 PhoneDog explicitly alleges in its FAC that a significant amount of its income is derived from
16 advertisements on its website, and "advertisers pay for ad inventory on PhoneDog's website for every
17 1000 pageviews generated from users visiting PhoneDog's website." FAC ¶ 10. Due to Kravitz's
18 alleged conduct, "there is decreased traffic to [the] website through the Account, which in turn
19 decreases the number of website pageviews and discourages advertisers from paying for ad inventory
20 on PhoneDog's website." FAC ¶ 36. "As a direct and proximate result of Defendant's wrongful acts,
21 PhoneDog has suffered damage to is business by way of lost advertising revenue . . . ." FAC ¶ 38.
22 Based on these factual allegations, the Court is able to draw the reasonable inference that PhoneDog
23 had an economic relationship with at least one third-party advertiser that was disrupted by Kravitz's
24 alleged conduct, causing it economic harm. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) ("A

---

[2] Kravitz's concerns that the nature of PhoneDog's relationships with both the Twitter followers as well as CNBC and Fox News are not "economical" are more properly addressed by a motion for partial summary judgment rather than a motion to dismiss, particularly where there is another economic relationship being pled by PhoneDog (i.e., the current advertisers).

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").[3]  Therefore, PhoneDog's second claim for intentional interference is sufficiently alleged and Kravitz's motion is DENIED.

PhoneDog's FAC also sufficiently alleges its third claim for negligent interference with prospective economic advantage.  The Court previously dismissed this claim on the same grounds as it dismissed the second claim for intentional interference: PhoneDog had not sufficiently alleged which economic relationships were actually disrupted by Kravitz's alleged conduct.  Dkt. No. 28 at 13.  As explained above, these deficiencies have been corrected by PhoneDog's amended allegations in the FAC.  The other reason the Court previously dismissed the third claim was because PhoneDog had failed to allege that Kravitz owed it a duty of care, which is a necessary element of the negligent interference claim.  *Id.*  To rectify this missing allegation, PhoneDog's FAC now asserts that "Defendant owed a duty of care to PhoneDog as an agent of PhoneDog."  FAC ¶ 42.  Thus, PhoneDog has now complied with this Court's previous order and provided Kravitz with the reason why it believes he was negligent (as an employee, he owed his company a duty of care).[4]  Accordingly, Kravitz's request to dismiss PhoneDog's third claim with prejudice is DENIED.

Lastly, this Court addresses Kravitz's request that PhoneDog's second and third claims be dismissed because it failed to timely file an opposition to Kravitz's motion.  Kravitz is correct that PhoneDog filed its response three business days after it was due and has not provided any explanation for the untimely filing.[5]  But Kravitz's request for the draconian sanction of dismissing

---

[3] Kravitz may learn the identity of these third-party advertisers through discovery.

[4] While PhoneDog could have included additional factual details to further explain the duty of care element, failing to include these additional details is not detrimental to its claim.  Once discovery commences, Kravitz may propound discovery to further clarify PhoneDog's claim that he owed it a duty of care.  The Court finds that such an approach is more efficient than engaging in additional motion practice to perfect the pleadings.

[5] Kravitz filed his motion to dismiss PhoneDog's second and third claims on December 16, 2011.  Dkt. No. 30.  Accordingly, PhoneDog's response should have been filed on December 30,

3

PhoneDog's second and third claims goes too far and is DENIED. Instead, the Court admonishes PhoneDog for its inability to comply with the Court's deadlines, which will not be accepted going forward.

**IT IS SO ORDERED.**

Dated: January 30, 2012

Maria-Elena James
Chief United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

---

2011. Civil L.R. 7-3(a). PhoneDog, however, did not file its opposition until January 5, 2012. Dkt. No. 31. The Court takes into account that PhoneDog's untimely filing may have been caused by the New Year's holiday since its response was due the Friday before New Year's Eve (which was Saturday) and the following Monday was a federal holiday.